UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------X
MALEATRA MONTANEZ,

               Plaintiff,                    **COMPLAINT**  6:16-cv-550 (BKS/TWD)

      -against-

                                          Plaintiff Demands a Jury Trial

CITY OF SYRACUSE, POLICE
OFFICER CHESTER D. THOMPSON,
CHIEF OF POLICE FRANK L. FOWLER and
POLICE CAPTAIN THOMAS GALVIN,

               Defendants.
-----------------------------------X

Plaintiff, by her attorneys Sivin & Miller, LLP, complaining of defendants, alleges as follows, upon information and belief:

## JURISDICTION and VENUE

1. That this Court has jurisdiction over this action in that the action includes causes of action under 42 U.S.C. § 1983 and alleges violations of plaintiffs' civil rights, including rights guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution.

2. That prior to the institution of this action and within ninety (90) days from the date when the causes of action accrued herein, a Notice of Claim and Intention to Sue was duly served upon and filed with the City of Syracuse, the Syracuse Police Department, and Chester Thompson on behalf of plaintiff; that this action was not commenced until the expiration of thirty (30) days after such Notice of Claim and Intention to Sue was presented and the City of Syracuse, the Syracuse Police Department, and Chester Thompson have neglected and/or refused

to make adjustment or payment thereon, and this action is being commenced within one year and ninety days after the causes of action accrued herein.

3. Venue is proper in this district as the parties reside in the Northern District of New York and the causes of action herein accrued in the Northern District of New York.

## THE PARTIES

4. That at all times herein mentioned, plaintiff was and is a United States citizen and a resident of the State of New York.

5. That at all times herein mentioned, defendant City of Syracuse (hereinafter "the City") was and is a municipal corporation, organized and existing under and by virtue of the laws of the State of New York.

6. That at all times herein mentioned, the City operated, managed, maintained, supervised, and controlled the Syracuse Police Department (hereinafter "the SPD").

7. That at all times herein mentioned, the SPD was and is an agency of the City.

8. That at all times herein mentioned, the SPD operated, managed, maintained, supervised, and controlled an Internal Affairs Division (hereinafter "the IAD").

9. That at all times herein mentioned, the IAD was in charge of, among other things, facilitating the process of receiving internal and external complaints alleging misconduct by members of the SPD, investigating those complaints, and where appropriate taking remedial actions in response to those complaints.

10. That at all times herein mentioned, defendant Police Officer Chester D. Thompson (hereinafter "Thompson") was employed by the City as a police officer.

11. That at all times herein mentioned, Thompson was employed by the SPD as a police officer.

12. That at all times herein mentioned, Thompson was acting within the course and scope of his employment with the City and the SPD.

13. That at all times herein mentioned, Thompson was acting under color of state law.

14. That at all times herein mentioned, defendant Police Chief Frank L. Fowler (hereinafter "Fowler") was employed by the City as a police chief.

15. That at all times herein mentioned, Fowler was employed by the SPD as a police chief.

16. That at all times herein mentioned, Fowler was the official highest in the chain of command in the SPD and was the highest supervising policymaker in the SPD.

17. That at all times herein mentioned, Fowler was acting within the course and scope of his employment with the City and the SPD.

18. That at all times herein mentioned, Fowler was acting under color of state law.

19. That at all times herein mentioned, defendant Police Captain Thomas Galvin (hereinafter "Galvin") was employed by the City as a police captain.

20. That at all times herein mentioned, Galvin was employed by the SPD as a police captain.

21. That at all times herein mentioned, Galvin was the head and in charge of the Internal Affairs Division (hereinafter "the IAD") of the SPD.

22. That at all times herein mentioned, the IAD was the division of the SPD second in the chain of command to the Chief of Police.

23. That at all times herein mentioned, Galvin, as a police captain in charge of the IAD, was a supervising policymaker of the SPD.

24. That at all times herein mentioned, Galvin was acting within the course and scope of his employment with the City and the SPD.

25. That at all times herein mentioned, Galvin was acting under color of state law.

26. That Thompson, Fowler, and Galvin all are being sued herein in both their individual and their official capacities.

## THOMPSON'S PRIOR MISCONDUCT and CO-DEFENDANTS' KNOWLEDGE of SAME

27. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

28. That for at least several years immediately preceding February 14, 2015, Thompson, while employed as a police officer with the SPD and acting within the course and scope of his employment with the SPD, engaged in a continuous and ongoing course of malfeasance and criminal conduct in the City of Syracuse and elsewhere.

29. That for at least several years immediately preceding February 14, 2015, Thompson, while employed as a police officer with the SPD and acting within the course and scope of his employment with the SPD, sexually assaulted citizens within the City of Syracuse, including but not limited to citizens with whom he came into contact during his official duties as a Syracuse Police Officer.

30. That among the citizens sexually assaulted by Thompson were women who were particularly vulnerable by virtue of their socioeconomic status, their status as criminal

suspects and/or detainees and/or their status as victims of domestic disputes for which police assistance was sought.

31. That in or around June of 2013, Thompson responded to a domestic dispute involving "Jane Doe," a citizen of Syracuse whose full name and identity is known to plaintiff but who, for reasons of privacy, will be referred to herein only as "Jane Doe."

32. That when he responded to Jane Doe's residence in connection with the domestic dispute, Thompson sexually assaulted Jane Doe and/or otherwise coerced Jane Doe into performing sexual acts on him against her will.

33. That in or around October of 2013, Thompson again sexually assaulted Jane Doe and/or otherwise coerced Jane Doe into performing sexual acts on him against her will.

34. That in or around June 2014, Thompson again sexually assaulted Jane Doe and/or otherwise coerced Jane Doe into performing sexual acts on him against her will.

35. That Thompson's malfeasance and criminal conduct also included sexually assaulting and/or otherwise forcibly coercing sex from prostitutes or those suspected of and/or arrested for prostitution.

36. That the aforementioned malfeasance and criminal conduct by Thompson constituted a violation of the constitutional rights of citizens, including rights guaranteed to citizens under the Fourth and Fourteenth Amendments to the U.S. Constitution.

37. That Thompson's pattern of malfeasance and criminal conduct was well known throughout the SPD, and his malfeasance and criminal conduct was open and notorious within the SPD.

38. That Thompson had a reputation in the SPD as a police officer who sexually abused and assaulted women with whom he came into contact in his official capacity as a police officer with the SPD.

39. That Chief Frank L. Fowler, as Police Chief of the SPD, had actual knowledge of the aforementioned malfeasance and criminal conduct of Thompson and/or of widespread allegations of such malfeasance and criminal conduct.

40. That despite his knowledge of Thompson's malfeasance and criminal conduct and/or allegations of same, Fowler failed and refused adequately to investigate Thompson's actions, acquiesced in Thompson's conduct, failed to take any remedial action against Thompson, allowed Thompson to remain employed as an officer with the SPD, was grossly negligent in his supervision of Thompson, and was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated by Thompson.

41. That the aforesaid actions by Fowler constituted a deliberate indifference to the constitutional rights of the citizens of Syracuse and other citizens with whom Thompson came into contact in his official capacity as an officer with the SPD.

42. That Captain Thomas Galvin, as head of the Internal Affairs Division of the SPD, had actual knowledge of the aforementioned malfeasance and criminal conduct of Thompson and/or of widespread allegations of such malfeasance and criminal conduct.

43. That despite his knowledge of Thompson's malfeasance and criminal conduct and/or allegations of same, Galvin failed and refused adequately to investigate Thompson's actions, acquiesced in Thompson's conduct, failed to take any remedial action against Thompson, allowed Thompson to remain employed as an officer with the SPD, was grossly

negligent in his supervision of Thompson, and was deliberately indifferent to the rights of others by failing to act on information that constitutional rights were being violated by Thompson.

44. That the aforesaid actions by Galvin constituted a deliberate indifference to the constitutional rights of the citizens of Syracuse and other citizens with whom Thompson came into contact in his official capacity as an officer with the SPD.

## THOMPSON'S FEBRUARY 14, 2015 ATTACK ON PLAINTIFF

45. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

46. On February 14, 2015, plaintiff, who then was residing in Syracuse, called the SPD to report that her minor daughter was missing.

47. In response to her call to the SPD, Thompson arrived at plaintiff's apartment.

48. When he arrived at plaintiff's apartment, Thompson appeared agitated and under the influence of drugs.

49. When he appeared at plaintiff's apartment, Thompson was in a SPD uniform and was armed with a gun, and plaintiff was inside her apartment with her newborn son.

50. When he entered plaintiff's apartment, Thompson almost immediately began making inappropriate, sexually laden comments to plaintiff, including comments regarding plaintiff's physical attributes.

51. Thompson's comments escalated in lewdness, including a comment regarding plaintiff's lips and a penis.

52. While making these lewd and inappropriate comments, Thompson began rubbing his private parts.

53. At some point, Thompson then directed plaintiff, who was on the telephone with a relative discussing plaintiff's missing daughter, to hang up the telephone, and plaintiff complied.

54. Thereafter, Thompson exposed his penis and directed plaintiff to place it in her mouth.

55. Plaintiff attempted to dissuade Thompson from having her perform fellatio on him, but Thompson responded by again directing her to perform the sexual act.

56. Responding to an implied threat that placed her in fear for her safety and life and the safety and life of her infant son, plaintiff complied with Thompson's directive.

57. Thereafter, Thompson directed plaintiff to engage in other sexual acts, including fondling Thompson's penis and bending over so that Thompson could penetrate her vaginally with his penis.

58. Responding to an implied threat that placed her in fear for her safety and life and the safety and life of her infant son, plaintiff again complied with Thompson's directive.

59. That the aforementioned physical and sexual contact of plaintiff by Thompson was offensive to plaintiff and was undertaken without plaintiff's consent.

60. That the aforesaid actions of Thompson constituted a gross violation of plaintiff's bodily integrity for no legitimate reason.

61. That the aforesaid actions of Thompson were intentional and malicious in nature.

62. That the aforesaid actions of Thompson were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

63. That in directing plaintiff to perform various sexual acts on him and in engaging in the other conduct alleged hereinabove, Thompson knew, or at the very least intentionally or recklessly disregarded a substantial risk, that his actions would cause plaintiff extreme emotional distress.

64. That the aforesaid actions of Thompson caused plaintiff extreme emotional distress and suffering.

65. That as a further consequence of Thompson's actions, plaintiff endured and continues to endure pain and suffering and loss of enjoyment of life.

66. That as a further consequence of Thompson's actions, plaintiff felt compelled to and did receive psychological counseling to address the resulting emotional and psychological trauma.

67. That as a further consequence of Thompson's actions, plaintiff suffered and will continue to suffer economic loss, which loss includes, but is not limited to, charges for medical and psychological care and counseling, transportation costs to and from healthcare providers, loss of clothing and property that was either confiscated by authorities during the course of a criminal investigation of Thompson's actions or discarded by plaintiff due to the emotional trauma associated with the events of February 14, 2015.

68. That the February 14, 2015 incident and the resulting injuries and damage to plaintiff were a result of Fowler's and Galvin's failure and refusal adequately to investigate Thompson's actions, acquiescence in Thompson's conduct, failure to take any remedial action against Thompson, allowing Thompson to remain employed as an officer with the SPD, gross negligence in their supervision of Thompson, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by Thompson.

## FIRST CAUSE OF ACTION AGAINST THOMPSON and
## THE CITY OF SYRACUSE
(State Law Cause of Action for Battery)

69. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

70. That the aforementioned actions of Thompson constitute a battery against plaintiff, for which Thompson is liable under New York law and for which the City of Syracuse is vicariously liable under the doctrine of respondeat superior.

## SECOND CAUSE OF ACTION AGAINST THOMPSON and
## THE CITY OF SYRACUSE
(State Law Cause of Action for Intentional Infliction of Emotional Distress)

71. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

72. That the aforementioned actions of Thompson constitute an intentional infliction of emotional distress, for which Thompson is liable under New York law and for which the City of Syracuse is vicariously liable under the doctrine of respondeat superior.

## THIRD CAUSE OF ACTION AGAINST THOMPSON and
## THE CITY OF SYRACUSE
(State Law Cause of Action for Prima Facie Tort)

73. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

74. That in the event the Court or a jury determines that the actions of Thompson were not unlawful, plaintiff maintains that said actions nevertheless were intended by Thompson to harm plaintiff, were without any excuse or justification, and resulted in special damages (i.e. pecuniary loss) to plaintiff.

75. That the aforementioned actions of Thompson therefore would constitute a prima facie tort, for which Thompson is liable under New York law and for which The City of Syracuse is vicariously liable under the doctrine of respondeat superior.

### FOURTH CAUSE OF ACTION AGAINST THE CITY OF SYRACUSE
(Negligent Hiring, Training and Retention)

76. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

77. That the aforesaid conduct by Thompson and the injuries to plaintiff were the result of negligence by the City in its hiring, training, and retention of Thompson.

### FIFTH CAUSE OF ACTION AGAINST THOMPSON
(42 U.S.C. § 1983 based on Fourth Amendment Violation)

78. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

79. That the aforementioned actions of Thompson constitute a violation of plaintiff's rights under the Fourth Amendment to the U.S. Constitution to be free from the use of excessive force and unreasonable searches and seizures, and entitle plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

### SIXTH CAUSE OF ACTION AGAINST THOMPSON
(42 U.S.C. § 1983 based on Fourteenth Amendment Violation)

80. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

81. That the aforementioned actions of Thompson constitute a violation of plaintiff's substantive due process rights, guaranteed by the Fourteenth Amendment to the U.S.

Constitution, by violating plaintiff's bodily integrity for no legitimate reason, and entitle plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

### SEVENTH CAUSE OF ACTION AGAINST FOWLER
(Supervisory Liability for § 1983 Violations)

82. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

83. That Fowler's failure and refusal adequately to investigate Thompson's actions, acquiescence in Thompson's conduct, failure to take any remedial action against Thompson, allowing Thompson to remain employed as an officer with the SPD, gross negligence in his supervision of Thompson, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by Thompson, subjects Fowler to supervisory liability for the February 14, 2015 actions of Thompson, and entitles plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

### EIGHTH CAUSE OF ACTION AGAINST GALVIN
(Supervisory Liability for § 1983 Violations)

84. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

85. That Galvin's failure and refusal adequately to investigate Thompson's actions, acquiescence in Thompson's conduct, failure to take any remedial action against Thompson, allowing Thompson to remain employed as an officer with the SPD, gross negligence in his supervision of Thompson, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by Thompson, subjects

Galvin to supervisory liability for the February 14, 2015 actions of Thompson, and entitles plaintiff to recover damages pursuant to 42 U.S.C. § 1983.

### NINTH CAUSE OF ACTION AGAINST THE CITY OF SYRACUSE
(Monell Claim)

86. Plaintiff repeats and realleges each and every allegation set forth above as though fully set forth at length herein.

87. That by virtue of Fowler's and Galvin's failure and refusal adequately to investigate Thompson's actions, acquiescence in Thompson's conduct, failure to take any remedial action against Thompson, allowing Thompson to remain employed as an officer with the SPD, gross negligence in their supervision of Thompson, and deliberate indifference to the rights of others by failing to act on information that constitutional rights were being violated by Thompson, the City of Syracuse, which employed these policymakers during the relevant time period, exhibited a de facto custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services, 436 U.S. 658 (1978)*.

88. That all of the foregoing causes of action fall within one or more of the exceptions set forth in New York's Civil Practice Law & Rules § 1602 with respect to joint and several liability.

**WHEREFORE**, plaintiff demands judgment against defendants, and each of them, on all of the foregoing causes of action, for compensatory damages in the amount of Five Million ($5,000,000.00) Dollars and punitive damages in the amount of Two Million ($2,000,000.00) Dollars, together with attorney's fees pursuant to 42 U.S.C. § 1988, and together

with the costs and disbursements of this action.

Dated: New York, New York
       May 9, 2016

                                        Yours, etc.
                                        Sivin & Miller, LLP

                                        By_____
                                          Edward Sivin
                                        Attorneys for plaintiff
                                        20 Vesey St., Suite 1400
                                        New York, NY  10007
                                        (212) 349-0300