

# DEPARTMENT OF LAW
## OFFICE OF THE CORPORATION COUNSEL
### CITY OF SYRACUSE, MAYOR BEN WALSH

**Kristen E. Smith**
Corporation Counsel

**Joseph W. Barry III**
First Assistant
Corporation Counsel

**Christina F. DeJoseph**
Senior Assistant
Corporation Counsel

Catherine E. Carnrike
Meghan E. Ryan
Amanda R. Harrington
John C. Black Jr.
Kathryn M. Ryan
Ramona L. Rabeler
Todd M. Long
Khalid Bashjawish
Lee R. Terry
Sarah A. Lafen
Daniel C. Bollana
Leigh A. Lieberman

August 2, 2019

SENT ELECTRONICALLY VIA CM/ECF
Hon. Brenda K. Sannes, U.S. District Judge
Federal Building and U.S. Courthouse
P.O. Box 7336
Syracuse NY 13261-7336

      Re:    *Montanez v. City of Syracuse, et al.*
               Case No. 6:16-CV-00550 (BKS/TWD)

Dear Judge Sannes:

Defendants, City of Syracuse ("the City") and Captain Thomas Galvin ("Galvin") (collectively, "City Defendants"), file this letter brief in opposition to Plaintiff's three motions *in limine* filed on July 26, 2019. *See* Dkt. No. 122. City Defendants respectfully request that the Court deny Plaintiff's motions, and, where appropriate, rule in favor of the admissibility of certain evidence as further described below.

In support of City Defendants' opposition to Plaintiff's motions, City Defendants have enclosed as **Exhibit "A"** Plaintiff's Response to Chester Thompson's Interrogatories, as **Exhibit "B"** relevant portions of the deposition of Plaintiff, and as **Exhibit "C"** relevant portions of the deposition of John Baggett.

    **I.**   **Response to Motion *in limine* No. 1: Prior arrests and convictions should be determined admissible insofar as they comply with Fed. R. Evid. 609**

Plaintiff asks this Court to preclude *any* reference to her prior arrests or convictions because the probative value of that reference would be outweighed by the danger of unfair prejudice. *See* Dkt. No. 122-1, pp. 1-2. Admittedly, Plaintiff's Counsel is only aware of those arrests or convictions that Plaintiff testified about during her deposition. City Defendants are currently unaware of any other convictions as well. However, if City Defendants become aware of any previously undisclosed convictions that conform to Fed. R. Evid. 609, City Defendants will seek to have them admitted

    **II.**   **Response to Motion *in limine* No. 2: Plaintiff's previous exposure to sexual violence is relevant and probative to the nature and extent of her alleged compensatory damages and should be admitted as an exception to Fed. R. Evid. 412.**

City Defendants are disturbed by and sympathetic to Plaintiff's tragic exposure to sexual violence as a young child, and later her subjection to sexual exploitation fueled in part by

**Department of Law
Office of Corp. Counsel**
233 E. Washington St.
City Hall, Room 300
Syracuse, N.Y. 13202

Office 315 448-8400
Fax    315 448-8381
Email  law@syrgov.net

www.syrgov.net

*Service of papers or process by facsimile or other electronic method is not acceptable.*

*Montanez v. City of Syracuse, et al.*                                                                                          2 August 2019
Page 2

her abusive ex-husband's drug habit. Unfortunately, these very moral and social tragedies have a direct relationship to Plaintiff's allegation that the underlying incident in this matter is the sole cause of her severe emotional distress.

Plaintiff incorrectly asserts that City Defendants' intended use of this testimonial evidence to illustrate her "sexual predisposition." Dkt. No. 122-1, p. 2. This is, by no means, City Defendants intention with respect to the traumatic events Plaintiff has been forced to suffer. Rather, City Defendants seek its admission only to support the argument that her previous exposure to sexual trauma serves to diminish her compensatory damages claims vis-à-vis the underlying incident in this lawsuit. *See, e.g.*, *Gretzinger v. Univ. of Hawaii*, 156 F.3d 1236 (9th Cir. 1998) ("We agree with the trial court that the evidence of the alleged prior rape was highly probative on the issue[] of [the plaintiff's] emotional distress damages . . . .").

Plaintiff summarily argues that her previous sexual behavior is irrelevant (Fed. R. Evid. 402) and prejudicial (Fed. R. Evid. 403), with nothing more. Because Plaintiff incorrectly assumes that City Defendants seek only to prove her "sexual predisposition," Plaintiff alleges that her prior sexual behavior is inadmissible pursuant to Fed. R. Evid. 412, without noting that the rule is subject to certain exceptions in civil cases. Plaintiff is referring to her April 4, 2017 deposition testimony in which she described having been the victim of childhood sexual assault (*see* Ex. B, pp. 110-111) and two-year period in the early 2000s in which her then-husband subjected her to sexual exploitation to fuel their drug habit (*see id.* at 111, 157-162).

The law on emotional damages in a section 1983 action is well-established. When a plaintiff seeks "damages for violations of [his or her] constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts." *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986). Compensable injuries "may include not only out-of-pocket loss and other monetary harms, but also such injuries as impairment of reputation, personal humiliation, and mental anguish and suffering." *Id*. at 307 (internal quotation marks omitted). Courts, however, are faced with a "difficult task" in attempting to place a value on the plaintiff's emotional damage in part because "the extent of emotional injury does not readily translate into dollar amounts." *Mathie v. Fries*, 121 F.3d 808, 814 (2d Cir. 1997).

During discovery, in her response to Defendant Chester Thompson's interrogatory regarding her injuries, Plaintiff states that she suffered "severe emotional distress, pain and suffering, and loss of enjoyment of life" as a direct result of the alleged sexual assault. *See* Ex. A, Interrogatory No. 2. Courts have permitted defendants to admit evidence of previous sexual activity or assaults against plaintiff in a sexual assault civil case in order to diminish plaintiff's emotional damages claims. *See, e.g., Trinidad v. City of Boston*, No. 07-CV-11679, 2011 WL 915338, at *5 (D. Mass. Mar. 15, 2011) (where plaintiff "worked as a call girl under the direction of various men since the age of thirteen" and had "a documented history of mental health problems and treatment that both pre- and post-date . . . assaults" a reduction of the judgment was warranted pursuant to Fed. R. Civ. P. Rule 59 motion); *Walker v. Crawford*, No. 97-CV-1033, 1999 WL 33921852, at *2 (N.D. Ohio Oct. 1, 1999) (evidence of

*Montanez v. City of Syracuse, et al.*                                                                                                                         2 August 2019
Page 3

plaintiffs being sexually assaulted as adults may be admissible to the "emotional component of their damages claim").

Although Rule 412 does prohibit the use of prior sexual behavior of a plaintiff who alleges sexual misconduct, the court may admit such evidence "if its probative value substantially outweighs the danger of harm to any victim and of unfair prejudice to any party . . . ." *See id.*

Courts have found that the Rule 412 exception applies when discovery is sought regarding a plaintiff's previous sexual activities related to prostitution when a plaintiff has placed the matter into controversy in her damages claims. *See, e.g., Doe No. 2 v. Epstein*, 08-80232, 2009 WL 10667853, at *4 (S.D. Fla Oct. 28, 2009) (permitting discovery of specific instances wherein plaintiff received compensation or consideration for sex acts relevant and permitted where plaintiff alleges in her damages that defendant's actions affected her emotionally in her relationships and "antisocial behavior." Defendant had right to know if there were other causes to these damages); *Doe v. City of San Diego*, 12-CV-0689, 2013 WL 3989193, at *5 (S.D. Cal. Aug. 1, 2013) (with respect to damages, the court was persuaded that inquiry into plaintiff's sexual history and behavior was relevant because plaintiff's allegations of emotional distress and its nature and extent could be measured by subsequent sexual behavior).

Rule 412's exception is magnified in favor of admissibility of past physical, sexual, and emotional abuse relevant to damages where "[t]he record indicates that [the plaintiff] has endured numerous hardships in her life." *Kahle v. Leonard*, 04-CV-5024, 2008 WL 11450648, at *1 (D.S.D. Feb. 15, 2008) (court, regrettably, granted admission of evidence of past abuse to sexual assault victim-plaintiff, ruling: "[w]hile this past history in no way lessens the harm that [plaintiff] is alleged to have suffered in this case, it does provide evidence that the alleged pain and suffering that [plaintiff] experienced, and will experience in the future, is **not entirely the result** of the alleged sexual misconduct of defendant . . ." (emphasis supplied) (citing *Delaney v. City of Hampton*, 999 F. Supp. 794, 796 (E.D. Va. 1997) (holding that evidence of past sexual abuse was admissible to "show that other stressor's in [the plaintiff's] life besides the alleged abuse by [the defendant] might be responsible for her psychiatric condition)) (citing *Giron v. Corr. Corp. of Am.* 981 F. Supp. 1406, 1408 (D.N.M. 1997) (allowing discovery of prior sexual abuse on the theory that the prior abuse was a potential cause of the pain and suffering of the plaintiff)).

Here, Plaintiff's previous sexual activity would not be offered at trial as to her reputation or credibility, but—regrettably—only for the purpose of repudiating the idea that the alleged actions of Chester Thompson were the sole cause of her alleged emotional damages. Plaintiff testified in her interrogatory responses that as a result of the alleged assault of Chester Thompson, she suffered "severe emotional distress, pain and suffering, and loss of enjoyment of life." *See* Ex. A, Interrogatory No. 2. Plaintiff further testified during her deposition that her abusive former husband, had arranged for Plaintiff to have sex with four different men for either heroin or money to purchase heroin for the two of them in the early 2000s. *Id.* at 159-60. Plaintiff also acknowledged in the same deposition that she suffered childhood sexual trauma at the hands of her mother's boyfriend:

*Montanez v. City of Syracuse, et al.* 2 August 2019
Page 4

> Q: Have you ever been the victim of a sexual assault or a sexual trauma prior to what happened with Officer Thompson?
>
> A: Well, with my mother's boyfriend. I was too young to know what trauma was because I was very young. I had to have been maybe like maybe seven or eight or maybe younger. I just don't remember, but I just remember him so I don't know because I was too young to know what it was.

Ex. B, pp. 111, lines 6-14.

These traumatic and heart-wrenching experiences in Plaintiff's life—both sexual and assaultive in nature—sadly have a causal connection to any emotional trauma she has suffered by her own admission. Defendants would only offer this evidence to diminish accordingly Plaintiff's allegations that the incident involving Chester Thompson was the sole cause of her compensatory damages including "severe emotional distress, pain and suffering, and loss of enjoyment of life." Moreover, the nature and extent of the injury from the underlying incident here can be measured by the jury in light of testimony about her previous victimization.

In this capacity alone, Plaintiff's testimony about past sexual abuse has immense probative value in City Defendants' defense in their damages case. The prejudicial impact of these incidents, if any, would be minimal as the nature of these incidents do not diminish Plaintiff's credibility. If anything, the traumas suffered by Plaintiff would bolster her credibility and sympathy to the jury as the victim of sexual exploitation perpetrated by her former husband and childhood sexual assault, at the risk of all Defendants regarding portions of the trial related to liability.

Moreover, the nature and timing of the incidents would be too removed to confuse the jury as to the issues before them regarding the alleged sexual assault by Chester Thompson. Consequently and regrettably, Plaintiff's prior sexual victimization should be admitted for the sole and very limited purposes of opposing Plaintiff's compensatory damages case.

### III. Response to Motion *in limine* No. 3: The Court should not preclude evidence of Plaintiff's e-mail to John Baggett because it is a party admission that is relevant to Plaintiff's bias.

In his deposition, former Syracuse Police Department Office John Baggett ("Mr. Baggett"), an African-American male, testified that he received an e-mail from Plaintiff stating "[w]e can beat these white people" and asking "why won't you help me? We can beat these white people if we just stick together." Ex. C, p. 48. These statements—and others of the same sum and substance on pages 47 through 49 of Mr. Baggett's deposition transcript—are admissible as party admissions of Plaintiff (*see* Fed. R. Evid. 801(d)(2)), although not offered for the truth of the matter asserted. Moreover, Plaintiff's statements are relevant because they illustrate her attempt to influence a witness through racially prejudicial animus. Ultimately, these admissions are relevant and admissible because they undermine

*Montanez v. City of Syracuse, et al.*                                            2 August 2019
                                                                                        Page 5

Plaintiff's credibility in her racial biases. *See* Fed. R. Evid. 401.

With nothing more than a perfunctory recitation of the legal standard, plaintiff argues that Mr. Baggett's testimony is irrelevant (Fed. R. Evid. 402) and that the probative value of these statements are substantially outweighed by a danger of unfair prejudice (Fed. R. Evid. 403).

"Any party, including the party that called the witness, may attack the witness's credibility." Fed. R. Evid. 607. It is well-established that a witness's " 'credibility' may be attacked 'by means of cross-examination directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand.' " *Fuentes v. T. Griffin*, 829 F.3d 233, 247 (2d Cir. 2016) (quoting *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974)); *see, e.g., United States v. Abel*, 469 U.S. 45, 52 (1984) ("[b]ias is a term used . . . to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party").

"Cross-examination is especially 'important where the evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy.'" *Id.* (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959). "A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *Id.* (quoting *Abel*, 469 U.S. at 51 (holding gang affiliation evidence admissible at trial to demonstrate criminal defendant's racial bias)).

"[A] witness's motivation in testifying," is "a proper and important function" of cross-examination. *Davis*, 415 U.S. at 316 (refusal to allow defendant to cross-examine key prosecution witness to show his probation status following an adjudication of juvenile delinquency denied defendant his constitutional right to confront witnesses). To that end, courts, including the Supreme Court, have repeatedly "acknowledged the highly probative value of [bias] evidence to establish not only the fact of [the racial] bias but also its source and strength." *Lugo v. Miller*, 03-CV-2004, 2014 WL 1956659, at *19 (C.D. Cal. Feb. 25, 2014) (citing *Abel* 469 U.S. at 54); *see, e.g., Behler v. Hanlon*, 199 F.R.D 553, 557 (D. Md. 2001) (" 'bias of a witness is always significant in assessing credibility.' . . . . Thus, the central purpose of bias/prejudice impeachment is to diminish the credibility of the witness impeached").  The Court in *Davis v. Alaska* noted that the providence of judging the witness's credibility is the jury's and the jury is "entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the witness's] testimony.  *Davis*, 415 U.S. at 317.

Despite Plaintiff summarily asserting that these e-mails to Mr. Baggett are prejudicial, it is not clear what, if any prejudicial effect such statements would have on the jury. While Plaintiff's comments reflected her racial bias, they were not so antagonistic, vulgar, or caustic in nature so as to create a prejudicial effect where a reasonable juror would characterize Plaintiff as an individual who is blindly motivated by her prejudice in bringing this action against City Defendants.

*Montanez v. City of Syracuse, et al.*                                                    2 August 2019
                                                                                                 Page 6

Moreover, and contrary to Plaintiff's assertion, admission would not confuse the issues before the jury. Plaintiff has not alleged that Chester Thompson's actions were motivated by race. Furthermore, for the same reasons that the jury would not be misled by this impeachment of Plaintiff's credibility, Plaintiff's racial biases would be one relevant point of motivation relating directly to this case, and would not go astray into a trial within a trial about an unrelated comment regarding her alleged racial prejudices.

Plaintiff's statements are merely one factor that relates to Plaintiff's credibility as a witness. The statements made by Plaintiff to Mr. Baggett illustrate that, among other things, Plaintiff is at least partially motivated by her own, racially prejudicial sentiments in testifying against Defendants. Consequently, as to Plaintiff's credibility as a witness, these racially charged statements should be deemed admissible.

We thank you for your attention and consideration in this matter.

Respectfully submitted,

          /s/
Todd M. Long, Esq.
Assistant Corporation Counsel
Federal Bar Roll No. 519301

TML/
Encls.

CC:     All attorneys of record electronically via CM/ECF