UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MALEATRA MONTANEZ,

                 Plaintiff,

        -against-                    6:16-CV-0550 (BKT/TWD)

CITY OF SYRACUSE, POLICE
OFFICER CHESTER D. THOMPSON,
CHIEF OF POLICE FRANK L. FOWLER and
POLICE CAPTAIN THOMAS GALVIN,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## PLAINTIFF'S MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS *IN LIMINE*


Dated:  New York, New York
        August 1, 2019




*Sivin & Miller, LLP*
*Attorneys for plaintiff*
*20 Vesey Street, Suite 1400*
*New York, NY  10007*
*(212) 349-0300*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ..................................................................................................................... 1

I.     Documentation of Chester Thompson's Insurance Fraud Is Admissible........................ 1

II.    Evidence  Of Rumors Of Prior Sexual Assaults Is Admissible ..................................... 2

    A.    Baggett's Knowledge of Prior Rumors ......................................................... 2

    B.    Rumors of Thompson's Prior Sexual Assaults Are Admissible.................................. 4

III.    Testimony of Prior, Unreported Sexual Assaults By Thompson is Admissible ............. 5

    A.    Intent, Absence of Mistake, and Lack of Accident ...................................... 5

    B.    Corroboration of Rumors................................................................................ 7

IV.    Melissa Popcun's Testimony Is Admissible ................................................................ 7

V.    Cheryle Bassett's Testimony Is Admissible................................................................. 8

VI.    Rebecca Thompson's Testimony Is Admissible ........................................................... 8

VII.    Plaintiff's Expert, Robert Brown, is Qualified, and His Testimony is Admissible ......... 9

VIII.    Paula Weinkauf and Charlene Emeterio Should Be Permitted To Testify ................... 12

    A.    Explanation for Late Disclosure And Lack of Prejudice............................................ 13

    B.    The Importance And Propriety Of The Testimony .................................................... 14

XI.    Defendants' Motion *In limine* "To Preclude All Medical Records That Do Not Have A Sponsoring Medical Professional" Should Be Denied ........................................................... 16

    A.    Plaintiff's Medical Records Are Admissible............................................................ 16

XIII.    Defendants' Motion *In limine* To Preclude Lay Opinions As To Medical Diagnoses Should Be Denied ............................................................................................................... 18

XIV.    Evidence of Plaintiff's Economic Damages Should Not Be Precluded, As Her Disclosures Were Either Proper Or Substantially Justified And Harmless ............................. 18

CONCLUSION..................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*24/7 Records, Inc. v. Sony Music Entm't, Inc.*,

    566 F.Supp.2d 305 (S.D.N.Y. 2008)..................................................................... 33

*Ali v. Connick*,

    2016 U.S. Dist. LEXIS 67466 (E.D.N.Y. 2016)..................................................... 25

*Apex Oil Co. v. DiMauro*,

    1990 U.S. Dist. LEXIS 10867 (S.D.N.Y. 1990) .................................................... 12

*Bah v. N.Y.*,

    2017 U.S. Dist. LEXIS 13285 (S.D.N.Y. 2017) .................................................... 22

*Booker v. Graham*,

    2018 U.S. Dist. LEXIS 23995 (N.D.N.Y. 2018) ................................................... 12

*Brantley v. Fischer*,

    2013 U.S. Dist. LEXIS 141241 (N.D.N.Y. 2013) ................................................. 13

*Bucci v. Essex Ins. Co.*,

    393 F.3d 285 (1st Cir. 2005)................................................................................... 29

*Carlson v. Geneva City Sch. Dist.*,

    2011 U.S. Dist. LEXIS 107072 (W.D.N.Y. 2012) ................................................ 24

*Certain Underwriters at Lloyd's v. Amtrak*,

    2017 U.S. Dist. LEXIS 45823 (E.D.N.Y. 2017).................................................... 33

*Consolidated Edison Co. v. NLRB*,

    305 U.S. 197 (1938)............................................................................................... 16

*Cook v. Hoppin*,

    783 F.2d 684 (7th Cir. 1986) ................................................................................. 29

*Estate of Jaquez v. Flores*,

    2016 U.S. Dist. LEXIS 34521 (S.D.N.Y. 2016).................................................... 33

*Ferreira v. City of Binghamton*,

    2016 U.S. Dist. LEXIS 126011 (N.D.N.Y. 2016) ........................................... 20, 21

*Franz v. New England Disposal Technologies, Inc.*,

    2011 U.S. Dist. LEXIS 129671 (W.D.N.Y. 2011) ................................................ 25

*Gandarilla v. Sanchez,*

    2012 U.S. Dist. LEXIS 115265 (S.D.N.Y. 2012) ..................................................... 13

*Genomma Lab USA, Inc. v. Venus Am. Corp.,*

    2017 U.S. Dist. LEXIS 59121 (S.D.N.Y. Mar. 27, 2017) ....................................... 33

*Gonzales v. Police Dep't, San Jose,*

    901 F.2d 758 (9th Cir. 1990) ................................................................................. 12

*Grant v. City of Syracuse,*

    2018 U.S. Dist. LEXIS 170469 (N.D.N.Y. 2018) ................................................... 28

*Greasley v. United States,*

    2018 U.S. Dist. LEXIS 9113 (W.D.N.Y. 2018) ....................................................... 25

*Haas v. Del. & Hudson Ry. Co.,*

    2007 U.S. Dist. LEXIS 16665 (N.D.N.Y. 2007) ..................................................... 24

*Haas v. Del. & Hudson Ry. Co.,*

    282 F. App'x 84 (2d Cir. 2008) ............................................................................. 24

*Haber v. ASN 50th St.,*

    LLC, 272 F.R.D. 377 (S.D.N.Y. 2011) ................................................................... 32

*Hinton v. Patnaude,*

    162 F.R.D. 435 (N.D.N.Y. 1995) ........................................................................... 22

*Hodges v. Keane,*

    886 F. Supp. 352 (S.D.N.Y. 1995) ......................................................................... 28

*In re M/V MSC Flaminia,*

    2017 U.S. Dist. LEXIS 119146 (S.D.N.Y. 2017) ................................................... 19

*Jordonne v. Ole Bar & Grill, Inc.,*

    2016 U.S. Dist. LEXIS 56943 (S.D.N.Y. 2016) ..................................................... 28

*LaBarre v. Werner Enters.,*

    2015 U.S. Dist. LEXIS 162598 (N.D.N.Y. 2015) ................................................... 23

*Lee v. Cty. of Onondaga,*

    2016 U.S. Dist. LEXIS 195483 (N.D.N.Y. 2016) ................................................... 21

*Lesser v. Camp Wildwood,*

    2003 U.S. Dist. LEXIS 16921 (S.D.N.Y. 2003) ..................................................... 26

*Lovelace v. McKenna,*
  894 F.3d 845 (7th Cir. 2018) ................................................. 29

*Luce v. United States,*
  469 U.S. 38 (1984) ................................................................ 26

*McCullock v. H.B. Fuller Co.,*
  61 F.3d 1038 (2d Cir. 1995) .................................................. 19

*Montanez v. City of Syracuse,*
  2019 U.S. Dist. LEXIS 10351 (N.D.N.Y. 2019) ................. 9, 18

*Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.,*
  937 F. Supp. 276 (S.D.N.Y. 1996) ....................................... 26

*Outley v. City of N.Y.,*
  837 F.2d 587 (2d Cir. 1988) ................................................. 22

*Patterson v. Balsamico,*
  440 F.3d 104 (2d Cir. 2006) .......................................... 23, 24

*Peterson v. Pan Am Rys.,*
  2015 U.S. Dist. LEXIS 66367 (N.D.N.Y. 2015) ................. 26

*Picciano v. McLoughlin,*
  2010 U.S. Dist. LEXIS 114704 (N.D.N.Y. Oct. 28, 2010) ............. 27, 30

*Rich v. Tee Bar Corp.,*
  2013 U.S. Dist. LEXIS 139054 (N.D.N.Y. 2013) ............... 30

*Ritchie Risk - Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC,*
  280 F.R.D. 147 (S.D.N.Y. 2012) .......................................... 33

*Taylor v. N.Y. State Office for Developmental Disabilities,*
  2016 U.S. Dist. LEXIS 63224 (N.D.N.Y. 2016) ................. 22

*United States v. Abel,*
  469 U.S. 45 (1984) ................................................................ 10

*United States v. Brand,*
  467 F.3d 179 (2d Cir. 2006) ................................................. 15

*United States v. Fusco,* 748 F.2d 996 (5th Cir. 1984) .............. 10

*United States v. Int'l Bhd. of Teamsters,*
  998 F.2d 120 (2d Cir. 1993) ................................................. 15

*United States v. Joseph*,

    542 F.3d 13, 21-22, (2d Cir. 2008) ................................................................ 21

*United States v. Lavictor*,

    848 F.3d 428 (6th Cir. 2017) ................................................................ 14, 15

*United States v. Locascio,*

    6 F.3d 924 (2d Cir. 1993)................................................................ 19

*United States v. Quinones,*

    511 F.3d 289 (2d Cir. 2007)................................................................ 25

*Vann v. City of N.Y.,*

    72 F.3d 1040 (2d Cir. 1995)................................................................ 21

*Vazquez v. City of New York,*

    2014 U.S. Dist. LEXIS 124483 (S.D.N.Y. 2014)................................................ 20

**Rules**                                                     **Page(s)**

Fed R. Civ. P. 26(a) ................................................................ 25

Fed. R. Civ. P. 37(1) ................................................................ 23, 33

Fed. R. Civ. P. 37(c)(1) ................................................................ 31

Fed. R. Civ. P. 26 ................................................................ passim

Fed. R. Evid. 404(b)(2) ................................................................ 14, 16

Fed. R. Evid. 608(b) ................................................................ 10

Fed. R. Evid. 803(3) ................................................................ 26

Fed. R. Evid. 803(4) ................................................................ 30

Fed. R. Evid. 803(6) ................................................................ 29

FRCP 26(a)(2)(C) ................................................................ 26

FRCP 37(1) ................................................................ 25, 27

Local Civil Rule 16.1(d)(8)................................................................ 32

# PRELIMINARY STATEMENT

This memorandum of law and the August 1, 2019 Declaration of Edward Sivin, together with the exhibits annexed thereto, are submitted by plaintiff in opposition to the motions *in limine* submitted by defendants City of Syracuse and Thomas Galvin. For the reasons stated below, defendants' motions should be denied.

# ARGUMENT

## I.   Documentation of Chester Thompson's Insurance Fraud Is Admissible

With a benign choice of words, defendants seek to exclude "documentation regarding Chester Thompson's 2002 discipline relative to his health insurance submissions at work." The actual records that defendants seek to exclude contain findings by the Syracuse Police Department (SPD) that Thompson engaged in "an overt 'fraudulent insurance act' to obtain personal insurance by supplying materially false information in that application" and an "overt act of deception" against the SPD. *See* Exhibit 1 to August 1, 2019 Declaration of Edward Sivin (hereinafter "Sivin Declaration"). The records also document that, when confronted with the evidence of his insurance fraud, Thompson stated to the SPD, "I've always been told to never admit to anything…."

Defendants seek to create a straw man by arguing that evidence that Thompson committed fraud does not indicate a propensity to commit sexual assault. As this Court noted in its decision on defendants' motion for partial summary judgment, however, "(w)hile the health insurance complaint does not reflect sexual misconduct, the SPD concluded that Thompson had engaged in 'a pattern of the less (sic) than truthful behavior." *See Montanez v. City of Syracuse*, 2019 U.S. Dist. LEXIS 10351, at *67 (N.D.N.Y. 2019). The records that defendants seek to preclude document that Thomas Galvin conducted the hearing into the allegation of insurance fraud and that he also "Personally served" on Thompson the resulting document notifying him of the SPD's determination and advising him of the consequences of future acts in violation of the Rules & Regulations of the SPD. Evidence of the SPD's and Galvin's knowledge of Thompson's penchant for "fraud," "deception," and unwillingness ever to "admit to anything"—

documented in the records of the investigation into the insurance fraud—thus is relevant to an assessment of whether the SPD and Galvin were negligent and/or acted with deliberate indifference in their investigation into subsequent allegations by Candy Buske, Cari Buske, and Patricia Popcun against Thompson.

As defendants acknowledge, Fed. R. Evid. 608(b) does not prohibit plaintiff from questioning Thompson about the insurance fraud, as it is probative of Thompson's "character for truthfulness or untruthfulness." Moreover, since Galvin's testimony necessarily will involve some discussion of his prior knowledge of Thompson's character, plaintiff also can cross-examine Galvin about his prior knowledge that Thompson had committed insurance fraud and engaged in an overt act of deception. *See* Fed. R. Evid. 608(b) (allowing such cross-examination if "probative of the character for truthfulness or untruthfulness of…(2) another witness whose character the witness being cross-examined has testified about").

Finally, in the event Thompson or Galvin denies what is contained in the records of the SPD's investigation of Thompson's insurance fraud, plaintiff is not, as suggested by defendants, prohibited from offering those records in evidence. Fed. R. Evid. 608(b) prohibits plaintiff from introducing extrinsic evidence solely "to attack…the witness's character for truthfulness." It does not bar admission of extrinsic evidence for any other purpose. *See United States v. Abel*, 469 U.S. 45 (1984); *United States v. Fusco*, 748 F.2d 996 (5th Cir. 1984). Here, since the records of the SPD's and Galvin's investigation into Thompson's insurance fraud are relevant to the issue of notice, i.e., these defendants' knowledge of Thompson's pattern of deceit, the admission of these records is not barred by Rule 608(b).

## II.    <u>Evidence Of Rumors Of Prior Sexual Assaults Is Admissible</u>

Defendants seek to exclude the testimony of John Baggett (Baggett) regarding rumors of prior acts of sexual misconduct by Thompson on the grounds that a) Baggett's testimony regarding those rumors was vague and conclusory and b) the rumors are, in any event, inadmissible hearsay. Both arguments should be rejected.

### A.    <u>Baggett's Knowledge of Prior Rumors</u>

The substance of Baggett's deposition testimony regarding the rumors of Thompson's sexual misconduct has been addressed extensively in plaintiff's Memorandum of Law in Partial Opposition to Defendants' Motion for Summary Judgment.  The points that bear greatest emphasis, however, are that Baggett testified that the rumors of sexual assault by Thompson abounded even before Frank Fowler was Chief of Police, *Baggett Depo.,* p. 49, lines 16-23*,* that those rumors were "running rampant," *id*., p. 45, lines 15-16, and that Baggett was aware of these rumors notwithstanding that he had never even worked on the same team or during the same shift as Thompson, *id., p.* 23.  Plaintiff also has a good faith belief that once he is compelled to give trial testimony before this Court, Baggett will be more forthcoming and will offer more specific and extensive information regarding the SPD's and Galvin's prior knowledge of Thompson's conduct than that to which he was willing to testify at his deposition.

Specifically, in her August 23, 2018 Declaration in opposition to defendants' motion for partial summary judgment (Docket 99-2), plaintiff swore that Baggett relayed to her much more detailed information about Thompson's prior malfeasance, including that one of Thompson's victims was only 15 years of age, that Thompson raped prostitutes "at a housing area near 'Wescott' and 'Genesee' Street in Syracuse," and that "Captain Galvin…knew all about Chester Thompson but had been sweeping it under the rug."  Further, Baggett himself testified at his deposition that he has additional information regarding Thompson that he was unwilling to disclose at that time.

> Q. Okay. Do you know of anyone else who would have any information about any allegations regarding Chester Thompson?
>
> A. I mean there's a person you can contact, but I don't think it's up to me to provide that person's name, and I'm not going to do it.
>
> Q. You say the person to contact, you mean there is a person you feel has this additional knowledge?
>
> A. It's a person that has all the information.  All of it. If you just start to think who that person might be, you'll be able to figure it out.
>
> Q. Is that person Captain Galvin?
>
> A. Well, he's one of the people I mean, but he's not the person I'm thinking of. I already know you guys have him subpoenaed and going to be getting depositions from him and bringing him down.

*Baggett Dep.*, p. 39, lines 8-23.  Despite being reminded of his obligations pursuant to the subpoena, Baggett refused to divulge any further information regarding Chester Thompson.  *Id.*, p. 41, line 2 ("I'm not providing that information").  Plaintiff should be allowed to pursue this line of questioning further in open court, a venue in which Baggett likely will feel compelled, and can be directed by the Court, to answer.

### B.  Rumors of Thompson's Prior Sexual Assaults Are Admissible

While evidence of rumors may not be admissible for the truth of those rumors, courts have allowed such evidence for a host of other issues.  Thus, in *Apex Oil Co. v. DiMauro,* 1990 U.S. Dist. LEXIS 10867 (S.D.N.Y. 1990), the court denied a motion to exclude all evidence of rumors, noting that "evidence that rumors...*were disseminated* is not hearsay when they are not offered for the truth of the rumor but for the fact that rumors were spread."  *Id.* at * 7 (emphasis added).  In *Booker v. Graham,* 2018 U.S. Dist. LEXIS 23995, at *12 (N.D.N.Y. 2018), the court ruled that rumor evidence "was not hearsay because it was not offered for the truth of the matters asserted.  This evidence was offered for the effect it had on Defendants."

That the rumors of some of Thompson's prior sexual assaults may not have been substantiated also is a no basis for excluding evidence of those rumors.  In *Gonzales v. Police Dep't, San Jose*, 901 F.2d 758 (9th Cir. 1990), the court found that rumors of prior misconduct by a police office, even while not substantiated, provided a good faith basis for the police department to believe that the officer had indeed engaged in such conduct.

> Gonzales has never received any formal or informal reprimands nor has he been the target of any Internal Affairs complaint or investigation. However, members of the Department's command staff testified that they had heard that he had a drinking problem, was "heavy handed" in the field, and lacked "command presence." Gonzales points out that these rumors were never substantiated nor corroborated by the command staff. While the evidence concerning these allegations is far from persuasive, our review of the record reveals that it is sufficient to support a conclusion that the command staff had a reasonable, good faith belief that appellant experienced a problem with alcohol at the time of his divorce.

*Id*. at p. 759 n.1.

Here, given Baggett's testimony that the rumors of Thompson's sexual misconduct were "running rampant" even prior to Fowler's tenure as Chief of Police—but during Galvin's tenure as head of the Office of Professional Standards—and that Baggett knew of these rumors notwithstanding that he never worked with Thompson, the trier of fact is not required to credit Galvin's self-serving denials that he ever heard of these rumors.  In *Gandarilla v. Sanchez,* 2012 U.S. Dist. LEXIS 115265, at *29-30 (S.D.N.Y. 2012), the court found that evidence that allegations of prior sexual malfeasance were "notorious" throughout the police department sufficed "to raise a genuine issue of fact as to whether the City should have perceived a propensity to abuse subordinates as to which the City should have taken remedial or protective action."  Similarly, in *Brantley v. Fischer*, 2013 U.S. Dist. LEXIS 141241, at *33 (N.D.N.Y. 2013), the court noted that it is "patently reasonable to infer that MCF's Superintendent knew or should have known of the alleged widespread pattern of medical neglect Plaintiff alleges to have occurred at MCF….").  Accordingly, plaintiff should not be precluded from offering evidence of these rumors at trial.

### III.    Testimony of Prior, Unreported Sexual Assaults By Thompson is Admissible

Testimony by victims of prior, unreported sexual assaults by Thompson is admissible a) pursuant to Fed. R. Evid. 404(b)(2) to demonstrate "intent, "absence of mistake" and/or "lack of accident" and b) as tending to corroborate the evidence that rumors of Thompson's prior sexual assaults were running rampant.

### A.    Intent, Absence of Mistake, and Lack of Accident

The testimony of prior, unreported incidents of sexual assault by Thompson while on duty is admissible under Fed. R. Evid. 404(b)(2), which provides that such evidence may be admissible to prove "motive, opportunity, *intent,* preparation, plan, knowledge, identity, *absence of mistake*, or *lack of accident*."  (emphasis added).  Here, plaintiff alleges that she was raped by Thompson after he responded to a 911 call that she made to the Syracuse Police Department.  Thompson denies that he intended to, or actually did, sexually assault plaintiff.  Instead, he alleges that the sex was consensual; he claims that he interpreted plaintiff's behavior as flirtatious and as sexual advances towards him, and that he had sex with her after she led him by the hand into her living

room.  In his Memorandum of Law in opposition to plaintiff's motions *in limine*, Chester Thompson refers to his encounter with plaintiff as an "accident."  (Docket 124-3, p. 1).

To demonstrate Thompson's actual intent, absence of mistake and/or lack of accident regarding plaintiff's motives, plaintiff seeks to introduce evidence of other sexual assaults committed by Thompson after he responded to 911 calls or otherwise in his official capacity as a Syracuse Police Officer.  In the cases of Shakina Thompson and Kimi Fletcher, both of whom allege that Thompson, while on duty, sexually assaulted them, Thompson denies the allegations and alleges that the sex was consensual and took place only after the women made sexual advances towards him.  In the case of Cheryle Bassett, who alleges that Thompson repeatedly raped her, including when he was on duty and in uniform, Thompson similarly alleges that all of the sex was consensual.[1]

*United States v. Lavictor*, 848 F.3d 428 (6th Cir. 2017), where the defendant was convicted of sexually assaulting his girlfriend, is particularly instructive on this issue.  To rebut the assertion that the defendant and his girlfriend merely engaged in consensual "rough sex," the prosecution introduced evidence of prior, uncharged acts of assault by the defendant against other women.  In affirming the conviction, the Sixth Circuit held that the lower court properly admitted the evidence under Fed. R. Evid. 404(b)(2) to demonstrate the defendant's intent and absence of mistake with respect to the incident involving his girlfriend.  *Id.* at p. 446.  In *United States v. Brand*, 467 F.3d 179 (2d Cir. 2006), where the defendant was convicted of having sexual relations with a minor, the Second Circuit held that the lower court properly allowed evidence of a prior bad act (the defendant's possession of child pornography) to rebut the defendant's claim that he never intended to have sex with the child, but instead was induced and entrapped into doing so.  The court held that evidence of the defendant's possession of child pornography was properly admitted under Fed. R. Evid. 404(b)(2) to show whether the

---

[1] In her September 26, 2017 Affidavit (Docket 99-4), Melissa Popcun similarly alleges that Thompson intimidated her into performing oral sex on him.  Unlike the incidents involving plaintiff, Shakina Thompson and Kimi Fletcher, however, Chester Thompson denies that he engaged in any sexual conduct with Melissa Popcun.  In her August 6, 2018 Declaration (99-15), Elizabeth Elbayadi alleges that Thompson, while in uniform, raped her inside a porta potty.  Thompson denies having ever met Elbayadi.

defendant's travelling across state lines to meet with the child involved "an intent to engage in sexual activity with a minor or, alternatively, for a more benign reason." *Id.* at p. 199.

Here, evidence of prior, uncharged acts of sexual assault against other women is admissible to demonstrate Thompson's "intent" and "absence of mistake" during his sexual encounter with plaintiff. Specifically, evidence of those other sexual assaults is admissible to prove that Thompson intended to sexually assault plaintiff, and that the sex was not the result of a mistaken belief that plaintiff, like other women with whom he acknowledged having sex on duty, had made sexual advances towards him and consented to the sex.

### B. Corroboration of Rumors

That Thompson had sexually assaulted several other women, even where those assaults had not been formally reported, also tends to corroborate the existence of rampant rumors that Thompson had sexually assaulted other women. *See United States v. Int'l Bhd. of Teamsters*, 998 F.2d 120, 124 (2d Cir. 1993) ("Though 'mere uncorroborated hearsay or rumor does not constitute substantial evidence,' *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938), 'reliable hearsay may constitute substantial evidence to support an administrative decision.'"). Stated somewhat differently, rumors of sexual assault are more likely to abound when those sexual assaults actually took place. Accordingly, evidence of the prior sexual assaults, even if not reported to the SPD or Galvin, is relevant to plaintiff's claim that rumors of these sexual assaults were "running rampant" and that the SPD and Galvin knew or should have known about these rumors.

### IV. Melissa Popcun's Testimony Is Admissible

Testimony from Melissa Popcun's is admissible not only for the reasons stated above (i.e., to demonstrate Thompson's intent and absence of mistake and to corroborate the testimony regarding rampant rumors of sexual assault), but also to rebut Galvin's claim that he made "every attempt" to contact Melissa Popcun and that she "refused" to meet with him. Popcun's testimony also is germane to the issue of proximate cause, since she alleges in her affidavit (Docket 99-4) that had anyone from the SPD contacted her during the investigation, she would have told them about what occurred with Thompson. The trier of fact reasonably can conclude that had the SPD heard directly from Popcun that Thompson had her perform oral sex on him

while responding to a 911 call, the SPD would have had no choice but to take remedial action against Thompson that likely would have prevented him from sexually assaulting any other women.

### V.    Cheryle Bassett's Testimony Is Admissible

Cheryle Bassett's testimony about Thompson's repeated rapes of her similarly is admissible to demonstrate Thompson's intent and absence of mistake and to corroborate the testimony of rampant rumors.  Bassett also will testify to a) her having informed the SPD of her sexual relationship with Chester Thompson and the SPD's response to that information and

b) Chester Thompson's romantic relationship with Rebecca Thompson, who was Chester Thompson's supervisor and later signed off on the recommendation that the allegations of sexual assault of Melissa Popcun be deemed "unsubstantiated."  Defendants' motion *in limine* with respect to Bassett makes no reference to that prospective testimony, the substance of which was set forth in Bassett's July 30, 2018 Declaration.  (Docket 99-10).

### VI.    Rebecca Thompson's Testimony Is Admissible

Defendants seek to preclude any testimony from Rebecca Thompson regarding an alleged romantic relationship with Chester Thompson, not because such testimony would be irrelevant, but instead because no such relationship existed; Rebecca Thompson, it is alleged by defendants, only flirted with Chester Thompson one time in 1990.  Plaintiff has a good faith basis, including but not limited to the information contained in the July 30, 2018 Declaration of Cheryle Bassett (Docket 99-10) and the August 6, 2018 Declaration of Elizabeth Elbayadi (Docket 99-15), for pursuing further the questioning of Rebecca Thompson regarding a romantic relationship with Chester Thompson.  Such a relationship would tend to demonstrate a bias or motive on behalf of Rebecca Thompson that, among other things, could have influenced her decision to endorse Galvin's recommendation that the allegation regarding Melissa Popcun be deemed unsubstantiated and that no steps be taken against Chester Thompson in connection with that allegation.

Although defendants have not addressed the issue in their motions *in limine*, plaintiff also is entitled to elicit testimony from Rebecca Thompson that when she signed off on

the recommendation that the Popcun claim be deemed unsubstantiated, she relied in part on a representation by Galvin that Melissa Popcun refused to meet with any Syracuse police officer and that Popcun would not return any of Galvin's phone calls to her.  *Rebecca Thompson Depo., pp. 23-24.*  In its decision on defendants' motion for partial summary judgment, this Court referenced the testimony from Rebecca Thompson that "Galvin had told her that he had 'reached out' to Melissa Popcun-Roach but that 'she would not return any of his calls or give him any information.'" *See Montanez v. City of Syracuse*, 2019 U.S. Dist. LEXIS 10351, at *20-21.

## VII.    Plaintiff's Expert, Robert Brown, is Qualified, and His Testimony is Admissible

Defendants' motion significantly understates the nature of Brown's background and experience as they relate to the propriety of his serving as an expert witness in this case. Plaintiff refers the Court to its January 23, 2019 decision and order, which contains an accurate discussion of Brown's background.  *See Montanez v. City of Syracuse*, 2019 U.S. Dist. LEXIS 10351, at *27-30.  Pages 1-2 of the August 24, 2018 Declaration of Robert (Docket 99-13) (hereinafter "Brown Declaration"), set forth additional information regarding Brown's history. Given his background and experience as, among other positions, Chief Investigator of the NYPD's Special Prosecutor's Office, Brown is perhaps uniquely qualified to offer opinions that would assist in the assessment of Galvin's and the SPD's responses, or lack thereof, to prior allegations of misconduct by Chester Thompson.

That Brown has worked as a lawyer over the past 19 years does not disqualify him as an expert in police procedures.  Brown's law practice includes defending "law enforcement officials against civil and administrative charges" (Brown Declaration, ¶ 4), an undertaking that necessarily requires one to keep abreast of current standards of acceptable police conduct.  Brown also is "currently a member of the Fraternal Order of Police, the Captain's Endowment Association, and the American Academy for Professional Law Enforcement…(and)…(a)s such, (he) keep(s) abreast of evolving norms of good and accepted police practice and issues relating to police misconduct." *Id.*, ¶ 5.

That Brown has not previously served as an expert in police procedures in a civil or criminal case also does not disqualify him as an expert.  As stated by the Second Circuit, "(a)lthough he had never before been qualified as an expert witness, even the most qualified

expert must have his first day in court." *United States v. Locascio,* 6 F.3d 924, 937 (2d Cir. 1993); *see also In re M/V MSC Flaminia,* 2017 U.S. Dist. LEXIS 119146, at *204 n.9 (S.D.N.Y. 2017) (that one has never served as an expert witness before is "irrelevant to whether he is specifically qualified to provide the offered testimony in this case, and there is of course no presumption against first-time expert witnesses"). Any remaining disputes as to the strength of Brown's credentials "go to the weight, not the admissibility, of his testimony." *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1044 (2d Cir. 1995).

In their pre-trial motion to strike Brown's Declaration, and again in their current motion to precluded Brown's testimony, defendants challenge Brown's methodology by citing primarily to cases involving expert testimony in areas involving highly technical matters such as chemical engineering, anti-trust regulations, banking, and economics. While those areas of study typically involve exacting scientific standards, statistical studies and/or methodologies likely to be published in peer-reviewed journals, courts do not require that level of rigor with respect to expert testimony on police procedures.

In *Vazquez v. City of New York*, 2014 U.S. Dist. LEXIS 124483 (S.D.N.Y. 2014), the court rejected the defendants' Daubert challenge to a report of the plaintiff's police expert, noting that expert testimony in the area of police procedure neither involves nor requires the exactitude typically found in some other areas of study.

> (A)lthough Signorelli's opinions may not rest on statistical studies or traditional scientific methods…they are, nevertheless, based on data — including personal experience, interviews, review of police manuals and other primary sources, and review of academic literature — "of a type reasonably relied upon by experts in various disciplines of social science." *Katt v. City of N.Y.*, 151 F. Supp. 2d 313, 357 (S.D.N.Y. 2001) (Lynch, J.); *accord Cerbelli v. City of N.Y.*, No. 99-CV-6846 (RML), 2006 U.S. Dist. LEXIS 69902, 2006 WL 2792755, at *8 (E.D.N.Y. Sept. 27, 2006); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 148-49, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) (acknowledging that, in some fields, the reliability inquiry may turn on personal knowledge and experience rather scientific method).

*Id.* at *34.

Similarly, in *Ferreira v. City of Binghamton,* 2016 U.S. Dist. LEXIS 126011 (N.D.N.Y. 2016), the court rejected a *Daubert* challenge to the plaintiff's police expert and noted that the expert's methodology, which drew on his experience as a police officer and his comparison of the actions of the Binghamton Police Department with those of other departments, was adequate.

> The Court finds Maloney's methodology adequate to the type of questions he attempts to answer and to the field in which his expertise lies—police procedure, tactics and operations. Such investigations are not likely to be published in peer-reviewed journals and are not subject to randomized testing. Instead, Maloney's report necessarily compares the actions of the Binghamton Police and Officer Miller to the actions and methods of other police departments, and evaluates the events in light of his training. Under the circumstances, such methodology is appropriate. Defendants' arguments with the methodology are related more to Mahoney's conclusions. The persuasiveness of his conclusions is an issue for the jury.

*Id.* at *19-20*. In *Lee v. Cty. of Onondaga*, 2016 U.S. Dist. LEXIS 195483 (N.D.N.Y. 2016), this Court rejected a challenge to the foundation of the opinions of a witness retained to give expert testimony on the use of excessive force. In so doing, the Court found it sufficient that the expert "reviewed relevant documents and testimony and based his opinions upon, among other things, his experience 'in investigating and supervising investigations of the use of force within correctional environments.'" *Id*. at *4.

Here, too, Brown's opinions as to the deficiencies in the SPD's responses to reports and allegations of prior malfeasance by Thompson were based on, among other things, his extensive experience in investigating and responding to allegations of police misconduct, his review of the SPD's General Rules and Procedure Manual, "relevant literature regarding issues of police integrity and proper responses to allegations of police misconduct," and his comparison of the SPD's actions with "good and accepted standards of police practice." *Brown Declaration, at ¶¶ 6, 7.* Defendants' challenges to some of Brown's assumptions and to the purported lack of specificity regarding the literature and other documents on which he relied go only to the weight of Brown's opinions, not to their admissibility. These challenges can be fleshed out by defendants during their cross-examination of Brown. *See United States v. Joseph,* 542 F.3d 13, 21-22, at *19-20 (2d Cir. 2008).

11

Finally, the opinions expressed by Brown regarding defendants' negligent supervision of Thompson and their deliberate indifference to allegations of malfeasance by Thompson are of the type that have been allowed by courts in similar cases.  In *Vann v. City of N.Y.,* 72 F.3d 1040, 1049-50 (2d Cir. 1995), where the plaintiff alleged that the NYPD was at fault for deliberately retaining an unfit police officer, the court stated that "(d)eliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was "contrary to the practice of most police departments" and was "particularly dangerous" because it presented an unusually high risk that constitutional rights would be violated." (citation omitted).  Similarly, in *Bah v. N.Y.,* 2017 U.S. Dist. LEXIS 13285, at *38 (S.D.N.Y. 2017), the court determined that the prospective testimony of the plaintiff's police expert would be useful to the jury in determining whether supervisory personnel "were negligent in their supervision of the officers under their command."  Here, Brown's comparison of defendants' responses to allegations of malfeasance by Thompson with SPD's General Rules and Procedure Manual own internal rules and policies is particularly relevant to plaintiff's claim of negligent supervision of Thompson.

### VIII.   <u>Paula Weinkauf and Charlene Emeterio Should Be Permitted To Testify</u>

Defendants seek to preclude the testimony of Paula Weinkauf and Charlene Emeterio pursuant to Fed R. Civ. P. 37(1) on the grounds that they were insufficiently disclosed as witnesses under Fed. R. Civ. P. 26.  The Second Circuit has called preclusion an 'extreme sanction(,)' advising that the Court should first "inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Taylor v. N.Y. State Office for Developmental Disabilities*, 2016 U.S. Dist. LEXIS 63224, at *11 (N.D.N.Y. 2016) (*quoting Outley v. City of N.Y.*, 837 F.2d 587, 591 (2d Cir. 1988); *Hinton v. Patnaude*, 162 F.R.D. 435, 439 (N.D.N.Y. 1995) (noting that preclusion is a "drastic remedy" that should be considered only "in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure.")).

Here, an examination of the facts in light of the relevant *Patterson* factors shows 1) that plaintiff has a valid reason for the timing of the disclosure; 2) that the testimony of the potentially precluded witness is of importance; and 3) that defendants suffer comparatively little prejudice. *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).  Thus, any

insufficiencies in plaintiff's disclosures are substantially justified and harmless, and defendants' motion *in limine* should be denied, or, in the alternative, reserved for if and when either of the potential witnesses is called during trial. *See LaBarre v. Werner Enters.*, 2015 U.S. Dist. LEXIS 162598, at *15-16 (N.D.N.Y. 2015) (evaluating *Patterson* factors and finding that plaintiff's late disclosure of potential witness was harmless).

### A. **Explanation for Late Disclosure And Lack of Prejudice**

Plaintiff's explanation for the timing of the disclosure of the witnesses is as follows: since being raped by Chester Thompson in February of 2015, plaintiff has experienced mental health issues. Earlier this year, after a long period without therapy, plaintiff *independently* sought out mental health counseling and treatment at The Neighborhood Center in Rome, NY, where she was treated by Paula Weinkauf and Charlene Emeterio. On June 17 of this year, just one day after plaintiff made her counsel aware that she was treated by Weinkauf and Emeterio, plaintiff sent a disclosure pursuant to her continuing obligation under Fed. R. Civ. P. 26(e) identifying Weinkauf and Emeterio as individuals likely to have discoverable information that plaintiff may use to support her claims at trial, and enclosing for defendants' use HIPAA-compliant authorizations allowing for the release of any records generated in connection with her treatment. *See* Exhibit 2 to Sivin Declaration. That same day, plaintiff requested records from The Neighborhood center; plaintiff received those records approximately one month later, and, on the same day they were received, exchanged them with defendants. *See* Exhibit 3 to Sivin Declaration.

Plaintiff disclosed these two witnesses to defendants as soon as they entered into her life; indeed, it would have been impossible to have disclosed these individuals as potential witnesses a moment earlier, much less during initial mandatory disclosures pursuant to Fed R. Civ. P. 26(a). Moreover, defendants were in possession of these records at the same time as was plaintiff's counsel. As such, defendants cannot claim that plaintiff committed any "sandbagging" with new evidence, which is ultimately what the disclosure rules are intended to prevent and what FRCP 37(1) authorizes courts to punish. *See Haas v. Del. & Hudson Ry. Co.*, 282 F. App'x 84, 86 (2d Cir. 2008). To the contrary, plaintiff continued in good faith to follow the continuing obligation to supplement pursuant to FRCP 26(e) "with special promptness as the trial date approaches." *Carlson v. Geneva City Sch. Dist.*, 2011 U.S. Dist. LEXIS 107072

13

(W.D.N.Y. 2012) (internal citations omitted). Accordingly, this is unlike those situations were courts have felt compelled to preclude witnesses pursuant to FRCP 37(1). *See, e.g.*, *Haas v. Del. & Hudson Ry. Co.*, 2007 U.S. Dist. LEXIS 16665 (N.D.N.Y. 2007) (witness precluded given "plaintiff's failure to disclose information made known to him" a year in advance "(w)ithout offering any justification for his delay."); *Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) (witnesses precluded when they were disclosed just ten days before commencement of trial).

### B. The Importance And Propriety Of The Testimony

The importance of Weinkauf and Emerterio's potential testimony lies in their ability to testify to their recent observations and treatment of plaintiff, so as to assist the jury in assessing plaintiff's *current* injuries and damages stemming from the February 14, 2015 incident. After her initial treatment by Elizabeth Taetsch, plaintiff went untreated for years; therefore, in order to limit prejudice against defendants, testimony by Weinkauf and/or Emeterio could be offered not for the truth of the matters asserted, but rather for how plaintiff's apparent condition and gap in treatment informed their subsequent course of treatment, which is testimony both relevant and admissible under Fed. R. Evid. 803(3). *See United States v. Quinones*, 511 F.3d 289, 312 (2d Cir. 2007).

Calling Weinkauf and/or Emeterio would also be altogether proper. That plaintiff's Rule 26 disclosure of these witnesses did not include, as defendants insist it must have, "(i) the subject matter on which the witness is expected to present evidence under Federal Rule 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify," is disqualifying only to the extent that plaintiff would seek to have Weinkauf and Emeterio testify to additional factors reserved for experts and expert treating physicians, pursuant to FRCP 26(a)(2)(C), like permanence, the relevance of other doctors' records, and other "opinions not gleaned from (their) own diagnoses and treatment of the plaintiff," rather than as fact witnesses. *Franz v. New England Disposal Technologies, Inc.*, 2011 U.S. Dist. LEXIS 129671, at *3 (W.D.N.Y. 2011). In *Ali v. Connick*, 2016 U.S. Dist. LEXIS 67466 (E.D.N.Y. 2016), the Court explained:

> Courts in this circuit have held that treating physicians may testify
> as fact, rather than expert, witnesses. *See, e.g.*, *Puglisi v. Town of
> Hempstead Sanitary Dist. No. 2*, No. 11-CV-0445 (PKC), 2013
> U.S. Dist. LEXIS 111972, 2013 WL 4046263, at *6 (E.D.N.Y.
> Aug. 8, 2013); *Zanowic v. Ashcroft*, No. 97-CV-5292 (JGK)

14

> (HBP), 2002 U.S. Dist. LEXIS 3857, 2002 WL 373229, at *2
> (S.D.N.Y. Mar. 8, 2002). Even without being declared an expert
> under Rule 26, treating physicians "may testify as to facts acquired
> and opinions formed during (their) personal consultation . . . ."
> *Puglisi*, 2013 U.S. Dist. LEXIS 111972, 2013 WL 4046263, at *6
> (emphasis in original)

*Id.* at *18-25; *accord Greasley v. United States*, 2018 U.S. Dist. LEXIS 9113, at *10-11 (W.D.N.Y. 2018).

Neither should the provision that plaintiff provide telephone numbers of potential witnesses under Fed. R. Civ. P. 26(a)(3)(A)(i) prevent them from testifying. In the case of *Peterson v. Pan Am Rys.*, 2015 U.S. Dist. LEXIS 66367 (N.D.N.Y. 2015), the court noted that failure to disclose subject matter or any contact information for a potential witness can be harmless enough so as to not call for preclusion:

> The Court finds that Defendants' failure to disclose the subject
> matter of Olson and Rae's testimony was harmless. *Krawec v.
> Kiewit Constructors, Inc.*, No. 11 Civ. 0123, 2013 U.S. Dist.
> LEXIS 37132, 2013 WL 1104414, at *7-8 (S.D.N.Y. Mar. 1,
> 2013), is on point. In that case, the plaintiff failed to provide
> contact information and the subject matter of a disclosed witness's
> testimony. 2013 U.S. Dist. LEXIS 37132, (WL) at *7. While
> noting the plaintiff's non-compliance with the discovery rules, the
> court found that failure to provide contact information and the
> subject matter of the anticipated testimony was not "tantamount to
> providing no disclosure" at all. *Id.*

*Id.* at *9; *see also Lesser v. Camp Wildwood*, 2003 U.S. Dist. LEXIS 16921, at *7-8 (S.D.N.Y. 2003) ("drastic remedy of preclusion of preclusion" was not imposed even where party "failed to provide (expert witness's) full name, address and telephone number in violation of Rule 26(a)(3)(A)").

Finally, courts considering a motion *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). Courts also are "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial. *Luce v. United States,* 469 U.S. 38, 41-42 (1984). Accordingly, unless the Court agrees that defendants' motion *in limine* should be denied at this juncture, any decision to impose the drastic remedy of precluding

plaintiff from calling as witnesses Weinkauf and/or Emeterio pursuant to FRCP 37(1) should be reserved until if and when such an occasion arises a trial.

## IX.    Defendants' Motion *In limine* No. 9

Defendants' argument in their motion *in limine* to preclude additional medical experts fails to identify what, if any, testimony they seek to preclude and which, if any, witness they seek to preclude; their motion is therefore premature, and better reserved for a dispositive decision when and if the underlying question becomes relevant at trial.  *See Picciano v. McLoughlin*, 2010 U.S. Dist. LEXIS 114704, at *5 (N.D.N.Y. Oct. 28, 2010).  Nonetheless, plaintiff does not intend to call to testify as a medical expert any witness other than those persons, if any, who have been disclosed pursuant to the requirements of Fed. R. Civ. P. 26(a)(2)(A).  Hence, defendants' motion *in limine* should be denied, or, in the alternative, considered moot.

## X.    Plaintiff Should Be Permitted To Call As Witnesses Any and All Individuals Exchanged During Discovery Who May Reasonably Be Called

Defendants' argument in their motion *in limine* to preclude additional witnesses once again fails to identify what, if any, testimony and which, if any, witnesses they seek to preclude; their motion is therefore premature, and better reserved for a dispositive decision when and if the underlying question becomes relevant at trial.  *See Picciano v. McLoughlin*, 2010 U.S. Dist. LEXIS 114704, at *5 (N.D.N.Y. Oct. 28, 2010).

## XI.    Defendants' Motion *In limine* "To Preclude All Medical Records That Do Not Have A Sponsoring Medical Professional" Should Be Denied

To the extent that defendants insist on "*expert* foundational testimony" and "qualifying testimony from the medical professional who reached the *expert* conclusions contained in the records" to serve as a prerequisite to the admission of medical records—as opposed to, say, stipulating to the authenticity of those records—such an insistence contravenes well-established principles outlined in the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and attendant case law as to how medical records can become admissible. Defendants' motion must therefore be denied.

### A.    Plaintiff's Medical Records Are Admissible

Federal Rule of Evidence 803(6) provides an exception to the exclusion of hearsay for "records of regularly conducted activity." Fed. R. Evid. 803(6). Medical records fall under this exception "provided they are prepared in the regular course of business, near the time of occurrence, by a person with knowledge and are properly authenticated." *Jordonne v. Ole Bar & Grill, Inc.*, 2016 U.S. Dist. LEXIS 56943, at *17 (S.D.N.Y. 2016) (quoting *Hodges v. Keane*, 886 F. Supp. 352, 356 (S.D.N.Y. 1995). Here, plaintiff's medical records can be authenticated by the custodians and/or those who generated those records in the regular course of business, including, but not limited to, Elizabeth Taetsch, Paula Weinkauf, and Charlene Emeterio.

In the alternative, all such records may be properly authenticated, and therefore admissible, by a written certification from a qualified person who, to the best of their knowledge, can attest that the records are a full and complete record to date and were made in the regular course of business of the institution to make such records at the time of plaintiff's medical treatment and diagnosis or within a reasonable time thereafter. *See id*.; *accord Grant v. City of Syracuse*, 2018 U.S. Dist. LEXIS 170469, at *25-*26 (N.D.N.Y. 2018). Hence, defendants' motion must be denied.

## XII.  **Defendants' Motion *In limine* No. 12 Should Be Denied**

As discussed above, the records of plaintiff's medical treatment, to the extent they are generated in the regular course of business, are admissible under Fed R. Evid. 803(6) and/or through the testimony of custodians or those who generated the records. The inquiry then would be whether the statements contained in those records and/or through the testimony of custodians or those who generated the records. The inquiry then would be whether the statements contained in those records made for—and reasonably pertinent to—medical diagnosis or treatment or to describe medical history, past or present symptoms or sensations, their inception, or their general cause. *See* Fed. R. Evid. 803(4).

To the extent defendants seek to preclude statements relating to "fault," the cases cited by defendants are inapposite. In *Cook v. Hoppin*, 783 F.2d 684 (7th Cir. 1986), the Court ruled that the district court did not abuse its discretion in precluding plaintiff's attribution of his damages to the fault of the "wrestling match" where the doctor explicitly testified at trial that that statement was "not of the type medical personnel generally rely on in making a diagnosis and

17

providing treatment" *Id.* at 690; *cf. Lovelace v. McKenna*, 894 F.3d 845, 849-50 (7th Cir. 2018) (ruling same); *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 298-99 (1st Cir. 2005) (affirming lower court's decision to redact statement whose characterization implicating liability where statement emanated from unknown third-party). Here, defendants do not identify any statements in plaintiff's medical records that are not germane to medical diagnosis or treatment and/or relate exclusively to fault. Therefore, defendants' motion should be denied—or, in the chance event that defendants identify any such statements at trial, decision should be reserved until that time.

## XIII.    Defendants' Motion *In limine* To Preclude Lay Opinions As To Medical Diagnoses Should Be Denied

Defendants' motion *in limine* to preclude lay opinions regarding medical diagnoses should be denied, since defendants fail to identify any such statements. In the alternative, given the absence of any specificity, defendants' motion *in limine* should be ruled premature, and decision withheld for trial. *See Rich v. Tee Bar Corp.*, 2013 U.S. Dist. LEXIS 139054, at *19 (N.D.N.Y. 2013) (denying *in limine* motion to preclude lay witness testimony on an experiment, noting that " it is premature at this time to make a ruling on these objections," as "(t)he Court is unwilling to speculate, pretrial, as to what statements any witness will or will not make during trial.") (quoting *Picciano v. McLoughlin*, 2010 U.S. Dist. LEXIS 114704, at *5 (N.D.N.Y. Oct. 28, 2010)).

## XIV.    Evidence of Plaintiff's Economic Damages Should Not Be Precluded, As Her Disclosures Were Either Proper Or Substantially Justified And Harmless

Defendants argue that plaintiff's economic damages should be limited to $2,705.44 and that plaintiff should be precluded from offering evidence of any additional economic damages since plaintiff did not provide a computation of damages in her initial Rule 26 disclosure and the manner in which plaintiff did disclose her damages calls for a Rule 37(c)(1) remedy in the interest of preventing "surprise or trial by ambush." These arguments should be rejected, since plaintiff's disclosures were sufficient, and any alleged arguable insufficiency was, at worst, substantially justified and harmless. Fed R. Civ. P. 37(c)(1).

Defendants were aware that plaintiff sought economic damages long before the mandatory initial disclosure stage. In plaintiff's 50-h hearing, plaintiff indicated that her clothing was taken by SPD as part of their investigation, and that she had, for emotional reasons,

paid the building's maintenance man, Anthony, to discard her personal property—namely, the baby swing in which her infant son sat during and the couch where plaintiff and Chester Thompson sat just prior to Thompson raping her.

> Q. Did you pay him for that?
>
> A. Yeah.
>
> Q. About how much did you pay him?
>
> A. $30 because he's mopped my floors and he mopped my walls. I made him move my furniture out of my house and throw away my son's swing -- swinger and the couch that that cop was on. I made him throw away a lot of stuff, so I paid him $30 to throw away -- everything out of my house.
>
> Q. When you say, "throw away," is this when you were moving out of your apartment?
>
> A. No, it's not when I was moving out of my apartment.
>
> Q. This would be before you moved?
>
> A. Yes, this is before I moved.
>
> Q. Okay.
>
> A. This is maybe a week after the incident that I wanted it out of my house, so I paid him to mop my floors, basically sterilize my house, and get everything that's in there that he touched out of my house.

*See* Exhibit 4 to Sivin Declaration, p. 63, lines 3-24.

Plaintiff's initial Rule 26 disclosures itemized the categories of the economic damages that plaintiff was seeking. Defendants raised no issue to the damages element of the initial disclosures in the Civil Case Management Plan (Dkt. No. 15) or at the Initial Pretrial Conference, which would have been the appropriate forum to raise such an issue or make an objection. *See* Local Civil Rule 16.1(d)(8). Doing so would have availed them of the resources of the court to direct plaintiff to promptly supplement her disclosures and would have resolved the issue altogether. *See* Fed. R. Civ. P. 26(a)(1)(c). Thereafter, plaintiff disclosed categories of economic damages in the form of hospital and medical expenses, and furnished defendants with HIIPA-compliant authorizations to obtain the records that documented those expenses. *See*

Exhibit 5 to Sivin Declaration, p. 2, items 1-2. Pursuant to her continuing obligation under FRCP 26(e), plaintiff requested itemized bills documenting the costs associated with her treatment in order to exchange them with defendants.  In the interim, plaintiff disclosed economic costs that were readily calculable. *See* Exhibit 6 to Sivin Declaration. Plaintiff disclosed to defendants, in pertinent part:

> Special damages with respect to plaintiff's prima facie tort claim include the cost of replacing a baby swing (approximately $65), the cost of replacing a couch (approximately $100), the cost of replacing clothing (approximately $50), hospital expenses (not yet calculated), expenses for transportation to and from counseling sessions (not yet calculated), and past and future expenses for counseling sessions (not yet calculated).

*Id.* at p. 3.  When defendants first raised an objection to the initial disclosure, over one year after the Initial Pretrial Conference, plaintiff consented in writing to precluding any medical damages not exchanged sooner than sixty days before trial. *See* Exhibit 7 to Sivin Declaration, p. 2. Immediately thereafter, plaintiff provided multiple supplemental disclosures, including supporting documentation with precise, itemized expenses. *See* Exhibits 8-10 to Sivin Declaration. This included costs for plaintiff's treatment at Hutchings Psychiatric Center ($2705.44) and Crouse Hospital ($1,844.65).  Now, defendants inexplicably, accept and consent to plaintiff's economic damages claim of $2705.44, but take issue with other, similar economic costs disclosed before and immediately after the disclosure of the $2705.44 figure.

Plaintiff, without the need for a court order, performed exactly that which courts order when a defendant expresses dissatisfaction with a plaintiff's initial Rule 26 damages disclosure—namely, supplement the disclosure during discovery pursuant to FRCP 26(e).  *See, e.g.*, *Haber v. ASN 50th St.*, LLC, 272 F.R.D. 377, 380 (S.D.N.Y. 2011) (directing plaintiff to supplement damages during discovery "to the extent he is in possession, custody, or control of such documents"). When a defendant seeks preclusion or sanctions on these grounds under Fed R. Civ. P. 37(1), courts in the Second Circuit have by and large held that any deficiencies in initial Rule 26 disclosures with regard to damage computations are ultimately harmless, so long as the party did not fail entirely to compute damages or wait until trial to accurately do so. *See Genomma Lab USA, Inc. v. Venus Am. Corp.*, 2017 U.S. Dist. LEXIS 59121, at *9 (S.D.N.Y. Mar. 27, 2017) (denying on "harmless" grounds a motion to preclude proof of damages where

movant "had adequate opportunity to conduct discovery on (party's) damages," which "(did) not require complicated expert calculations."); *Certain Underwriters at Lloyd's v. Amtrak*, 2017 U.S. Dist. LEXIS 45823, at *20-21 (E.D.N.Y. 2017) (denying motion to preclude proof of damages when there was no allegation that disclosure insufficiencies were "willful or in bad faith," and were then remedied when "trial (was) several months away"); *cf. Estate of Jaquez v. Flores*, 2016 U.S. Dist. LEXIS 34521, at *6-8 (S.D.N.Y. 2016) (precluding evidence of damages on "sandbagging" grounds where plaintiffs first revealed damages claims in proposed verdict form and jury instructions); *24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F.Supp.2d 305, 318 (S.D.N.Y. 2008) (evidence of damages precluded where plaintiff asserted new damages theory only weeks before trial); *Ritchie Risk - Linked Strategies Trading (Ir.), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 161 (S.D.N.Y. 2012) ("Making a supplemental disclosure nearly a year after the close of fact discovery is not timely, by any definition.").  For the foregoing reasons, defendants' *in limine* motion to limit plaintiff's economic damages to $2,705.44 and to preclude evidence of further economic damages should be denied.

## <u>CONCLUSION</u>

Based on the foregoing, plaintiff submits that the motions *in limine* by defendants City of Syracuse and Captain Thomas Galvin should be denied in their entirety.

Dated:  New York, New York
         August 1, 2019

EDWARD SIVIN

21