UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MALEATRA MONTANEZ,

        Plaintiff,

    -against-                         6:16-CV-0550 (BKT/TWD)

CITY OF SYRACUSE, POLICE
OFFICER CHESTER D. THOMPSON and
POLICE CAPTAIN THOMAS GALVIN,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO DEFENDANTS' TRIAL BRIEF AND OPPOSITION TO PLAINTIFF'S MOTIONS *IN LIMINE*

Dated: New York, New York
       September 4, 2019

*Sivin & Miller, LLP*
*Attorneys for plaintiff*
*20 Vesey Street, Suite 1400*
*New York, NY 10007*
*(212) 349-0300*

**The Testimonies of Elizabeth ElBayadi, Cheryle Bassett, and Melissa Popcun**

    **I.**        **Propriety Under the Federal Rules of Evidence**

        Plaintiff submits that ElBayadi's, Bassett's, and Melissa Popcun's testimony is admissible pursuant to Fed. R. Evid. 413-415.  Fed. R. Evid. 415 states, in pertinent part, that "[i]n a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed *any other* sexual assault or child molestation," as defined in Fed. R. Evid. 413(d) (emphasis added).  In *United States v. Vickers*, 708 F. App'x 732 (2d Cir. 2017), the Second Circuit unequivocally distinguished Rule 404(b) from Rules 413-415:

> Under Federal Rule of Evidence 404(b)(1), evidence of a defendant's prior acts is generally inadmissible to show that he has a propensity to act in a certain manner and acted in accordance with that propensity, except that such evidence is admissible to prove, inter alia, "motive, opportunity, intent, preparation, plan, [or] knowledge," provided that the government gives a defendant reasonable notice of its intent to introduce the evidence and for what purpose.
>
> Sexual assault and child molestation cases are different. In such cases, "the court may admit evidence that the defendant committed any other sexual assault" or "any other child molestation" and such "evidence may be considered on any matter to which it is relevant." Indeed, Rules 413 and 414 permit evidence of prior acts of sexual assault or child molestation to prove a defendant's propensity to commit such acts.

*Id.* at 736. (internal citations omitted).

        Prior decisions in this Circuit, including that in *Morris v. Eversley*, 2004 U.S. Dist. LEXIS 6840 (S.D.N.Y. 2004), have viewed the enactment of Rules 413-415 as reflective of Congress' intent to differentiate the particular seriousness of alleged past sex crimes, notwithstanding the failure to report and subsequent lack of charges brought against the perpetrator:

> [T]he legislative history of Rules 413-415 indicates that Congress intended to allow admission not only of prior

> convictions for sexual offenses, but also of *uncharged conduct*. Indeed, the principal House sponsor, Rep. Susan Molinari, explained that the "practical effect of the new rules is to put evidence of *uncharged offenses* in sexual assault … cases on the same footing as other types of relevant evidence that are not subject to a special exclusionary rule."

*Id.* at *3-4 (emphasis in original) (internal citations omitted); *see United States v. Larson*, 112 F.3d 600, 605 (2d Cir. 1997) (admitting testimony as to sex acts that occurred 16-20 years prior; since "Congress meant its temporal scope to be broad," there is "no time limit is imposed on the uncharged offenses for which evidence may be admitted; as a practical matter, evidence of other sex offenses by the defendant is often probative and properly admitted").

While the Rule 413-415 standard for admissibility of prior sexual assaults is more lax than the Rule 404(b) standard for admissibility of prior bad acts not involving sexual assaults, *see United States v. Spoor*, 904 F.3d 141, 154 (2d Cir. 2018) ("Rule 414 affects the district court's analysis under Rule 403 because it alters the category of permissible inferences available to the jury…whereas in other cases it is impermissible, and unfairly prejudicial, for the jury to infer a propensity to commit the charged crime from evidence of prior, similar acts, Rule 414 makes that a permissible inference."),  evidence offered pursuant to Rules 413-415 must still be subjected to the balancing test provided in Fed. R. Evid. 403.  Yet even within the more relaxed standard applicable to evidence offered pursuant to Rules 413-415, the Second Circuit has *further* instructed its district courts to apply Rule 403 less stringently than have other Circuits, so as to avoid having Rule 403 preclude evidence Congress intended to make admissible. *See United States v. Barnason*, 852 F. Supp. 2d 367, 371 (S.D.N.Y. 2012); *Larson*, 112 F.3d 600, 604 ("[w]ith respect to the Rule 403 balancing…the sponsors stated that the presumption is that the evidence admissible pursuant to these rules is typically relevant and probative, and that its probative value is not outweighed by any risk of prejudice.") (internal quotation marks omitted); *United States v. Davis*, 624 F.3d 508, 512 (2d Cir. 2010) (noting that even if such evidence is "'highly prejudicial,'" that does not mean it is so "'<u>unfairly</u> prejudicial'" so as to merit exclusion) (emphasis in original); *Martinez v. Hongyi Cui*, 608 F.3d 54, 60 (1st Cir. 2010) (collecting and comparing cases throughout Circuit courts).

Jurisdictions that have adopted and practice more rigorous balancing tests towards Rule 413-415 evidence than the Second Circuit recommends have nonetheless ruled that it may well constitute error not to admit such evidence. In *Doe v. Smith*, 470 F.3d 331 (7th Cir. 2006), the court reversed and remanded the matter for a new trial, finding that the precluded evidence, which involved alleged acts of molestation spanning over thirty years, unduly prejudiced the plaintiff:

> We also find prejudicial error in two of the district court's evidentiary rulings. The whole of the evidentiary record paints a compelling picture that, over the course of twenty years, Smith used his various positions of authority to groom and abuse his victims sexually. By excluding Tyrone B's testimony that he was molested in the late 1970's and Smith's 2001 felony conviction for indecent solicitation of a child, the jury received an unreasonably fragmented tale of abuse. Absent this fragmentation of the evidence, there is a substantial likelihood that the outcome of the trial would have been different.

*Id.* at 348-49; *accord United States v. Robinson*, 702 F.3d 22, 37 (2d Cir. 2012) (affirming lower court's finding that evidence offered pursuant to Fed. R. Evid. 404(b) that the accused had in the past "been in the prostitution business and controlled prostitutes other than Jane Doe" was more probative than prejudicial, since it was "necessary to complete the story of the crime on trial.").

### A. Elizabeth ElBayadi

In any event, it is far from clear that Elbayadi's testimony would prejudice defendants, since there is no guarantee that the jury will credit her testimony. Since defendant Chester Thompson has denied having sex with Elbayadi, defendants will have an opportunity to cross-examine Elbayadi in an attempt to convince the jury that she is not to be believed. If the jury concludes that Elbayadi (who is plaintiff's witness) is not credible, then the credibility of plaintiff's case in chief may be damaged in the eyes of the jury. It is precisely because "sexual assault allegations are often reduced to a swearing match" that "Congress aimed to assist the fact finder's assessment of credibility through allowing evidence of the defendant's extrinsic sexual misconduct as character or propensity evidence," intending "to *expand* the admissibility of character or propensity evidence relating to sexual assault by creating a broad exception to the prohibition in Rule 404(b). *United States v. Guidry*, 456 F.3d 493, 502-04 (5th Cir. 2006) (collecting cases) (emphasis in original)

Finally, even were the jury to credit Elbayadi's testimony, any prejudice to the City of Syracuse and Galvin could be mitigated by a curative instruction to the jury that Thompson's sexual assault on Elbayadi was not reported to SPD or Galvin, which plaintiff has consistently conceded. As a result, the weighing required by Rule 403, in light of the language and intent of Rules 413 and 415, favor ruling Elizabeth ElBayadi's testimony admissible.

Apart from its admissibility under Fed. R. Evid. 415, testimony from Cheryle Bassett and Melissa Popcun is admissible as "background evidence" necessary for the jury to evaluate, respectively, the testimony of John Malenick and Patricia Popcun in proper context. Cheryle Bassett's and Melissa Popcun's testimony also is admissible since both will demonstrate what defendants *would have learned* had they properly investigated John Malenick's and Patricia Popcun's reports. Where, as here, "notice" is an essential element of a plaintiff's case, New York law holds that evidence as to what a defendant "would have learned" had he conducted a proper investigation is a proper consideration for the trier of fact.

### B. Cheryle Bassett

It is expected that John Malenick will testify, consistent with his Declaration (Exhibit 16 to Docket No. 99), that in 2001 or 2002 he reported to the SPD's Internal Affairs Division (IAD), of which defendant Thomas Galvin was the head, that Chester Thompson forced Cheryle Bassett "to have sex with him and that he threatened to evict her and her son if she didn't have sex with him." Defendants plan not only to question Malenick's credibility, but also to argue to the jury that Malenick in fact never made any such complaint to IAD on behalf of Bassett. Indeed, defendants have requested that the Court submit the following special interrogatory to the jury:

> 12. John Malenick never made a complaint on behalf of Cheryle Bassett to the internal affairs division of the Syracuse Police Department.
>
> Yes _____ No_____

*See* Docket No. 146.

Plaintiff intends to offer testimony from Bassett consistent with her Declaration (Exhibit 10 to Docket No. 99), i.e., that Thompson threatened to evict her and her infant son if she didn't have sex with him, that Thompson subsequently raped her repeatedly, and that she then confided in Malenick about what Thompson had done to her. If plaintiff is barred from offering this testimony from Bassett, there is a likelihood that the testimony of Malenick—who acknowledges a personal animus toward Thompson—will be met unfairly with great skepticism by the jury. To place Malenick's testimony in proper context and avoid the unfair charge of fabrication, plaintiff must be allowed to introduce background testimony from Bassett that supports the facts underlying Malenick's complaint to the IAD. Such "background evidence" is not barred by Fed. R. Evid. 404(b). *See United States v. Romero-Padilla*, 583 F.3d 126, 130 (2d Cir. 2009) ("relevant background evidence" is admissible and "outside the ambit of Rule 404(b)"); *cf. AMTRAK v. Morgan*, 536 U.S. 101, 104 (2002) (prior bad acts can be used as "background evidence" to support a plaintiff's claim); *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 177 (2d Cir. 2005) (proper to consider "background evidence" to demonstrate a "chain of events" that would tend to support the plaintiff's claims).

Plaintiff expects that Bassett also will testify that, had IAD investigated Malenick's report and spoken with her, she would have told them that Thompson, often while on duty and in uniform, had raped her. This testimony is directly relevant to plaintiff's claim of negligent investigation, supervision, and retention, in that it demonstrates what the SPD and Galvin "would have discovered" had they conducted a proper investigation into Malenick's report of Thompson's malfeasance. As noted in *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109 (S.D.N.Y. 1991):

> Under New York law:
>
> One who has reasonable grounds for suspecting or inquiring ought to suspect, ought to inquire, and the law charges him with the knowledge *which the proper inquiry would disclose*. . . . It is a general rule that if a person has knowledge of such facts as would lead a fair and prudent man, using ordinary thoughtfulness and care, to make further accessible inquiries, and he avoids the inquiry, he is chargeable with the knowledge which by ordinary

>
> diligence he *would have acquired*. Knowledge of facts, which, to the mind of a man of ordinary prudence, begets inquiry, is actual notice, or, in other words, is the knowledge which a reasonable investigation would have revealed.

*Id.* at p. 120, n.13 (citations omitted) (emphasis added); *see also Sabo v. Lifequest, Inc.*, 1996 U.S. Dist. LEXIS 14971, at *12 (E.D. Pa. 1996) ("Among the essential elements of a negligent retention claim is proof that a more thorough investigation by the employer *would have revealed* that the employee had a history of harassing conduct.") (emphasis added).

Since the SPD and Galvin are charged with notice of what they "would have discovered" had they conducted a proper investigation into Malenick's complaint, it necessarily follows that plaintiff must be allowed to introduce evidence of what Bassett would have told SPD and/or Galvin had they investigated Malenick's complaint. The jury is entitled to know that Bassett would have told these defendants that Thompson, whom Bassett first encountered when he pulled her over for a traffic violation, subsequently raped her, information that at minimum would have caused any reasonable police department scrupulously to monitor, if not immediately to fire, Chester Thompson.

### C. Melissa Popcun

Similarly, testimony from Melissa Popcun about her encounter with Chester Thompson is admissible as "background evidence" to place in context Patricia Popcun's complaint to the SPD and also to demonstrate what Melissa would have told Galvin and the SPD's Office of Professional Standards (OPS), the successor to SPD's IAD, had they spoken with Melissa. The opposing parties in this case have procured their respective affidavits from Patricia Popcun, which differ somewhat in their recitation of what Melissa reported to Patricia and what Patricia then reported to the SPD and to Galvin. *Compare* Exhibit 5 to Docket No. 99 with Exhibit 21 to Docket No. 89. Defendants also have listed Patricia Popcun as a witness they intend to call at trial, suggesting that defendants likely will attempt to elicit testimony from Patricia (who still has a professional relationship with the SPD) more favorable to defendants' position. Indeed, presaging testimony that defendants likely will attempt to elicit from Patricia, defendants have requested that the Court submit the following special interrogatory to the jury:

>16. Patricia Popcun advised Thomas Galvin that her daughter, Melissa, *would not cooperate* with any investigation and *would likely deny* having engaged in any sexual encounter with Chester Thompson in 2014.

>Yes _____ No_____

*See* Docket No. 146 (emphasis added).  To challenge any such prospective testimony from Patricia, plaintiff should have an opportunity to elicit "background evidence" to Patricia's report to the SPD, i.e., testimony from Melissa as to what she actually told Patricia.

Equally important, Melissa states in her Affidavit that "[i]f someone from the Syracuse Police Department would have contacted me, I would have spoken to them and told them about what happened with the police officer."  This testimony from Melissa is relevant to plaintiff's claims against the SPD and Galvin, as it demonstrates what information those defendants "would have acquired" had they spoken with Melissa.  *See Vialez v. N.Y.C. Hous. Auth., supra*.

**<u>Chester Thompson's Insurance Fraud</u>**

Plaintiff submits that, in light of the whole of the prospective evidence in this trial, to preclude evidence of Chester Thompson's insurance fraud while admitting evidence of plaintiff's welfare fraud would be unduly prejudicial towards plaintiff under Fed. R. Evid. 609(b) and 403.  Mindful that only plaintiff's actions fall within the ambit of Rule 609, the similarities between the two wrongs are striking:  both sought financial gain by unsavory means; both occurred in 2001, over ten years ago; both parties admitted to committing the wrongs; both are in their essence akin to perjury as described in *Zinman v. Black & Decker (U.S.)*, 983 F.2d 431 (2d Cir. 1993).  Indeed, the only substantive difference between the two matters is that the District Attorney's Office declined to prosecute Thompson—due to his voluntary withdrawal—while choosing to prosecute Montanez.  This may, under Rule 609, make all the difference, but it need not be; in light of their parallels and considering their contexts, plaintiff submits that to admit one and not the other—when the functional difference originates in an exercise of prosecutorial discretion—would unduly prejudice plaintiff's right to a fair trial under Rules 609(b)(1) and 403.

**Consent and Coercion Under Section 1983**

Defendants' analysis of consent and how it applies to plaintiff's claim of violation of her substantive due process right to bodily integrity is misguided. Defendants begin with the false premise that the elements of sex assault under New York Penal Law circumscribe the plaintiff's cause of action pursuant to 42 U.S.C. 1983, when in fact the Penal Law neither provides for a private right of action nor controls the parameters of plaintiff's substantive due process claim even it was did. *See Zinermon v. Burch*, 494 U.S. 113, 124 (1990) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)); *Hall v. Tawney*, 621 F.2d 607, 612-13 (4th Cir. 1980).

The result is a distorted understanding of consent—one that it is mutually exclusive from and/or supreme over concepts like coercion, submission, manipulation, and implied force; but this is plainly contradictory to how federal law views consent in the context of due process violations on bodily integrity. *See United States v. Giordano*, 442 F.3d 30, 44-45 (2d Cir. 2006) (noting that the perpetrator invoked "'the real or apparent power'" of his office to make the crime possible by "causing the victim to *submit*," and that jury was entitled in their determination to consider his "aura of power" to that effect) (emphasis added); *Hawkins v. Holloway*, 316 F.3d 777, 784 (8th Cir. 2003) ("the facts supported a finding that the intercourse was nonconsensual *and that* the officer accomplished the rape through the exercise of coercive power that he possessed as a law enforcement officer") (emphasis added); *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 513 (8th Cir. 2015) (noting that court had "specifically found a due process violation when a police officer mentally coerced—rather than physically forced—a woman into sexual intercourse") (both citing *Rogers v. City of Little Rock*, 152 F.3d 790, 794-97 (8th Cir. 1998) (affirming district court's finding that "[defendant] used his office to coerce and intimidate [plaintiff] into nonconsensual sex."); *United States v. Giordano*, 260 F. Supp. 2d 477, 484 (D. Conn. 2002); *Blouin v. Spitzer*, 356 F.3d 348, 360 (2d Cir. 2004) (quoting Vacco v. Quill, 521 U.S. 793, 807 (1997)).

However successfully, Congress, sensitive to the need to reframe the issue of consent, has intended to punish those who cause or attempt to cause another person to engage in

a sexual act by *force, fear, or threats*.[1] *See United States v. Crowley*, 79 F. Supp. 2d 138, 159 (E.D.N.Y. 1999) (emphasis added). Lest there be a fear for lack of "guideposts" in this field of protected constitutional rights, (Dkt. No. 120, at p. 14), 42 U.S.C. 1983's criminal companion, 18 U.S.C. 242,[2]–which criminalizes, *inter alia*, the intentional violation of one's same due process right to bodily integrity—helps provide ample evidence that consent is non-binary, and that persons can be coerced into sex in violation of their rights.[3] *See United States v. Davila*, 704 F.2d 749, 750 (5th Cir. 1983) (affirming convictions of two border patrol under section 242 for depriving two women of their liberty by coercing sexual favors from them)*; United States v. Holly*, 488 F.3d 1298, 1302 (10th Cir. 2007*)* ("force may be inferred by such facts as disparity in size between victim and assailant, or disparity in coercive power...the element of force within the meaning of [§ 2241] does not require the brute force commonly associated with rape.") (internal citations omitted); *United States v. Lucas*, 157 F.3d 998, 1002-03 (5th Cir. 1998) ("[the element

---

[1] "There are a number of deficiencies in current Federal law.... Second, the Federal statutes proscribe only coerced sexual intercourse; other forms of sexual abuse are not made criminal. Third, the Federal statutes incorporate doctrines that are anti-victim and serve to focus a trial on the conduct and state of mind of the victim rather than on the conduct and state of mind of the defendant. Traditionally, the force requirement was considered necessary to show a lack of consent. As perhaps the best known treatise on criminal law puts it, if "great force was not needed to accomplish the act the necessary lack of consent has been disproved in other than exceptional situations." The resistance doctrine, in turn, was used to determine when the requisite "great force," and therefore the requisite lack of consent, was present. This doctrine, at its most stringent, required that a woman struggle with an intensity reflecting her physical capacity to resist and that her efforts not diminish during the course of the offense. This doctrine was directly in conflict with the safety and welfare of the victim. The law does not impose a resistance requirement upon the victims of other crimes of violence. Requiring a victim to become a martyr by testing the sincerity of an offender's threat is unfair, and H.R. 4745 does not carry forward the resistance doctrine." *Sexual Abuse Act of 1986*, 132 Cong Rec H 2598, (daily ed. May 12, 1986) (statements of Reps. Bryant and Conyers).

[2] Though 18 U.S.C § 242 does not explicitly confer rights enforceable under 42 U.S.C. § 1983, they are generally considered analogues. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 214 n.23 (1970) (explaining that the "linguistic differences" between § 1983 and § 242 "have not been thought to be substantive"); *Fundiller v. Cooper City*, 777 F.2d 1436, 1439 (11th Cir. 1985) (describing § 242 as the criminal counterpart to § 1983); *see also Page v. Starks*, 2016 U.S. Dist. LEXIS 10088, at *2-3 (N.D. Miss. 2016) (holding that former police officer who pleaded guilty to depriving the plaintiff of his Fourth Amendment rights in violation of § 242 was liable as a matter of law for plaintiff's excessive force claim under § 1983)*; United States v. Bigham*, 812 F.2d 943, 948 (5th Cir. 1987) (that decision defendant attempted to distinguish "was brought as a civil case under 42 U.S.C. § 1983, in contrast to this criminal case under 18 U.S.C. § 241, 242...is of no significance here. Whether a case is brought on the civil or criminal side of the docket, the actionable conduct is deprivation of rights secured by the Constitution or laws of the United States. The culpable intent will vary from willfulness of a criminal charge to something less in a civil complaint, and it may vary according to the particular constitutional right infringed.... Otherwise, between the criminal and civil statutes the courts recognize the intent of Congress to cover the same cases, though providing different remedies.") (internal citations omitted).

[3] Because aggravated sexual abuse is not defined in § 242, the statute necessarily requires reference to 18 U.S.C. § 2241, the federal aggravated sexual abuse statute. *United States v. Holly*, 488 F.3d 1298, 1301 (10th Cir. 2007).

of fear] is satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm. Like force, fear can be inferred from the circumstances, particularly a disparity in power between defendant and victim.) (internal citations omitted); *United States v. Martin*, 528 F.3d 746, 753 (10th Cir. 2008) (noting the contours of consent in charging section 242 that "merely apparent consent does not negate causation, because it is apparent, not real. It is therefore not necessarily true that "apparent consent" is "as effective as consent in fact.").

In *United States v. Lanier*, 520 U.S. 259 (1997), the Supreme Court reversed a Sixth Circuit ruling vacating a conviction for sexual abuse under § 242, explaining that, contrary to the lower court's ruling, the defendant did have a "fair warning" that his conduct deprived his victim of a constitutional right; the standard for determining the adequacy of that warning, they reason, was the same as the standard for determining whether a constitutional right was "clearly established" in civil litigation under § 1983.[4]  *Hope v. Pelzer*, 536 U.S. 730, 739-41 (1990).  As part of that determination, the Court expressly rejected a requirement that previous cases be "fundamentally similar" when considering whether someone's conduct violates clearly established law; to the contrary, officials could still be on notice that their conduct violates established law even in *novel* factual circumstances.  *Id.* (emphasis added).

*Rogers v. City of Little Rock*, 152 F.3d 790 (8th Cir. 1998) presents a "fundamentally similar" legal and factual scenario to the instant one.  In *Rogers*, which involved a bench trial, the victim did not ask the police officer to stop his sexual advances and did not physically resist his advances; nor did the officer threaten or harm her.  Nevertheless, Rogers testified that she was in shock and afraid during the encounter and that she did not know what to do, that she was surprised a police officer would be acting in such a way, and that she was

---

[4] "[I]n *Lanier*, the dedendant implicitly conditioned a victim's receipt of child support payments on his receipt of oral sex. Although he used no actual force, the coercion was equally reprehensible behavior. This type of coercion is analogous to cases of quid pro quo sexual harassment, where the employer conditions some benefit to the employee on acquiescence to his sexual advances. However, although sexual harassment can be a serious crime, which can include physical contact in the form of sexual assault, it is also a civil law term which includes non-contact abuse. *See* Amicus Brief of the National Organization for Women, U.S. v. Lanier, 1996 WL 468603, at *23." Weiler, Stephanie (1998) "Bodily Integrity: A Substantive Due Process Right to Be Free from Rape by Public Officials," California Western Law Review: Vol. 34: No. 2, Article 19, p. 605, n. 112.

intimidated by the officer's gun and badge. After the incident, Rogers told someone close to her about the incident, then went to a hospital to report it. *See id.* at 793-94, 97.

Here, pursuant to Fed. R. Civ. P. 52(a), the court ruled that Rogers was able to establish a due process violation absent physical force "because such violations can be based on mental coercion." The court further ruled that, contrary to the officer's contention that no due process violation could be established on the given facts, the lower court had not committed error in its factual finding that the sex was nonconsensual. *Id.* at 797. The court thus concluded that the factual finding of the lower court, left undisturbed, was sufficient to legally allege a due process violation in the manner affirmed by the Eighth Circuit. The court's ruling does *not* establish, (contra Dkt. No. 120, p. 5), that lack of consent is a prerequisite to a finding of liability; rather it acknowledges the common-sense and formally acknowledged[5] notion that consent is *a* factor in an alleged constitutional violation—one whose ultimate weight is heavily dependent on the way in which and extent to which it was importuned.

The other cases cited by defendants are readily distinguishable on the law or on the facts, as they involve inapplicable constitutional analyses and/or sexual encounters that, by any reasonable interpretation, were consensual and non-coercive. *See Winston v. Lee*, 470 U.S. 753 (1985) (balancing compelling governmental interest in performing medical procedure versus bodily intrusion); *Guertin v. Michigan*, 912 F.3d 907 (6th Cir. 2019) (balancing public health interest versus bodily intrusion); *Petway v. City of N.Y.*, 2005 U.S. Dist. LEXIS 37783 (E.D.N.Y. 2005) (analyzing "consent" in the context of Fourth Amendment false arrest claim); *Chamberlain v. City of White Plains*, 986 F. Supp. 2d 363, 398 (S.D.N.Y. 2013) (analyzing a Fourth Amendment excessive force claim); *Hassan v. City of Shreveport*, 2018 U.S. Dist. LEXIS

---

[5] "To prove that a law enforcement officer violated a victim's right to bodily integrity, the government must prove that the victim did not consent to the defendant's actions. Prosecutors can establish lack of consent or submission by showing that the defendant officer used either force or coercion to overcome the victim's will. It is not necessary to prove that the defendant used actual violence against the victim. Coercion may exist if a victim is told that an officer will bring false charges or cause the victim to suffer unjust punishment." The United States Department of Justice, Section on Sexual Misconduct, *Law Enforcement Misconduct*, https://www.justice.gov/crt/law-enforcement-misconduct (last updated February 25, 2019). *See also State v. Burke*, 522 A.2d 725, 735 (R.I. 1987) ("An implied threat is as effective as a stated threat, sometimes even more so, especially when the apparent ability to carry out the threat is overwhelming. It is well established that threats of force need not be made in any particular manner in order to put a person in fear of bodily harm. Sexual submission induced by fear is not the product of consent but of coercion. A command on the part of one who possesses complete authority and overwhelming force to back up that authority need not be accompanied by an explicit threat in order to be effectively coercive.") (internal citations omitted).

102460, at *7-8 (W.D. La. June 18, 2018) ("Nonconsensual *or coerced* sexual contact easily satisfies" viable due process claim) (emphasis added); *Lyons v. Williams*, 91 F.3d 1308, 1309-10 (9th Cir. 1996) ("by mutual agreement, after work on the evening of March 31, 1992, [plaintiff] met [defendant] at his apartment building and accompanied him to the living room of his apartment.... [plaintiff] left six messages on [defendant's] recorder, each stating, 'I was thinking about you'"); *Fisher v. Goord*, 981 F. Supp. 140, 173-74 (W.D.N.Y. 1997) ("[plaintiff] testified that she had sexual relations with [defendants] on several occasions and described each of them as a 'friend.'"); *Villanueva v. City of Scottsbluff*, 779 F.3d 507, 513 (8th Cir. 2015)[6] (plaintiff's multiple sexual encounters with police officer "could only be described as a consensual sexual relationship between adults," where plaintiff's emails and diary documented her consent, the encounters occurred while the officer was off-duty, and were unconnected to any exercise of his authority).

Therefore, defendant's analysis of the role of consent in this trial should be disregarded writ large, and plaintiff's substantive due process claim for a violation of bodily integrity—and, by extension, plaintiff's claim for supervisory liability and deliberate indifference[7]—should be determined exclusively on the merits.

Dated:  September 4, 2019
        New York, New York

                                        _____
                                        EDWARD SIVIN

---

[6] Defendant's contention at Dkt. No. 120, p. 6, 11, that *Villanueva* does not support this Court's finding in *Montanez v. City of Syracuse*, 2019 U.S. Dist. LEXIS 10351, at *45 (N.D.N.Y. Jan. 23, 2019), that other courts have recognized "a police officer's use of his position to coerce sex as a violation of a right to bodily integrity that violatessubstantive due process" confuses the § 1983 color of state law element, (i.e., "use of his position"), with the action, (i.e., "coerce sex"), that constitutes the violation.  The finding in *Villanueva* is more akin to that in *Lesperance v. Cnty. of St. Lawrence*, 2011 U.S. Dist. LEXIS 92439 (N.D.N.Y. 2011); *see Pitchell v. Callan*, 13 F.3d 545 (2d Cir.1994); *Claudio v. Sawyer*, 675 F.Supp.2d 403, 410 (S.D.N.Y. 2009); *cf. Haberthur v. City of Raymore, Mo.*, 119 F.3d 720 (8th Cir.1997).

[7] "In situations where actors have an opportunity to reflect and make reasoned and rational decisions, deliberately indifferent behavior may suffice to 'shock the conscience'.... whether termed 'deliberate indifference' or 'recklessness,' this mental state is sufficient to establish liability in such cases." *Pena v. Deprisco*, 432 F.3d 98, 113 (2d Cir. 2005) (internal citations omitted).