**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

MALEATRA MONTANEZ,

                              Plaintiff,                  6:16-cv-00550 (BKS/TWD)

v.

CITY OF SYRACUSE, POLICE OFFICER CHESTER D. THOMPSON, and POLICE CAPTAIN THOMAS GALVIN,

                              Defendants.

**Appearances:**

*For Plaintiffs:*
Edward Sivin
Glenn D. Miller
Sivin & Miller, LLP
20 Vesey Street, Suite 1400
New York, New York 10007

*For Defendants City of Syracuse and Thomas Galvin:*
Christina F. DeJoseph
Todd M. Long
Assistant Corporation Counsel, City of Syracuse
233 E. Washington Street, Suite 300
Syracuse, New York 13202

John G. Powers
Hancock Estabrook LLP
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13202

*For Defendant Chester Thompson:*
Kevin E. Hulslander
Smith, Sovik, Kendrick & Sugnet, P.C.
250 South Clinton Street, Suite 600
Syracuse, New York 13202

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Plaintiff Maleatra Montanez brings this action under 42 U.S.C. § 1983, alleging that Defendants City of Syracuse (the "City"), Police Officer Chester D. Thompson, and Police Captain Thomas Galvin[1] violated her Fourteenth Amendment right to substantive due process; Plaintiff also brings state law battery and intentional infliction of emotional distress claims against Defendant Thompson. (Dkt. No. 1). This action arises from Plaintiff's allegation that, on February 14, 2015, Thompson, a patrol officer with the Syracuse Police Department ("SPD"), reported to her residence in response to a 911 call and, while he was there, directed her to engage in sexual acts with him. (Dkt. No. 1).[2] Trial is scheduled to commence on September 23, 2019.

On September 9, 2019, the Court issued a Memorandum-Decision and Order, (Dkt. No. 156), on the parties' motions in limine, (Dkt. No. 122; Dkt. No. 123), but, as briefing was not complete, reserved decision on, among other things: (1) the City Defendants'[3] supplemental motion in limine, (Dkt. No. 152); and (2) the City Defendants' request to preclude evidence that Defendant Thompson sexually assaulted other women, including Elizabeth Elbayadi, Kimi Fletcher, Shakina Thompson,[4] Jennifer Brisk, Melissa Popcun, and Cheryle Bassett, (Dkt. No. 123-1, at 9–13). The briefing is complete, and, on September 10, 2019, the Court heard oral

---

[1] The City and Defendant Galvin are referred to as "the City Defendants."

[2] The facts regarding this encounter are disputed. The City Defendants assert that the sex was consensual. (Dkt. No. 89-1, at 9; Dkt. No. 99-3, at 72–99). Plaintiff says that she complied with Officer Thompson's direction to give him oral sex because she was terrified; that he raped her after directing her to get a condom; and that she went to the hospital the next day to report the rape. (Dkt. No. 99-2, ¶¶ 5–9). That dispute is for the jury's determination.

[3] The Court also reserved decision on The City Defendants' motion to preclude certain medical records, (Dkt. No. 123-1, at 31–35). The City Defendants raised an additional argument regarding Plaintiff's medical records in their supplemental motion in limine. (Dkt. No. 152, at 6).

[4] Shakina Thompson and Defendant Chester Thompson are not related.

argument on these motions at the final pretrial conference. For the following reasons, the Court: denies the City Defendants' supplemental motion in limine, with the exception of the medical records issue which is reserved; (1) denies the City Defendants' motion to preclude the testimony of Kimi Fletcher and Melissa Popcun; (2) reserves decision on the City Defendants' motion to preclude the testimony of Elizabeth Elbayadi; and (3) grants their motion to preclude the testimony of Shakina Thompson, Jennifer Brisk, and Cheryle Bassett.

## II. DISCUSSION

### A. Defendants' Supplemental Motion in Limine

Based on the parties' representations at the pretrial conference, and Plaintiff's withdrawal of a number of witnesses, the Court denies as moot the City Defendants' motion to preclude: (1) Brother Pete, Jamar Clark, Stacy Young, Mark McCardle, Annie Bullock, Indrani Narangoda, MD, and Linda Troutman-Zelows from testifying; (2) Plaintiff from introducing two Internal Affairs' investigations of Thompson; (3) the June 2019 Order of Protection against Thompson; and (4) SPD Officers John Boyer, Jr., John Cavanaugh, and Curtis Brown from testifying. (Dkt. No. 152). Only the City Defendants' motions regarding SPD Officer Jimmie Johnson and Plaintiff's medical records remain pending.

#### 1. SPD Officer Jimmie Johnson

The City Defendants move to preclude the testimony of SPD Officer Jimmie Johnson on the ground that it is irrelevant. (Dkt. No. 152). At the final pretrial conference, Plaintiff proffered that Johnson would testify that Thompson bragged about sexual conquests on the job. The City Defendants deny that Johnson would so testify, but argued that even if he did, that testimony would not be relevant. In light of the low threshold for relevance in Rule 401— "any tendency to make a fact more or less probable," Fed. R. Evid. 401—the Court finds that evidence that Thompson bragged about sexual conquests on the job is relevant to an assessment of

Thompson's conduct with Plaintiff. Thus, the City Defendants' motion to preclude Johnson's testimony is denied.

### 2. Plaintiff's Medical Records

The City Defendants move to preclude, based on her untimely disclosure, Plaintiff from introducing medical records from the "Neighborhood Center" at trial. (Dkt. No. 152, at 6). Defendants have raised several other issues with respect to the contents of Plaintiff's medical records. *See supra* note 3. The parties continue to work on this issue and, prior to trial, will submit the exhibits to which the City Defendants object for the Court's review. The Court therefore reserves decision with respect to Plaintiff's medical records.

### B. Unreported Allegations against Thompson

The City Defendants move to preclude the testimony of Elizabeth Elbayadi, Shakina Thompson, Kimi Fletcher, and Jennifer Brisk, all of whom have made allegations against Thompson but did not report his conduct to the SPD. (Dkt. No. 123-1, at 9). The City Defendants argue this is "improper propensity evidence" and inadmissible under Rule 404(b) of the Federal Rules of Evidence. (*Id.*). Plaintiff opposes this motion and argues that not only is this testimony admissible under Rule 404(b)(2) "to demonstrate 'intent,' absence of mistake' and/or 'lack of accident,'" or to show an identical pattern of conduct, (Dkt. No. 127-1, at 11), but that it is admissible under Rule 415 for purposes of showing propensity. (Dkt. No. 153, at 2–4). Below, the Court outlines the proffered testimony and considers its admissibility under both Rules 404(b) and 415.

### 1. The Allegations

#### a. Elizabeth Elbayadi

In her affidavit, Elbayadi states that in 1997, she attended a concert in Vernon, New York on her eighteenth birthday. (Dkt. No. 99-15, ¶ 2). She "was a little drunk and not feeling well"

4

when she entered a "Porta Potty." (*Id.* ¶ 3). A uniformed police officer, who Elbayadi claims was Thompson, followed her in and locked the door. (*Id.*). The officer asked: "Young lady, if I check your ID, will it say that you're 21 years old?" and then "turned [her] around, bent [her] over, and raped" her.[5] (*Id.*). Plaintiff asserts that this evidence is admissible to "prove that Thompson intended to sexually assault plaintiff, and that the sex was not the result of a mistaken belief that plaintiff, like other women with whom he acknowledged having sex on duty, had made sexual advances towards him and consented to the sex." (Dkt. No. 127-1, at 13).

### b. Kimi Fletcher

In her affidavit, Fletcher states she met Thompson "when he came to my house because my boyfriend had called the police." (Dkt. No. 99-23, at 1). In June 2013, Fletcher called the police regarding her children; Thompson was one of the officers that reported to her house. Fletcher states that after the other officers left, Thompson "exposed himself and told me to 'come here.' I felt intimidated so I performed oral sex on him and he climaxed." (*Id.*). Fletcher states that Thompson returned to her house a "second time." He "began rubbing his groin and said, 'someone's got to take care of this,'" and she performed oral sex on him. (*Id.*). In June 2014, she saw Thompson after she had been involved in a traffic accident: "He was again on duty and he told me my license was suspended but that he would not ticket me. I again felt intimidated and performed oral sex upon him. He did not ticket me." (*Id.*).

### c. Shakina Thompson

In response to questioning regarding allegations that Shakina Thompson[6] made against him, Thompson testified that he met her when he responded to a domestic complaint. (Dkt. No.

---

[5] Plaintiff also argues that this evidence corroborates rumors that were circulating about Thompson, (Dkt. No. 127-1, at 13), but the Court previously found evidence of rumors inadmissible. (Dkt. No. 156, at 12–13).

[6] There is no affidavit from Shakina Thompson.

5

99-3, at 196). Several months later, Thompson called Shakina Thompson, who had given him her cell phone number and told him to call her. (*Id.* at 202). According to Thompson, she invited him to her house, and when he arrived, they went inside and had sex. (*Id.* at 204).

### d. Jennifer Brisk

Thompson testified that he met Jennifer Brisk after "she called in a complaint about having some money stolen from her." (*Id.* at 237). Thompson responded to her residence and "took that complaint" and told her he would follow up with her. (*Id.* at 237–39). Brisk later contacted Thompson with more information, and he returned to her residence for a statement. (*Id.* at 241). Brisk alleged that Thompson had "a sexual encounter" with her, which Thompson denied. (*Id.* at 243).[7]

### 2. Fed. R. Evid. 404(b)

Federal Rule of Evidence 404(b) states in relevant part that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of . . . intent . . . or absence of mistake." Fed. R. Evid. 404(b) (2). It may also be admissible as evidence of a pattern if the act is "so nearly identical in method as to ear-mark [it] as the handiwork of the accused." *United States v. Mills*, 895 F.2d 897, 907–08 (2d Cir. 1990) (even where intent is not in issue, Rule 404(b) permits evidence of similar acts to prove a "signature crime," i.e., a modus operandi where the crimes are "so nearly identical in method as to ear-mark them as the handiwork of the accused."); *United States v. Sliker*, 751 F.2d 477, 486–87 (2d Cir. 1984) ("The similarity sufficient to admit evidence of past acts to establish a recurring modus operandi need not be complete; it is enough that the characteristics relied upon are sufficiently idiosyncratic to

---

[7] There is no affidavit from Jennifer Brisk.

6

permit a fair inference of a pattern's existence."); *see also Alaniz v. Zamora-Quezada*, 591 F.3d 761, 774–75 (5th Cir. 2009) (admitting in a discrimination case evidence that defendant had "a particular modus operandi in making sexual overtures to female subordinates"). The Second Circuit "follows the 'inclusionary' approach, which admits all 'other act' evidence that does not serve the sole purpose of showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (citing *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)).

To determine whether to admit Rule 404(b) evidence, the court should consider whether: "(1) the prior [bad act] evidence [is being] 'offered for a proper purpose'; (2) the evidence [is] relevant to a disputed issue; (3) the probative value of the evidence [is] substantially outweighed by its potential for unfair prejudice pursuant to Rule 403; and (4) [there is] an appropriate limiting instruction." *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).

### a. Elizabeth Elbayadi

Here, even assuming Plaintiff offers Elbayadi's testimony to show Thompson's intent or absence of mistake—both proper purposes under Rule 404(b)—and that those are disputed issues, the Court must consider the remoteness of alleged rape. The incident involving Elbayadi occurred in 1997, 18 years before the incident at issue. *See United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 171 (S.D.N.Y. 2006) ("The remoteness in time of a prior act, while not dispositive in a Rule 404(b) analysis, should be considered by a district court in making its admissibility determination." (citing *United States v. Figueroa*, 618 F.2d 934, 942 (2d Cir. 1980) (holding that in a Rule 404(b) analysis, Rule 403 "oblige[s] the trial court to assess the probative value of every prior conviction offered in evidence and the remoteness of a conviction, whatever its age, is always pertinent to this assessment"))).

7

Further, to warrant admission as evidence of a pattern of relevant conduct, the evidence must "share 'unusual characteristics' with the act charged or represent a 'unique scheme.'" *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting *United States v. Benedetto*, 571 F.2d 1246, 1249 (2d Cir. 1978)); *see also Ismail v. Cohen*, 706 F. Supp. 243, 252–53 (S.D.N.Y. 1989) (stating "specific acts of other misconduct may be introduced as extrinsic evidence under Rule 404(b) to prove . . . pattern of relevant conduct"), *aff'd*, 899 F.2d 183, 188–189 (2d Cir. 1990). The proffering party must show more than the "mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature." *Benedetto*, 571 F.2d at 1249. Here, the two accounts fall into the same category of alleged sexual crimes and, as further described below, there are strong similarities in the manner of the alleged rapes, but Thompson's alleged rape of Elbayadi is not "so nearly identical in method [to his conduct with Plaintiff] as to ear-mark [it] as [his] handiwork." *Mills*, 895 F.2d at 907–08. In any event, because the Court is reserving, for trial, the issue of whether Elbayadi's testimony is admissible under Rule 415, the Court need not rule on its admissibility under Rule 404(b).

b. **Kimi Fletcher**

Kimi Fletcher and Plaintiff's accounts, however, share several unique similarities: both women allege that Thompson exposed himself to them while on duty, responding to calls at their residences, and intimidated them into performing oral sex. (Dkt. No. 99-23, at 1; Dkt. No. 99-2, ¶ 5). The third incident involves Thompson coercing oral sex for not issuing a ticket to Fletcher while on duty is also similar to Thompson's alleged coercion of oral sex in Plaintiff's apartment. Given the closeness in time between Thompson's interactions with Fletcher and the strong similarities these interactions share with his alleged conduct with Plaintiff, the Court finds this evidence to be probative similar act evidence under Rule 404(b).

8

A "[p]laintiff[']s permissible purpose for offering the prior-act evidence under Rule 404(b) is limited, however, in that the purpose is justified only so long as . . . the underlying evidence is relevant to an issue in the case." *Carofino v. Forester*, 450 F. Supp. 2d 257, 273 (S.D.N.Y. 2006) (citing *United States v. Reed*, 639 F.2d 896, 906–07 (2d Cir. 1981)). Here, Plaintiff contends that the prior-act evidence is relevant to show "that the sex was not the result of a mistaken belief that plaintiff, like other women with whom he acknowledged having sex on duty, had made sexual advances towards him and consented to the sex." (Dkt. No. 127-1, at 13). Given that Thompson disputes Plaintiff's assertion that he exposed himself and told Plaintiff to give him oral sex, evidence that Thompson made very similar advances on Fletcher during a call less than two years before, tends to make more probable the alleged fact that Thompson acted in the same manner with Plaintiff. *See Carofino*, 450 F. Supp. 2d at 273 ("Surely, evidence that defendant made false misrepresentations to an insurance carrier concerning how many times per week he saw a particular patient both immediately after and during the period when he was seeing Jonathan tends to make more probable the alleged fact that he was making the same false misrepresentations to George.").

The Court must next test the evidence under Rule 403. The inflammatory nature of the evidence creates a danger of unfair prejudice to Thompson and to the City Defendants, since Galvin was unaware of Fletcher's allegations at the time of his investigations. And yet, given the unique similarities between the two incidents (and the fact that the jury can be instructed on the permissible uses of the evidence), the probative value of the prior-act evidence outweighs the danger of unfair prejudice to Thompson and the City Defendants. The Court will, if the parties so request, consider issuing a limiting instruction to the jury.

### c. Shakina Thompson and Jennifer Brisk

There are insufficient facts regarding Shakina Thompson and Jennifer Brisk's allegations to allow meaningful evaluation and any conceivable probative value is substantially outweighed by the danger of unfair prejudice. Thus, the City Defendants' motion to preclude their testimony is granted.

### 3. Fed. R. Evid. 415

Plaintiff next argues that testimony regarding Thompson's conduct toward Elbayadi and Fletcher[8] is admissible under Rule 415, which provides: "In a civil case involving a claim for relief based on a party's alleged sexual assault or child molestation, the court may admit evidence that the party committed any other sexual assault or child molestation." Fed. R. Evid. 415(a). Rule 415(a) further provides that such evidence "may be considered as provided in Rules 413 and 414," which govern the use of similar acts of sexual assault and child molestation in criminal cases, and allow the evidence to "be considered on any matter to which it is relevant." Fed. R. Evid. 415(a), 413(a).

In *United States v. Spoor*, the Second Circuit explained the purpose of Rule 414 (a companion to Rules 413 and 415) and the permissible inferences:

> Although Rule 414 modifies the ban on character evidence otherwise applicable under Rule 404, it does not follow that propensity evidence relative to child molestation is always admissible. The ban on character evidence under Rule 404 is "merely an application of Rule 403 to a recurring issue." Rule 414 reflects a congressional judgment that such a blanket rule is inappropriate when dealing with child molestation offenses, but it does not require the district courts to evaluate such evidence with a "thumb on the scale in favor of admissibility." It is more accurate to say that Rule 414 affects the district court's analysis under Rule 403 because it alters the category of permissible inferences available to the jury. Whereas in other cases it is impermissible, and unfairly

---

[8] As discussed above, the Court is not considering Plaintiff's argument regarding Shakina Thompson and Jennifer Brisk because Plaintiff failed to provide sufficient detail for the Court to evaluate their testimony under Rule 415.

10

> prejudicial, for the jury to infer a propensity to commit the charged
> crime from evidence of prior, similar acts, Rule 414 makes that a
> permissible inference.

904 F.3d 141, 154–55 (2d Cir. 2018) (quoting first *United States v. Guardia*, 135 F.3d 1326, 1330 (10th Cir. 1998) then *Johnson v. Elk Lake Sch. Dist.*, 283 F.3d 138, 155-56 (3d Cir. 2002)) (citations omitted). The Circuit further explained that courts must still weigh the probative value of similar act evidence:

> The district court retains discretion, however, to determine the probative value of this inference and to weigh whether the prior act evidence will be unfairly prejudicial. In determining the probative value of prior act evidence, the district court should consider such factors as: "(1) 'the similarity of the prior acts to the acts charged,' (2) the 'closeness in time of the prior acts to the acts charged,' (3) 'the frequency of the prior acts,' (4) the 'presence or lack of intervening circumstances,' and (5) 'the necessity of the evidence beyond the testimonies already offered at trial.'" The district court should also consider the potential for unfair prejudice, including the possibility that prior act evidence will lead the jury to convict out of passion or bias or because they believe the defendant is a bad person deserving of punishment – a particular risk with this sort of evidence.

*Id.* (quoting *United States v. LeMay*, 260 F.3d 1018, 1028 (9th Cir. 2001)) (citation omitted).

The City Defendants argue that "because [they] contend that the encounter between Plaintiff and Mr. Thompson was consensual, Fed. R. Evid. 415 is inapplicable." (Dkt. No. 159, at 1). Indeed, "[a]s an initial step, it must first be determined whether Fed. R. Evid. 415 is applicable." *United States v. Barnason*, 852 F. Supp. 2d 367, 372 (S.D.N.Y. 2012). Rule 413, which governs the use of similar crimes in criminal sexual assault cases, defines sexual assault as, *inter alia*, "contact, without consent, between the defendant's genitals . . . and any part of another person's body." Fed. R. Evid. 413(d)(3). Here, Plaintiff alleges that Thompson "removed his penis from his pants and told [Plaintiff] to 'suck it,'" that she "did not try to fight Officer Thompson," but that when she "told him 'Whoa, we don't have to do this,'" he responded by

repeating "suck it." (Dkt. No. 99-2, ¶ 5). Plaintiff says she "was terrified for [her] safety and for the safety of [her] newborn son, so [she] began to give Officer Thompson oral sex." (*Id.*). Thompson then told Plaintiff "to get a condom" and raped her. (*Id.* ¶¶ 7–8). These allegations are sufficient to allege nonconsensual sexual contact between Plaintiff and Thompson. Accordingly, the Court considers the proffered testimony of Elbayadi and Fletcher.

The Court concludes there is sufficient similarity between Plaintiff and Elbayadi's accounts of sexual assault to satisfy Rule 415. Plaintiff states in her declaration that in 2015, Thompson was in her apartment in response to her call for police assistance when he "told [her] to turn around and bend over" and then "raped [Plaintiff] from behind." (Dkt. No. 99-2, ¶ 8). Elbayadi alleges that in 1997, Thompson was on duty at a concert and he followed her into a "Porta Potty," then "turned [her] around, bent [her] over, and raped" her. (Dkt. No. 99-15, ¶ 3). As Plaintiff and Elbayadi's accounts of the act of rape are nearly identical, and both occurred while he was on the job in uniform, the Court concludes that Elbayadi's testimony has probative value as similar act evidence under Rule 415. However, in light of the remoteness of the incident and because the Court must consider whether the evidence is necessary, the Court reserves decision on the admissibility of Elbayadi's testimony.

The conduct Fletcher alleges is, as discussed above, *see supra* Section II.B.1.b., not only relatively close in time to the incident at issue—they are two years apart—but strikingly similar. In addition, the Court notes that the number of allegations against Thompson weighs in favor of admitting the evidence under Rule 415. *See LeMay*, 260 F.3d at 1029 (concluding that the "'frequency of events' factor" weighed in favor of admitting evidence of the defendant's prior acts of molestation, explaining that "[a]lthough it was not introduced at trial, the government also had evidence of a third incident in which [the defendant] had sexually abused his young

12

relatives"). Further, the Court finds that such testimony may be helpful to the jury in evaluating whether, as Plaintiff alleges, Thompson's conduct was coercive and in countering Thompson's assertion that Plaintiff initiated their sexual encounter. As previously discussed, the Court finds that its probative value outweighs any danger of unfair prejudice.

### C. Reported Sexual Misconduct

The City Defendants seek to preclude testimony by Melissa Popcun and Cheryle Bassett, whose allegations were reported to the SPD. (Dkt. No. 123-1, at 10–13). Plaintiff opposes the City Defendants' motion. (Dkt. No. 127-1, at 13–14).

#### 1. Melissa Popcun

The City Defendants seek to preclude Popcun's testimony on the ground that "[t]he only relevant evidence concerns the circumstances of Patricia Popcun's complaint to the SPD and the SPD's actions taken in response."[9] (Dkt. No. 123-1, at 10–11). The City Defendants further argue that any probative value is outweighed by the danger of unfair prejudice and jury confusion because "the jury may presume that Captain Galvin had that information before him and that his investigation necessarily was inadequate." (Dkt. No. 123-1, at 11). Plaintiff opposes the City Defendants' motion and argues that Popcun's testimony is admissible: (i) under Rules 404(b) and 415; (ii) to corroborate rumors;[10] (iii) to rebut Galvin's claim that he made "every attempt" to meet with Popcun and she refused to meet with him; and (iv) to show that had she been contacted by SPD, Popcun would have told them what happened. (Dkt. No. 127-1, at 13–14).

---

[9] Patricia Popcun is Melissa Popcun's mother; Patricia Popcun complained to the SPD that Thompson had "followed her [daughter] into her apartment unannounced and uninvited . . . and told her that he would take care of any police problems in exchange for oral sex, which [she] then gave him." (Dkt. No. 99-5, at 1).

[10] The Court finds this argument without merit. *See supra* note 5.

13

#### a. Rule 404(b) and Rule 415

Like Fletcher and Plaintiff, Popcun asserts that Thompson was on duty when he entered her residence, exposed himself to her, and "told [her] to give him oral sex." (Dkt. No. 99-4, at 1). Their accounts are nearly identical and for the reasons discussed above, admissible under Rule 404(b) and 415. Popcun's proffered testimony contains the factual details that render her account of Thompson's alleged sexual assault sufficiently similar to the Plaintiff and Fletcher's accounts to warrant admission as a similar act. The Court is mindful that: (i) the admission of Popcun's testimony creates a risk of unfair prejudice to Galvin and the City, as it could lead the jury to the improper conclusion that Galvin knew what Popcun says happened; and (ii) that there is a danger that it would confuse and distract the jury away from the issue before it with respect to Galvin—the adequacy of his investigation and supervision. The Court will, however, give the jury a limiting instruction, if so requested, prior to the testimony and in its instructions to the jury at the close of proof. Thus, the City Defendants' motion to preclude Popcun's testimony regarding the alleged sexual assault is denied.

#### b. Galvin's Efforts to Contact Popcun

According to Plaintiff, Popcun intends to testify that Galvin never contacted her regarding her mother's report of Thompson's alleged sexual misconduct to the SPD. This testimony is relevant and admissible to rebut evidence that Galvin told the deputy chief reviewing the Popcun case report that he had reached out to Popcun but that she did not return his calls or provide any information. (Dkt. No. 99-9, at 23). The City Defendants' motion to preclude Popcun's testimony that Galvin did not contact her is denied.

#### c. Information Popcun Would Have Provided to the SPD

Finally, Popcun is prepared to testify regarding what she would have told the SPD about the alleged incident with Thompson had she been contacted. As described above, Popcun may

14

testify as to what happened. Any testimony about what she would have told the SPD is, however, speculative and the danger of unfair prejudice substantially outweighs any minimal probative value. Thus, the City Defendants' motion to preclude this testimony is granted.

### 2. Cheryle Bassett

The City Defendants seek to preclude Cheryle Bassett's testimony on the ground that it is irrelevant—both because her relationship with Thompson was consensual at first (and therefore too different from the incidents involving Plaintiff to reflect a pattern) and because she never reported Thompson's conduct to the SPD.[11] Plaintiff responds that Bassett's testimony that: (i) Thompson raped her is relevant to intent and absence of mistake; (ii) she "informed SPD about her (then consensual relationship) with Thompson and that they appeared to be angry and dismissed charges," is relevant (Dkt. No. 99-10, at 2); and (iii) when she lived at Thompson's apartment, she saw Thompson involved romantically with SPD Deputy Chief Rebecca Thompson,[12] who, in 2015, signed off on the Popcun investigation. (Dkt. No. 127-1, at 14).

#### a. Rule 404(b) and Rule 415

In view of the admitted consensual element of Bassett's relationship with Thompson, at least at the beginning, and the lack of factual detail concerning Thompson's alleged sexual assaults later in their relationship, Bassett's allegations fail to show a unique pattern for purposes of admission under Rule 404(b). In addition, the length of time between the alleged incidents, at least 10 years, reduces the probative value. Bassett's assertion that over a period of months, Thompson "showed up at" her apartment, "often in uniform, and raped" her, (Dkt. No. 99-1, ¶ 6), is, in some degree, similar to Plaintiff's allegation that Thompson, who was in uniform, raped

---

[11] Bassett's friend John Malenick allegedly made the report and will testify at trial. (Dkt. No. 123-1, at 12).

[12] Rebecca Thompson and Defendant Chester Thompson are not related.

15

her in her apartment. The Court, however, concludes that the potential for confusion, and distraction of the jury from the issues in this case, given that the relationship was, at first, consensual and the potential for unfair prejudice to the City Defendants, to whom Malenick allegedly complained about Thompson's treatment of Bassett, the Rule 403 dangers substantially outweigh the probative value of this evidence.

### b. Other Testimony

The other two points Plaintiff seeks to introduce through Bassett's testimony—her report of her relationship with Thompson to the SPD and her observation of Thompson's interaction with Deputy Chief Rebecca Thompson—occurred in the early 2000s, (Dkt. No. 99-10, ¶ 5), and are too remote in time and too minimal in probative value to overcome the danger of unfair prejudice. Whether the SPD knew that Bassett had a then-consensual relationship with Thompson is irrelevant to the determination of whether Galvin (or the City) knew of "misconduct but failed to take appropriate action to prevent future *similar* misconduct before the plaintiff was eventually injured." *Raspardo v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014). Further, to the extent Plaintiff seeks to introduce Bassett's observation of the alleged romantic relationship as evidence that Deputy Chief Thompson was biased in her review of the Popcun case report more than 10 years later, such evidence is too remote and disconnected to the matters at issue to carry any probative value and is substantially outweighed by the danger confusing the issues and unfair prejudice. Thus, the City Defendants' motion to preclude Bassett's testimony concerning her report of her relationship with Thompson to the SPD and her observation of a relationship between Thompson and Deputy Chief Thompson is granted.

Accordingly, Kimi Fletcher and Melissa Popcun's testimony is admissible under Rules 404(b) and 415 and the testimony of Shakina Thompson, Jennifer Brisk, and Cheryle Bassett is

not admissible under Rule 404(b) or 415.[13] Plaintiff indicated at oral argument that she does not know whether Kimi Fletcher or Melissa Popcun, who have been subpoenaed for trial, will appear to testify. Considering the disturbing number of similar allegations in this case, and because it is unclear whether one or more, if any, of these witnesses will appear for trial, the Court will reserve decision regarding Elbayadi's testimony until trial. The Court notes that the number of allegations against Thompson weighs in favor of admitting evidence under Rule 415. *See LeMay*, 260 F.3d at 1029. At trial the Court will reevaluate "the necessity of the evidence beyond the testimonies already offered at trial" as well as the potential for unfair prejudice in light of the evidence adduced at trial. *Spoor*, 904 F.3d at 155.

## III. CONCLUSION

For these reasons, it is

**ORDERED** that, with the exception of the City Defendants' arguments concerning medical records about which the Court reserves decision and the determination of the admissibility of Elbayadi's testimony under Rules 404(b) and 415, the City Defendants' motion in limine (Dkt. No. 123) is **granted in part and denied in part**; and it is further

**ORDERED** that, with the exception of the City Defendants' arguments concerning medical records, about which the Court reserves decision, the City Defendants' supplemental motion in limine, (Dkt. No. 152) is **denied.**

**IT IS SO ORDERED.**

Dated: September 12, 2019

Brenda K. Sannes
U.S. District Judge

---

[13] The ruling as to Bassett is preliminary and is subject to change if the Defendants open the door to the admission of the evidence.