**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

MALEATRA MONTANEZ,

                                        Plaintiff,                    6:16-cv-00550 (BKS/TWD)

v.

CITY OF SYRACUSE, POLICE OFFICER CHESTER D.
THOMPSON, and POLICE CAPTAIN THOMAS
GALVIN,

                                        Defendants.
_____

**Appearances:**

_For Plaintiff:_
Edward Sivin
Sivin & Miller, LLP
20 Vesey Street, Suite 1400
New York, NY 10007

_For Defendants City of Syracuse and Thomas Galvin:_
Kristen E. Smith
Corporation Counsel of the City of Syracuse
Christina F. DeJoseph
Senior Assistant Corporation Counsel
233 E. Washington Street, Suite 300
Syracuse, NY 13202

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.     INTRODUCTION

        Plaintiff Maleatra Montanez brought this action against defendants City of Syracuse (the

"City"), Police Officer Chester D. Thompson, Chief of Police Frank L. Fowler, and Police

Captain Thomas Galvin. (Dkt. No. 1). Plaintiff alleged that on February 14, 2015, Thompson—a

patrol officer with the Syracuse Police Department ("SPD")—reported to her residence in

response to a 911 call and directed her to engage in sexual acts with him. (*Id.*). Plaintiff brought: (1) a battery claim against Thompson and the City; (2) an intentional infliction of emotional distress ("IIED") claim against Thompson and the City; (3) a prima facie tort claim against Thompson and the City; (4) a negligent hiring, training, supervision, and retention claim against the City; (5) a Fourth Amendment excessive force and unreasonable search and seizure claim against Thompson; (6) a Fourteenth Amendment substantive due process claim against Thompson; (7) a supervisory liability claim against Fowler; (8) a supervisory liability claim against Galvin; and (9) a *Monell*[1] municipal liability claim against the City. (*Id.*). The Court granted Defendants' motion for summary judgment in part, dismissing the battery, IIED, prima facie tort, and negligent hiring claims against the City and the supervisory liability claims against Fowler. *Montanez v. City of Syracuse*, No. 16-cv-550, 2019 WL 315058, 2019 U.S. Dist. LEXIS 10351 (N.D.N.Y. Jan. 23, 2019). Plaintiff withdrew her prima facie tort claim and her Fourth Amendment claim against Thompson at a final pretrial conference, and the parties prepared to proceed to trial on the *Monell* claim against the City, the supervisory liability claim against Galvin, and the substantive due process claim against Thompson.

Five days before trial was scheduled to begin, these claims were dismissed by reason of settlement. (Dkt. No. 175). Pursuant to the agreement, Plaintiff accepted $500,000 to settle her claims against the City. (Dkt. No. 181-1, at 8). Plaintiff now moves for attorney's fees under 42 U.S.C. § 1998(b). (Dkt. No. 181). Plaintiff seeks an award of attorneys' fees in the amount of $994,655.50 for 1,787.64 hours of attorney and paralegal work, and costs in the amount of

---

[1] *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978).

$40,557.41 (Dkt. No. 181-2, ¶ 46; Dkt. No. 194-12, at 3 n.1; Dkt. No. 181-4, at 5).[2] Defendants

oppose the motion and seek to reduce Plaintiff's fees. (Dkt. No. 192). For the reasons that

follow, Plaintiff's motion is granted in part and denied in part.

## II.    DISCUSSION[3]

### A.    Attorney's Fees in § 1983 Cases

#### 1.    Prevailing Party

To "ensure effective access to the judicial process for persons with civil rights

grievances," *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), § 1988(b) empowers the Court to

award reasonable attorney fees to the "prevailing party" in a § 1983 action. 42 U.S.C. § 1988(b).

To "qualify as a prevailing party, a civil rights plaintiff must obtain at least some relief on the

merits of h[er] claim." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992). This includes either "an

enforceable judgment against the defendant from whom fees are sought, or comparable relief

through a consent decree or settlement." *Farrar*, 506 U.S. at 111 (citations omitted). Plaintiff

litigated this case through summary judgment and then entered into an agreement with the City,

shortly before the scheduled trial, agreeing to accept $500,000 in settlement. Plaintiff is thus a

"prevailing party" under § 1988, entitled to recover attorney's fees. Accordingly, the Court must

determine the "reasonable attorney's fee" in this case. *Lilly v. City of New York*, 934 F.3d 222,

228 (2d Cir. 2019).

#### 2.    Presumptively Reasonable Fee

District courts have "considerable discretion in determining what constitutes reasonable

attorney's fees in a given case." *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132,

---

[2] This includes Plaintiff's request concerning the hours spent by her former lawyers, Williams & Rudderow, PLLC—$13,353.00 in attorney's fees, for 44.51 hours, and $91.59 in disbursements, (Dkt. No. 181-1, at 5 n.1), as well as the time spent in connection with the reply papers filed as part of the instant motion, (Dkt. No. 194-12, at 3 n.1).

[3] The Court assumes the parties' familiarity with the facts and procedural history of this case.

151 (2d Cir. 2008). Courts in the Second Circuit generally use the lodestar, or "presumptively reasonable fee," approach to calculate reasonable attorney's fees. *See Lilly*, 934 F.3d at 229. This approach requires a court to set a "reasonable hourly rate, taking account of all case-specific variables," and determine "the appropriate billable hours expended." *Lilly*, 934 F.3d at 230 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 189–90 (2d Cir. 2008)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992) ("Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals."); *DiFilippo v. Morizio*, 759 F.2d 231, 234 (2d Cir. 1985) ("[W]here . . . the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate.").[4] The prevailing party is also entitled to attorney's fees for hours expended in bringing its § 1988 application. *Restivo v. Nassau Cty.*, No. 06-cv-6720, 2015 WL 7734100, at *2 n.3, 2015 U.S. Dist. LEXIS 160336, at *5 n.3 (E.D.N.Y. Nov. 30, 2015) (citing *Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995)) *aff'd sub nom. Restivo v. Hessemann*, 846 F.3d 547 (2d Cir. 2017).

### a.    Reasonable Hourly Rates

Plaintiff asserts that her attorneys are entitled to an hourly rate consistent with rates typically awarded in the Southern District of New York, where her attorneys are based.

---

[4] Case-specific factors that may be considered in determining the reasonable hourly rate or hours billed include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly*, 934 F.3d at 228, 232-33 (quoting *Arbor Hill*, 522 F.3d at 186 n.3 (2d Cir. 2008)).

Defendants respond that the Court should set the rates consistent with those in the Northern District. The Supreme Court has explained that district courts should use the "prevailing market rates in the relevant community" in determining the reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Second Circuit has interpreted the "community" to mean "the district where the district court sits." *Arbor Hill*, 522 F.3d at 190 (citing *Polk v. N.Y. State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983)); *Grant v. City of Syracuse*, 357 F. Supp. 3d 180, 200–01 (N.D.N.Y. 2019).

"[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 175 (2d Cir. 2009). To "overcome that presumption, a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Id.* The party "seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." *Id.* at 176. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise," *id.*, or by showing that "local counsel possessing requisite experience were unwilling or unable to take the case." *Id.* (citing *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir. 1987)).

Here, Plaintiff seeks out-of-district hourly rates of $700 for partners Edward Sivin and Glenn Miller, $250 for associate Moses Ahn, $200 for associate Andrew Weiss, $170 for legal assistant Jake Ethé, and $150 for other legal assistants. (Dkt. No. 181-1, at 15–16). In support of her motion for fees, Plaintiff submitted: a declaration regarding her difficulty seeking in-forum

representation, (Dkt. No. 181-3), a declaration by Sivin, as well as his time records, (Dkt. Nos. 181-2, 181-12), time records for the other attorneys and legal assistants who worked on the case, (Dkt. No. 181-13 to -17), and an itemization of litigation expenses, (Dkt. No. 181-19). Plaintiff argues that the Court should deviate from the forum rule because (i) she was unable to secure counsel located in the Northern District, (Dkt. No. 18-1, at 10), and (ii) local counsel "would have produced a substantially inferior result," (Dkt. No. 194-12, at 11). Neither argument is persuasive here.

Turning to the first argument, Plaintiff has not satisfied her burden of showing that local counsel was "unwilling or unable to take the case." *Simmons*, 575 F.3d at 175. Plaintiff was represented initially by Michelle Rudderow of the in-district law firm Williams & Rudderow, PLLC, who filed a Notice of Claim against the City on Plaintiff's behalf. (Dkt. No. 181-3, ¶ 2). Williams & Rudderow terminated the representation nine months later due to a "breakdown in the relationship between Montanez and W&R." (Dkt. No. 181-4, ¶ 2). Following that breakdown, Plaintiff argues she "tried unsuccessfully to find another lawyer in the Syracuse area to represent" her to pursue this lawsuit. (Dkt. No. 181-3, ¶ 3). Plaintiff also claims she was unsuccessful in retaining counsel in the Utica area, (*Id.* ¶ 4), and that "by December 2015, [she] was ready to give up [her] search for a lawyer and not pursue a lawsuit in connection with what happened to [her]." (*Id.* ¶ 5). Plaintiff asserts that the "$500,000 settlement that [she] ultimately obtained after securing counsel in the SDNY was a 'substantially better result'" than if she had "not pursued a lawsuit." (Dkt. No. 181-1, at 10–11).

Citing *Monsour v. New York State Office for People with Developmental Disabilities*, 13-cv-00336, 2018 WL 3349233, 2018 U.S. Dist. LEXIS 113041 (N.D.N.Y. July 9, 2018), Defendants argue that because Plaintiff does not name any of the law firms or attorneys she

allegedly contacted in her search for representation located in the Northern District before

contacting Sivin & Miller, she has failed to demonstrate a "diligent and good faith effort to

obtain local counsel." (Dkt. No. 192-9, at 9, 11) (quoting *O'Grady v. Mohawk Finishing Prods.,

Inc.*, No. 96-cv-1945, 1999 WL 30988, at *3, 1999 U.S. Dist. LEXIS 6076, at *5 (N.D.N.Y. Jan.

15, 1999)). In *Monsour*, this Court denied the plaintiff's request for Southern District rates. 2018

WL 3349233, at *18, 2018 U.S. Dist. LEXIS 113041, at *49. The plaintiff asserted, as Plaintiff

does here, that he "reached out to several attorneys" in the Albany and Queensbury area but was

unable to find local representation and had to resort to attorneys located out-of-forum. *Id*. at *17,

2018 U.S. Dist. LEXIS 113041, at *48. Because the plaintiff did "not identify the in-district

lawyers he contacted or detail the efforts he expended to retain local counsel with the ability or

willingness to take on his case," the Court found the plaintiff's "representations about his efforts

to locate local counsel were insufficient to rebut the presumption in favor of the local rule." *Id*. at

*18, 2018 U.S. Dist. LEXIS 113041, at *48.

  In reply, Plaintiff identifies one of the attorneys, Kevin Kuehner, that she spoke with

during her search for local counsel and asserts that they met and discussed this case, but he

declined to represent her. (Dkt. No. 194-1, ¶ 2). Plaintiff further avers that she believes she had

"one other face-to-face meeting with a lawyer in Syracuse," whose name she could not

remember, and that she "called at least a dozen other lawyers" in Syracuse and Utica, but none

were willing to take her case. (*Id.* ¶ 3). Plaintiff does not recall the names of the lawyers she

called. (*Id.*). A single local attorney's refusal to represent Plaintiff and Plaintiff's vague

recollections regarding her efforts to obtain in-district counsel are insufficient to overcome the

presumption in favor of the forum rule.

Plaintiff also asserts that Sivin & Miller obtained a "substantially better result" than local counsel would have been able to obtain. (Dkt. No. 181-1, at 10–11). Plaintiff notes that "there are only two published decisions from the NDNY involving attempts to impose liability on a municipality or municipal supervisors for a sexual assault committed by a municipal employee" and that "in both of those cases, summary judgment was granted in favor of the municipal defendants." (Dkt. No. 181-1, at 10 n.4). Defendants respond that these assertions are insufficient to overcome the presumption of in-forum rates because Plaintiff failed to show that the hired out-of-forum attorneys possessed "skills, experiences, and reputations not easily comparable to or found in local counsel." (Dkt. No. 192-9, at 6) (quoting *Osterweil v. Bartlett*, 92 F. Supp. 3d 14 at 27 (N.D.N.Y. 2015)). Defendants note that "the City has been a named party in multiple §1983 lawsuits since Plaintiff filed her Complaint" and lists several of these cases and the plaintiff's in-forum counsel. (Dkt. No. 192-9, at 10) (citing, *inter alia*, *Buccina v. Onondaga Cnty. et al.*, No. 18-cv-00031 (Michael P. Kenny, Esq., Syracuse, NY); *Days v. City of Syracuse et al.*, 5:18-cv-01334-LEK-ML (Dirk J. Oudemool, Esq., Syracuse, NY); *Rosa et al v. City of Syracuse et al.*, No. 16-cv-01123 (Legal Services of Central New York – Syracuse)). Additionally, Defendants assert that Rudderow, who previously represented Plaintiff, has "successfully litigated § 1983 cases." (Dkt. No. 192-9, at 9).

Plaintiff relies on her attorneys' experience and has submitted statements by other attorneys attesting to Sivin and Miller's expertise in civil rights litigation as well as newspaper articles discussing their successful cases, (Dkt. Nos. 181-5 to -9), but does not identify any particular skill that her attorneys possess that is unavailable in the Northern District. In support of her fee application, Plaintiff also includes a "[t]able documenting cases filed and adjudicated within the Second Circuit on the issue of supervisory and/or *Monell* liability in connection with

claims alleging violations of the due process right to bodily integrity arising out of allegations of sexual assaults committed by officers of municipalities." (Dkt. No. 194, at 1; Dkt. No. 194-2). In each example, the reviewing court either granted the municipality's motion to dismiss or motion for summary judgment. (Dkt. No. 194-2). However, the listed examples are insufficient to show "that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175. While the table indicates that other plaintiffs have failed on similar claims within the Second Circuit, this case involved unique facts regarding Captain Thomas Galvin's knowledge of and response to prior complaints of coercive sexual conduct by Thompson. *See Montanez*, 2019 WL 315058, at *18–19, 2019 U.S. Dist. LEXIS 10351, at *51–54. It does not follow from the failure of other claims that this case "required[ed] special expertise, that no in-district counsel possessed." *Simmons*, 575 F.3d at 175–76.

Although Plaintiff undoubtedly benefitted from Sivin & Miller's skillful representation, Plaintiff has "failed to make a particularized showing to rebut the presumptive forum rule." *Grant*, 357 F. Supp. 3d at 202; *see also Simmons*, 575 F.3d at 176. Plaintiff failed to show that local counsel "were unwilling or unable to take the case" or that this was "a case requiring special expertise [and] that no in-district counsel possessed such expertise." *Simmons*, 575 F.3d 175–76. Accordingly, the Court will look to "the hourly rates employed" in the Northern District to determine the reasonable hourly rates for the attorneys and paralegals who worked on this case. *Bergerson v. New York State Off. of Mental Health*, 652 F.3d 277, 290 (2d Cir. 2011) (quoting *Simmons*, 545 F.3d at 174).

### b. Reasonable Rates

A review of cases in this District indicates that the following hourly rates (or rate ranges) are reasonable: $275–$350 for experienced partners;[5] $165–$200 for junior associates;[6] and $90 for paralegals.[7]

### i. Edward Sivin

Sivin & Miller was formed in 1994 and primarily focuses on civil rights cases. (Dkt. No. 181-2, at 3). Sivin was admitted to the New York bar in 1982 and has practiced law for the past 37 years, "exclusively in the area of plaintiff's litigation." (*Id.*). Further, the Court finds that the result here—a $500,000 settlement—was an excellent outcome for Plaintiff. Considering Sivin's commendable work, his status as an experienced partner, and his expertise in litigating civil rights cases against police officers, Sivin will be "compensated at the rate of $350 per hour," a rate on the "high end of the reasonable rates within the Northern District." *Grant*, 357 F. Supp. 3d at 202 (awarding out-of-district attorney Northern District rates at $350 per hour in excessive force case).

---

[5] *See, e.g.*, *Doe v. Cornell Univ.*, No. 17-cv-0402, 2019 WL 1567535, at *7, 2019 U.S. Dist. LEXIS 62986, at *18 (N.D.N.Y. Apr. 11, 2019); *Cruz v. Sal-Mark Rest. Corp.*, No. 17-cv-0815, 2019 WL 355334, at *7, 2019 U.S. Dist. LEXIS 13529, at *20 (N.D.N.Y. Jan. 28, 2019) (noting that "[r]ecent cases in the Northern District have upheld hourly rates between $250 and $350 for partners") (quoting *Deferio v. City of Syracuse*, No. 16-cv-0361, 2018 WL 3069200, at *3, 2018 U.S. Dist. LEXIS 103596, at *9 (N.D.N.Y. June 21, 2018)); *Parish v. Kosinski*, 17-cv-0344, 2018 WL 1475222, at *5, 2018 U.S. Dist. LEXIS 20134, at *16–17 (N.D.N.Y. Feb. 5, 2018) (granting a rate of $350 per hour for partners); *Pope v. Cty. of Albany*, No. 11-cv-0736, 2015 WL 5510944, at *10, 2015 U.S. Dist. LEXIS 123379, at *27 (N.D.N.Y. Sept. 16, 2015) (awarding $350 to a partner).

[6] *See, e.g.*, *Daniel E. W. v. Berryhill*, No. 17-cv-0271, 2019 WL 1986538, at *5, 2019 U.S. Dist. LEXIS 75781, at *14 (N.D.N.Y. May 6, 2019) ("Recent cases in the Northern District have upheld hourly rates between . . . $165 and $200 for associates." (quoting *Stevens v. Rite Aid Corp.*, No. 13-cv-0783, 2016 WL 6652774, at *3, 2016 U.S. Dist. LEXIS 159468, at *8 (N.D.N.Y. July 6, 2016))); *Curves Int'l, Inc. v. Nash*, No. 11-cv-0425, 2013 WL 3872832, at *5, 2013 U.S. Dist. LEXIS 104095, at *15 (N.D.N.Y. July 25, 2013) (finding $170 for attorneys with less than four years of experience to be reasonable); *Zalewski v. T.P. Builders, Inc.*, Nos. 10-cv-0876, 2012 WL 5880327, at *3, 2012 U.S. Dist. LEXIS 166263, at *13 (N.D.N.Y. Nov. 21, 2012) (awarding $170 per hour for attorney with under four years of experience).

[7] *See, e.g.*, *Deferio*, 2018 WL 3069200, at *6, 2018 U.S. Dist. LEXIS 103596, at *17; *Johnson v. Mauro*, No. 16-cv-00622, 2019 WL 5842765, at *10, 2019 U.S. Dist. LEXIS 193661, at *26 (N.D.N.Y. Nov. 7, 2019) (finding $90 for one legal assistant and $80 for two other legal assistants).

### ii.     Glenn Miller

Like Sivin, Miller has over two decades of experience representing individuals in civil rights litigation "with a primary focus on cases involving allegations of police and corrections officer misconduct and civil rights violations." (Dkt. No. 181-2, at 3). Considering Miller's status as a partner, the quality of his work in this case, and his expertise in litigating civil rights violations, (Dkt. No. 181-2, at 6, 7, 8, 17-20), the Court also sets Miller's hourly rate at $350 per hour.

### iii.     Moses Ahn

Ahn joined Sivin & Miller as an associate in April 2017. (Dkt. No. 181-2, ¶ 11). Ahn was admitted to the New York bar in 2013, and prior to joining S&M, he served as a Supervisor and Assistant Unit Chief in the Special State law Enforcement Defense Unit of the New York City Law Department. (*Id.*). In that role, Ahn "defend[ed] the City of New York and its employees against lawsuits alleging police and correction officer misconduct and other civil rights violations." (*Id.*). Considering Ahn's work experience as an attorney, the Court awards $190 per hour for Ahn's associate hours on this case.

### iv.     Andrew Weiss

Weiss was admitted to the New York bar in 2017 and joined Sivin & Miller in 2018. (Dkt. No. 181-2, ¶ 12). As Weiss has less than four years of experience, the Court awards Weiss an associate rate of $170. *See Curves Int'l, Inc. v. Nash*, No. 11-cv-0425, 2013 WL 3872832, at *5, 2013 U.S. Dist. LEXIS 104095, at *15 (N.D.N.Y. July 25, 2013) (finding $170 for attorneys with less than four years of experience to be reasonable).

### v.     Legal Assistants

Legal Assistant Jake Ethé graduated from Columbia University in 2017 and has worked as a legal assistant at Sivin & Miller since April 2018, (Dkt. No. 181-2, ¶ 13). Ethé "participated

extensively in the litigation of this lawsuit." (*Id.*). (Dkt. No. 181-2, ¶ 36). Legal Assistant Nikhil

Dominic graduated from Columbia University and has been a legal assistant at Sivin & Miller

since July 2019. (Dkt. No. 181-2, ¶ 15). As noted, an accepted in-forum rate for paralegals and

legal assistants is $80–$90. *See, e.g.*, *Johnson v. Mauro*, No. 16-cv-00622, 2019 WL 5842765, at

*10, 2019 U.S. Dist. LEXIS 193661, at *26 (N.D.N.Y. Nov. 7, 2019). Defendants concur with

this range. (Dkt. No. 192-9, at 13). Accordingly, the Court awards a rate of $90 an hour for Ethé

and Dominic's hours.

Plaintiff requests fees for the time of several other legal assistants who collectively

recorded 8.65 hours of work on this matter. (Dkt. No. 181-1, at 16). Due to Plaintiff's failure to

outline the experience of these legal assistants, the Court finds an in-forum rate of $80 per hour

is appropriate.

### vi.    Travel Time

Defendants also take issue with the fees Plaintiff requests for attorney and staff travel

time, arguing because "Plaintiff chose to hire out-of-district counsel rather than local counsel,

she should not be entitled to attorney fees for travel time" between New York City and Syracuse.

(Dkt. No. 192-9, at 17).

The general rule for courts within the Second Circuit is to compensate travel time "at half

the usual hourly rate." *Critchlow v. First Unum Life Ins. Co. of Am.*, 377 F. Supp. 2d 337, 343

n.1 (W.D.N.Y. 2005). *See, e.g.*, *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 388 F.

Supp. 2d 159, 169 (W.D.N.Y. 2005) ("[Plaintiff's attorney] will therefore be awarded fees for

travel time at half his normal hourly rate"); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d

281, 302 (E.D.N.Y. 2012) (reducing plaintiff's attorney's rate by 50% for travel time).

However, as Defendants note, courts within this Circuit also recognize that when it comes to

awarding attorney's fees for travel time, "[d]efendants should not be penalized for a plaintiff's

choice of out-of-district counsel, unless the case required special expertise beyond the competence of forum district law firms." *Feltzin v. Ciampa Whitepoint LLC*, No. 15-cv-2279, 2017 WL 570761, at *3, 2017 U.S. Dist. LEXIS 20323, at *8 (E.D.N.Y. Feb. 13, 2017) (denying an award of travel-related fees when Plaintiff did not show that the in-district counsel lacked the requisite expertise); *see also Ryan v. Allied Interstate, Inc.*, 882 F. Supp. 2d 628, 638 (S.D.N.Y. 2012) (denying travel-related expenses that were "a result of [the] plaintiffs' choice to litigate the[ir] cases in the Southern District of New York while being represented by a firm based [in another state]").

Here, Plaintiff requests compensation for the time recorded by her legal team traveling primarily from the Southern District to Syracuse: 57 hours for Sivin, 22.5 hours for Miller and 10 hours for Ethé. (Dkt. No. 181-2, at 16; Dkt. Nos. 181-12, -13). As discussed above, Plaintiff did not adequately show that her out-of-forum counsel possessed special expertise unavailable in the forum district. Therefore, the Court denies Plaintiff's request to compensate her legal team's travel time from New York to Syracuse as part of the attorney's fee award. However, Sivin's eleven hours of travel time within the district, between Syracuse and Rome, will be compensated at a rate of half of counsel's usual rate.

### vii.   Williams & Rudderow, PLLC

Plaintiff also requests attorney's fees for the work performed by Michelle Rudderow at Williams & Rudderow, PLLC, who first represented her in connection with this matter. (Dkt. No. 181-1, at 16). Rudderow seeks reimbursement at the rate of $300 per hour for 44.51 hours. (Dkt. No. 181-4, at 5). Defendants respond that Williams & Rudderow "is not entitled to a separate fee award" because it has a lien "on the file," and "[w]hen the agreement between Plaintiff and the City was reduced to writing, Plaintiff agreed to 'satisfy any and all liens, claims or demands for payment by any third parties for medical treatment, wages, attorneys' fees or any

other costs incurred that relate to the events giving rise to the claims set forth in the Lawsuit, or the injuries sustained from those events.'" (Dkt. No. 192, ¶ 10; *see also* Dkt. No. 181-4, at 2 (billing entry dated December 2, 2016 ("Lien letter to Sivin")). Plaintiff has not disputed Defendants' assertion. Thus, Plaintiff's request for an award of attorney's fees for Williams & Rudderow's work is denied.

Having determined the reasonable rates, the Court must evaluate the reasonability of the number of hours expended on this litigation.

### 3.     Reasonable Number of Hours

Excluding Williams & Rudderow's hours and hours for travel to and from New York City, Plaintiff seeks an award of attorney's fees for 1,664.63 hours of attorney and legal assistant work on this case. (Dkt. No. 181-2, at 16–17; Dkt. No. 194-12, at 3 n.1). Defendants contend that a "very significant reduction in any . . . award" is warranted on the grounds that the hours billed in this case are "vague, duplicative, excessive" and "otherwise not compensable." (Dkt. No. 192-9, at 15).

A fee applicant "bears the burden of documenting the hours spent by counsel, and the reasonableness thereof." *Stevens v. Rite Aid Corp.*, No. 13-cv-783, 2016 WL 6652774, at *4, 2016 U.S. Dist. LEXIS 159468, at *9 (N.D.N.Y. July 6, 2016). "Applications for fee awards should generally be documented by contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998). In determining a reasonable fee, "the district court should exclude . . . hours that were not reasonably expended, including hours that are excessive, redundant, or otherwise unnecessary." *Osterweil*, 92 F. Supp. 3d at 28 (citing *Hensley*, 461 U.S. at 434) (internal quotations omitted). "In excluding hours that were not reasonably expended, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as

a practical means of trimming fat from a fee application." *Id.* (citing *Kirsch*, 148 F.3d at 173 (internal quotations omitted)). With these principles in mind, the Court considers the hours spent on this case.

### a.   Vague and Duplicative Billing Entries

Vague entries "which do not indicate the nature of subject matter of the work being performed" "do not enable a court to determine whether the hours are duplicative or excessive." *Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001). Accordingly, courts have applied reductions where billing entries are vague. *See Sheet Metal Workers' Nat. Pension Fund v. Coverex Corp. Risk Sols.*, No. 09-cv-0121, 2015 WL 3444896, at *17, 2015 U.S. Dist. LEXIS 69146, at *42–46 (E.D.N.Y. May 28, 2015) (reducing hours thirty percent finding billing entries "such as 'prepare for trial'" vague and where attorney billed for clerical tasks); *Dotson v. City of Syracuse*, No. 04-cv-1388, 2011 WL 817499, at *24, 2011 U.S. Dist. LEXIS 20374 at *66 (N.D.N.Y. Mar. 2, 2011) (reducing hours for vague entries "file review" and "meetings"), *aff'd*, 549 F. App'x 6 (2d Cir. 2013).

Defendants have highlighted the entries in Plaintiff's counsel and staff's time records they contend are vague. (Dkt. Nos. 192-2 to -8). Many of the entries, however, do not qualify as vague. For instance, Defendants highlighted Sivin's April 1, 2016 entry: "More on-line research and review of file to formulate complaint." (Dkt. No. 192-2, at 1). The Court finds that sufficiently specific: viewed together with the other entries in April 2016, the month before the Complaint was filed in this case, the entry enables the Court to evaluate whether the hours spent on the Complaint are duplicative or excessive. *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 343 (S.D.N.Y. 2016) ("[A]ttorneys seeking reimbursement 'must provide enough information for the [c]ourt, and the adversary, to assess the reasonableness of the hours worked on each discrete project.'" (quoting *Themis Cap. v. Dem. Rep. of Congo*,

No. 09-cv-1652, 2014 WL 4379100, at *7, 2014 U.S. Dist. LEXIS 124208, at *19–20 (S.D.N.Y. Sept. 4, 2014)). Defendants' contention is not, however, entirely without merit—there are entries in each billing record the Court finds vague. (*See* Dkt. No. 192-2 (Sivin's billing entries: "review file," "more on-line research re case," "discussions with [Miller] re case," "multi-tasking"); Dkt. No. 192-3 (Miller's billing entries: "communication with" investigator, "Firm meeting on matter"); Dkt. No. 192-4 (Ahn's billing entries: "start reviewing file," "More review of file"); Dkt. No. 192-5 (Weiss' billing records: "Review file"); Dkt. No. 192-6 (Ethé's billing entry: "Firm meeting in conference room"); Dkt. No. 192-7 (Dominic's billing entries: "Firm meeting in conference room"; "Meeting w/[Sivin] and [Ethé] on preparing exhibit/witness list (incl. one-on-one with [Sivin])");[8] Dkt. No. 192-8 (Miscellaneous paralegal entries: "[p]hone intake," "med requests")).

Further, certain entries in Weiss' time records are vague in the sense that they do not allow the Court to determine whether they are duplicative. Weiss, who worked 18.7 hours on this case, spent approximately half this time reading and indexing the "Thompson E[xamination] B[efore] T[rial]." (Dkt. No. 192-5). There were, however, three individuals with the last name Thompson in this case: Sivin indexed Chester Thompson's deposition and Ethé indexed Shakina Thompson's deposition. (Dkt. No. 181-12, at 10; Dkt. No. 181-16, at 2). Given the vagueness of Weiss' entry, the Court has no basis to evaluate whether his indexing work was duplicative. The Court will consider these problems in counsel's billing in determining an appropriate reduction. However, with the exception of the entries addressed above, having carefully reviewed the billing descriptions, the hours claimed for those descriptions, and the timing of the work claimed, the Court finds that the hours expended appear to be adequately documented.

---

[8] Alternatively, this entry of 9.5 hours reflects excessive billing. (Dkt. No. 192-7).

### b.       Billing for Clerical or Paralegal Work

Defendants object to billing by Plaintiff's attorneys for paralegal work and to billing by legal assistants for secretarial tasks. (Dkt. No. 192-9, at 16, 18). "[D]istrict courts have the legal authority and discretion to . . . reduce an attorney's hourly rate for time spent on clerical tasks . . . (or block-billed time entries reflecting a mix of clerical and legal work)." *Lilly*, 934 F.3d at 234. Courts have identified clerical tasks as "sending and receiving faxes, requesting and receiving medical records, serving papers," *id.*, "filing documents," *Gayle v. Harry's Nurses Registry, Inc.*, No. 07-cv-4672, 2020 WL 4381809, at *4, 2020 U.S. Dist. LEXIS 125630, at *12 (E.D.N.Y. July 31, 2020), "preparing a summons and complaint for service," and "ECF filings," *Torcivia v. Suffolk Cty.*, 437 F. Supp. 3d 239, 253 (E.D.N.Y. 2020). "[S]ecretarial tasks" such as "copying a file, informing individuals about hearing scheduling, preparing a bill, and other ministerial communications with witnesses or clients," "are considered part of a firm's overhead and are not to be included as part of an award for costs and fees." *O.R. v. New York City Dep't of Educ.*, 340 F. Supp. 3d 357, 368 (S.D.N.Y. 2018); *see also Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them."). Courts have identified "work on a discovery index and related work," as paralegal work. *Doe v. Cornell Univ.*, No. 17-cv-0402, 2019 WL 1567535, at *9, 2019 U.S. Dist. LEXIS 62986, at *26–27 (N.D.N.Y. Apr. 11, 2019),

Sivin's time records contain a number entries reflecting paralegal work. (*See* Dkt. No. 192-2, at 2, 4, 6, 10 ("phone call . . . re service of process," "notifying United Process that they have to serve order," "file affidavits of service ECF," "send away for additional medical records," "file ECF letter," "separating and scanning file into searchable PDFs," indexing depositions)). Miller's time records also contain entries indicating paralegal work, (*see* Dkt. No. 192-3, at 1, 3, 5 ("[o]rganize folders on computer," "[c]ontinue to organize folders on computer,"

"[a]rrange for meetings with witnesses," "[n]otification of all subpoenaed individuals"), as do

Weiss's, (*see* Dkt. No. 192-5 (indexing depositions)). To the extent these records contain

paralegal work by attorneys, and the records of legal assistants Ethé, Dominic, and others, reflect

noncompensable secretarial work, (*see*, *e.g.*, Dkt. No. 192-6 ("Print, hole punch, bind . . .

depositions"), Dkt. No. 192-7 ("[s]canning exhibits")), the Court accounts for this work in

applying an overall reduction to the hours billed.

### c.      Non-Contemporaneous Billings

Defendants argue that the majority of the time record for associate Moses Ahn should not

be compensated due to a discrepancy between when Plaintiff first claimed Ahn was hired by

Siving & Miller and when he performed the work recorded in the time record. (Dkt. Nos. 192-9,

at 14; 192-4). In his declaration, Sivin states that Ahn was hired in April 2017. (Dkt. No. 181-2,

¶ 4). This conflicts with the time record from Ahn, which primarily includes work performed in

February 2017. (Dkt. No. 181-14). Sivin clarifies in his Reply Declaration that he mistakenly

wrote that Ahn "joined as an associate of S&M in *April* 2017" and clarified that Ahn began

working at the firm in February 2017. (Dkt. No. 194, ¶ 3; *see also* Dkt. No. 194-3 (email from

Miller to Sivin regarding Ahn's February 2017 start date)). The Court accepts Sivin's

explanation as a typographical error and finds the time record submitted by Ahn to contain

contemporaneous and therefore compensable time.

### d.      Unsuccessful Claims

Defendants argue that time and costs related to Plaintiff's "unsuccessful claims must be

excluded from any fee award." (Dkt. No. 192-9, at 16). Defendants contend that Plaintiff was not

a prevailing party on her claims against Thompson, Galvin or on her "state law claim against the

City (which does not trigger fee shifting)" all of which were extinguished by the settlement

(*Id.*).[9] Defendants also argue that the claims against Chief Fowler, which the Court dismissed at the summary judgment stage, and those that "Plaintiff withdrew before trial" are "severable unsuccessful claims" and are therefore non-compensable. (Dkt. No. 192-9, at 16). Defendants aver that "the court may exclude hours spent on 'severable unsuccessful claims.'" (*Id.* (citing *Green v. Torres*, 361 F.3d 96, 98 (2d Cir. 2004)). In *Green,* however, the court stated that where, as here, the plaintiff's claims involve a common core of facts or are based on related legal theories "and are therefore not severable, '[a]ttorney's fees may be awarded for unsuccessful claims as well as successful ones.'" 361 F.3d at 98 (quoting *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999)); *see also Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) ("So long as the plaintiff's unsuccessful claims are not 'wholly  unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount"); *LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 762 (2d Cir. 1998) ("When a plaintiff has . . . prevailed on fewer than all of his claims, the most important question in determining a reasonable fee is whether the failed claim was intertwined with the claims on which he succeeded.").

### i.   Claims Against Thompson, Galvin and Chief Fowler

Plaintiff's theory of municipal liability was based upon Galvin's failure to adequately investigate the allegations of coercive sexual misconduct by Thompson, and failure to supervise him properly. *Montanez*, 2019 WL 315058, at *22–23, 2019 U.S. Dist. LEXIS 10351, at *65–69. Her supervisory liability claim against Galvin, alleging that he acted with gross negligence and deliberate indifference in supervising and disciplining Thompson clearly involves "a common

---

[9] Plaintiff asserts that she was a prevailing party as to Galvin because the settlement agreement required that she release the City's employees. (Dkt. No. 194-12, at 4). The settlement agreement is not in the record and, in any event, the Court need not consider that issue because Plaintiff's claim against Galvin is not severable from her claim against the City of Syracuse.

core of facts" and a "related legal theor[y]" and is not severable from the *Monell* claim. *Green*, 361 F.3d at 99 (quoting *Hensley*, 461 U.S. at 435). Time spent working on the claims against Galvin will therefore be included in the calculation of hours.

With respect to Fowler, the Court found insufficient evidence "to create a material issue of fact as to whether [he] had notice that there was a high degree of risk that Thompson would coerce sex from women while on duty," and granted Fowler's motion for summary judgment. *Montanez*, 2019 WL 315058, at *20, 2019 U.S. Dist. LEXIS 10351, at *58–59. However, Plaintiff's claim against Fowler not only arose from the same "common core of facts," i.e., supervisors' response to allegations of Thompson's coercive sexual conduct, it was also based on the same supervisory liability "legal theor[y]." The claim against Fowler is intertwined with Plaintiff's successful *Monell* claim.

Plaintiff's claim against Thompson, under 42 U.S.C. § 1983, for violating her right to bodily integrity in violation of the Fourteenth Amendment, is the constitutional violation underlying her *Monell* claim against the City. *See Montanez*, 2019 WL 315058, at *22–23, 2019 U.S. Dist. LEXIS 10351, at *65–69. That claim is not severable. Plaintiff's remaining state tort claims against Thompson for battery and intentional infliction of emotional distress all arise out of the same February 15, 2015 incident with Plaintiff; they are all "grounded in a common core of facts, and were based on related legal theories, such that it would have been difficult for plaintiffs' attorneys to divide the hours expended in the ligation on a claim-by-claim basis." *Grant*, 357 F. Supp. 3d at 205.

### ii.    Claims Withdrawn Before Trial

Defendants argue that time related to the claims that "Plaintiff withdrew before trial . . . must be excluded" from any fee award. (Dkt. No. 192-9 at 16). At oral argument on Defendants'

motion for summary judgment, Plaintiff withdrew her state tort claims and her negligent hiring claim as to the Defendant City of Syracuse. (*See* Text Minute, Entry Jan. 8, 2019). In the final pretrial conference Plaintiff withdrew her state law prima facie tort claim against Defendant Thompson and her Fourth Amendment claim against Defendant Thompson. (*See* Text Minute, Entry Sept. 10, 2019). Plaintiff responds by arguing that "even if [P]laintiff, for the purposes of this fee application, is deemed to have 'prevailed' only against the City, and only on her *Monell* claim," Defendant would still not be "entitled to a reduction in plaintiff's fee award" because "so long as the successful and unsuccessful claims were not wholly unrelated, it is extremely difficult, if not *impossible*, to identify hours that were spent exclusively on unsuccessful claims." (Dkt. No. 194-12, at 7).

The district court has discretion to "to weigh the withdrawn claims in determining the appropriate fee award." *Green*, 361 F.3d at 99; *see Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) (noting that when plaintiff failed to prevail on claims involving "a common core of facts" or "based on related legal theories . . . making it difficult to divide the hours expended on a claim-by-claim basis," the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonable expended on the litigation"). A court may "attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37.

Here, with the exception of a negligent hiring theory of liability, all of Plaintiff's claims are based upon Thompson's conduct on February 15, 2014, and the alleged failure of supervision of Thompson that led to that conduct. There is no suggestion that Plaintiff brought any claims that were inflated or not pursued in good faith, and the settlement amount was an excellent result

for Plaintiff. The Court thus rejects Defendants' request to exclude hours based on "unsuccessful claims."

### e.   Criminal Proceedings

Defendants argue that Plaintiff's fee request for time related to the criminal prosecution of Thompson must be excluded as irrelevant, (Dkt. No. 192-9 at 17), and flag two specific entries in Sivin's time as non-compensable. (Dkt. No. 192-2, at 1, 8). One of the entries lists "phone call with DA's office," among five other tasks relevant to this instant action, which total 2.1 hours. (*Id.* at 1). The second entry reflects 1.1 hours for "[m]ultiple calls and emails with Montanez re her recent communications w/ADA Cali; research harassment statute." (*Id.* at 8). Defendants note that "Plaintiffs cite no authority for the proposition these fees and any associated costs are compensable" and cite several cases in which courts ruled that "attorney fees incurred for a plaintiff's defense in prior criminal proceedings has been held to be not compensable under § 1988." (*Id.* (citing *McKever v. Vondollen*, 681 F. Supp. 999, 1003 (N.D.N.Y. 1988); *Greer v. Holt*, 718 F.2d 206, 208 (6th Cir. 1983); *Venuti v. Riordan*, 702 F.2d 6, 9 (1st Cir. 1983); *Lenihan v. City of New York*, 640 F. Supp. 822, 830 (S.D.N.Y. 1986))). These cases, however, relate to an underlying criminal proceeding against the plaintiffs who were bringing civil actions, not whether an attorney's work in staying abreast of the criminal proceedings against *a defendant* stemming from the events at issue in civil rights action is recoverable. The Court notes, however, that Plaintiff does not explain on what basis these hours are compensable and does not respond to Defendants' opposition to these fees in her reply. Therefore, the Court will consider these hours in determining the appropriate reduction.

### f.   Fee Application

With respect to Plaintiff's fee motion, including the reply submissions—66.8 attorney hours and 44.7 paralegal hours—the Court also finds Plaintiff's hours expended to be reasonable.

22

Defendants argue that "even in a complex case, a fee application should only take **30** hours." (Dkt. No. 192-9, at 16) (citing *Murray v. Mills*, 354 F. Supp. 2d 231, 241 (E.D.N.Y. 2005)). Citing this Court's decision in *Johnson*, 2019 WL 5842765, 2019 U.S. Dist. LEXIS 193661, Plaintiff replies that Defendants' "argument can be summarily rejected." (Dkt. No. 194-12, at 13). In *Johnson*, this Court assessed the reasonability of overall time spent on a fee motion by considering "the hours expended as a proportion of the total time claimed in the fee application." *Johnson*, 2019 WL 5842765, at *8, 2019 U.S. Dist. LEXIS 193661, at *20; *see also Nat. Res. Def. Council, Inc. v. Fox*, 129 F. Supp. 2d 666, 675 (S.D.N.Y. 2001). In *Johnson*, This Court found the 62.4 hours dedicated to a fee motion to be reasonable considering that the request amounted to 11 percent of the total time claimed. *Johnson*, 2019 WL 5842765, at *8, 2019 U.S. Dist. LEXIS 193661, at *20

By the Court's calculation, including the time Plaintiff spent replying to Defendants' opposition to this motion (which took an additional 22.1 attorney hours and 42.95 paralegal hours), (Dkt. No. 194-12, at 3 n.1), the fee application comprises less than 7 percent of the more than 1,700 total hours claimed in the fee application. (*Id.* at 13). While the total hours Plaintiff seeks for preparation of the fee application are high, Defendants vigorously challenged her application, requiring a detailed and well-supported reply. *See Colbert v. Furumoto Realty, Inc.*, 144 F. Supp. 2d 251, 262 (S.D.N.Y. 2001) ("[C]ourts within this Circuit have awarded fee application awards in the range of 8 to 24 percent of the total time claimed." (quoting *Natural Resources Defense Council*, 129 F. Supp. 2d at 675)). The Court agrees with Plaintiff that the hours requested in relation to the fee application are reasonable.

### g.     Excessiveness of Time Records

Defendants argue that Plaintiff's request contains excessive billing and overstaffing. (Dkt. No. 192-9, at 15–16). Defendants primarily take issue with time records devoted to

23

reviewing documents, court decisions, and records. (Dkt. Nos. 192-2, 192-3, 192-4, 192-5, 192-6, 192-7).[10] The billing records do not support Defendant's claim of overstaffing. Although there were two partners on this case, in general, the billing records reflect that they divided their responsibilities: only one partner handled the discovery litigation; only one lawyer appeared for depositions and court proceedings; and only one partner prepared witness direct and cross examinations for trial.

However, after carefully reviewing the records, and because "hours that are excessive, redundant, or otherwise unnecessary" should be excluded just as a lawyer would exclude such hours from a bill to paying client, *Hensley*, 461 U.S. at 434, upon review, the Court finds the total number of hours, 1,664.63, to be excessive, noting in particular the approximately 200 attorney hours spent in connection with the litigation of the motion for summary judgment and motion to strike, *see Grant*, 357 F. Supp. 3d at 206 (finding 117 hours billed by the plaintiff's counsel to oppose a motion for summary judgment was excessive and warranted a reduction in the overall fee award); *Dotson v. City of Syracuse*, 5:04-cv-1388, 2011 WL 817499, at *25, 2011 U.S. Dist. LEXIS 20374, at *67–68 (N.D.N.Y. March 2, 2011) (finding that 115.30 hours to oppose a motion for summary judgment was excessive and warranted a reduction). At the same time, the Court notes that while the approximately 400 attorney hours spent in trial preparation, including on motions in limine, is high, given the complex nature of this case and the extensive motion in limine litigation, this is not outside the range of reasonableness. *See Brady v. Wal-Mart Stores, Inc.*, 455 F. Supp. 2d 157, 213 (E.D.N.Y. 2006), *aff'd*, 531 F.3d 127 (2d Cir. 2008)

---

[10] Defendants have highlighted certain entries in the time-keeping record they deem to be excessive, and assert that the billing entries are "fraught with vague, duplicative, excessive, non-contemporaneous, unnecessary and otherwise not compensable entries," warranting "a very significant reduction" in any fee award. (Dkt. No. 192-9, at 14). Defendants' highlighting includes numerous specific descriptions of legal work, and entries for work that was clearly done in furtherance of Plaintiff's successful *Monell* litigation, and to that extent, was not helpful. The Court encourages more discernment in flagging time entries in the future.

(finding reasonable approximately 400 hours of work for trial preparation in ADA/NYSHRL case); *Tatum v. City of New York*, No. 06-cv-4290, 2010 WL 334975, at *8, 2010 U.S. Dist. LEXIS 7748, at *26 (S.D.N.Y. Jan. 28, 2010) (finding nearly 300 hours spent on trial preparation in § 1983 pretrial detainee assault case "not unreasonable in light of the 'big picture'").

### h.    Adjustment for Degree of Success

Plaintiff argues she is entitled to an "upward adjustment" in any attorney's fee award and asserts "a significant risk of not prevailing coupled with a contingent fee arrangement may be sufficient to merit the upward adjustment." (Dkt. No. 181-1, at 13 (citing *Lewis v. Coughlin*, 801 F.2d 570, 576 (2d Cir. 1986))). While a plaintiff's attorney should "recover a fully compensatory fee" for obtaining "excellent results," "in some cases of exceptional success an enhanced award may be justified." *Hensley*, 461 U.S. at 435. An upward adjustment may be awarded "only in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Blum*, 465 U.S. at 899.

Plaintiff recounts four obstacles she had to surmount before obtaining the $500,000 settlement and argues that, viewed against these obstacles, the settlement constitutes an "exceptional success." (Dkt. No. 181-1, at 13). First, Plaintiff asserts that "it is clear that the municipal defendants could not be held vicariously liable" for the sexual assault committed by Thompson, requiring her instead to develop a *Monell* claim. (Dkt. No. 181-1 at 13). Second, Plaintiff claims that, in order to "impose liability against the municipal defendants based on their inadequate response to prior reports of malfeasance by Thompson," she had to overcome arguments of governmental immunity for the City and qualified immunity for defendants Fowler and Galvin. (Dkt. No. 181-1, at 13–14). Third, Plaintiff argues that she still faced "formidable obstacles" to "persuade the trier of fact" after most of her claims survived a motion for summary

judgment. (*Id.* at 14). Finally, Plaintiff claims that "S&M faced additional obstacles in the actual production of many of the witnesses it sought to call at trial." (*Id.*). Although the Court recognizes the able work done by Plaintiff's counsel in the face of significant obstacles, having considered this case in its entirety, the Court concludes Plaintiff has not shown "exceptional success" warranting an "upward adjustment."

For its part, Defendants assert that because the settlement amount is 7.14% of the total $7,000,000 sought in the complaint against four defendants, the fee award should be "reduced accordingly." (Dkt. No. 192-9, at 19). When considering a reasonable rate for attorney's fees, "the most critical factor is the degree of success obtained." *Hensley*, 461 U.S. at 436. In evaluating the level of success obtained, the court may consider "both the quantity and quality of the relief obtained, as compared to what the plaintiff sought to achieve as evidenced in [the] complaint." *Indep. Project, Inc. v. Ventresca Bros. Constr. Co.*, 397 F. Supp. 3d 482 (S.D.N.Y. 2019) (quoting *Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132 (2d Cir. 2008)). While Plaintiff received less than she originally sought, the Court concurs in Plaintiff's assessment that Plaintiff's substantial settlement with the City was a very successful result, particularly given the obstacles she faced. The Court declines to adopt the mechanical approach Defendants advocate and reduce the fee award based on a percentage reflecting the difference between the settlement amount and the amount sought in the complaint, and declines to make any reduction based on a lack of success. *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008) ("A plaintiff may still be viewed as having 'obtained a significant and valuable level of success' even if she did not achieve the precise result originally sought." (quoting *Marisol A. ex rel. Forbes v. Giuliani,* 111 F.Supp.2d 381, 398 (S.D.N.Y. 2000))).

### 4.     Attorneys' Fee Award

Although the number of billable attorney hours is large, after carefully reviewing the billing records, and based on the Court's familiarity with this case, the Court finds that a significant number of hours are warranted. While this litigation did not involve novel legal issues or establish a new principle of law, this was not a run-of-the-mill civil rights case. As Plaintiff asserts, this action involved "difficult issues of law and challenging facts." (Dkt. No. 181-1 at 7). The Court recognizes that the work underlying this settlement against the Defendants, which initially took a "no pay" position, was challenging and time-consuming. Plaintiff litigated this case for over three years. During that time, Plaintiff's counsel litigated discovery disputes, took twelve depositions, retained an expert witness, opposed a motion for summary judgment, opposed a motion to strike evidence, engaged in extensive litigation concerning four motions in limine in anticipation of trial, filed pretrial submissions, and prepared for a six to seven-day trial, before the case settled on the eve of trial. The case was hard-fought and cogently litigated by counsel for all parties. Defendants City of Syracuse, Galvin and Fowler were represented by the Syracuse Corporation Counsel and by Hancock Estabrook LLP. The discovery and summary judgment litigation, which resulted in raising a triable issue of fact for a *Monell* claim against the City, was difficult and skillfully handled by Plaintiff's counsel.

Having carefully reviewed the billing records, and based on the Court's familiarity with this case and the work of Plaintiff's counsel, the Court finds that Plaintiff is entitled to a substantial attorney's fee award in light of the length, complexity and success of this litigation. However, the above-identified issues in Plaintiff's counsel's billing records, including vagueness, duplications, billing of the full attorney rate for paralegal tasks, billing of secretarial work, billings in connection with the criminal prosecution of Chester Thompson, and the excessive hours including hours spent at the summary judgment stage warrant a percentage

reduction. Accordingly, based on these factors, the Court applies a twenty percent reduction to the hours billed by Sivin & Miller in this case. *See Lilly*, 934 F.3d at 234 (affirming district court's reduction of attorney "hours by ten percent to account for clerical tasks," noting that it was "confident that the district court achieved 'rough justice,' if not 'auditing perfection,' in its calculation of the appropriate fee award"); *Kirsch*, 148 F.3d at 172–73 (determining that a district court was within its discretion to reduce a fee award by 20 percent on the grounds that a number of the attorneys' time entries, including "letter to court," "staff conference," or "work on motion," were "too vague to sufficiently document the hours claimed"); *Ravina v. Columbia Univ.*, No. 16-cv-2137, 2020 WL 1080780, at \*10, 2020 U.S. Dist. LEXIS 39478, at \*31 (S.D.N.Y. Mar. 6, 2020) (concluding that because "the majority of the entries were appropriately detailed . . . only a modest reduction of compensable hours by five percent is appropriate" for vague entries); *Mango v. BuzzFeed, Inc.*, 397 F. Supp. 3d 368, 377 (S.D.N.Y. 2019) (finding a twenty percent reduction should apply for "vague entries" and "block billing" and an additional five percent for paralegal work billed by attorney).

The Court finds that the final attorney's fee award calculated by the Court, $386,231.36, in this case, which did not go to trial, is consistent with awards in other civil rights cases. *See Grant*, 357 F. Supp. 3d 180, 209 (awarding attorney's fees in the amount of $584,920.50 following nine-day trial); *Alicea v. City of New York*, 272 F. Supp. 3d 603, 613 (S.D.N.Y. 2017) (awarding attorney's fees after four-day trial in the amount of $410,071.25); *Houston v. Cotter*, 234 F. Supp. 3d 392, 407–410 (E.D.N.Y. 2017) (surveying attorney's fees awards in civil rights cases). Although this case, unlike *Grant* and *Alicea*, did not go to trial, it settled on the eve of trial, following  heavily-litigated pretrial proceedings, and the work undertaken by that point was extensive.

**B.      Costs**

Plaintiff seeks reimbursement of litigation expenses in the amount of $40,465.82. (Dkt. No. 181-19, at 1). In addition to objecting to certain costs, Defendants argue that (i) Plaintiff's request should be denied because the Court dismissed this action "without costs" or (ii) the amount Plaintiff seeks should be reduced by seventy-five percent "given [the City] is the only party of the four original parties who Plaintiff 'prevailed' against." (Dkt. No. 192-9, at 20).

The Order the Court issued following the parties' settlement directed that dismissal was to be "without costs." (Dkt. No. 175, at 1). Because Defendants do not dispute that Plaintiff is entitled to attorney's fees "as part of the costs" recoverable under § 1988, which includes legal expenses in addition to those costs "ordinarily recoverable" under 28 U.S.C. § 1920 and Rule 54(d)(1), and because it appears that the parties contemplated such recovery, in abundance of caution, and in accordance with Rule 60(b), the Court vacates the part of its prior Order directing that dismissal was "without costs."

The Court declines to grant Defendants' request to reduce the costs by seventy-five percent because the City of Syracuse was one of four defendants. "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54. "[A]ttorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989)). The Court will therefore examine the costs incurred to determine whether they are appropriate and appropriately charged to the Defendants.

### 1.    Expert Witness Fees

Defendants claim that "absent explicit statutory authorization, a district court may not award reimbursement for expert fees beyond the allowances authorized by 28 U.S.C. § 1920, as limited by 28 U.S.C. § 1821." (Dkt. No. 192-9, at 20) (citing *Gortat v. Capala Bros.*, 795 F.3d 292, 296 (2d Cir. 2015)). Defendants rightly point out that §1988(c) "**only** permits a court to award expert fees in discrimination cases under **§ 1981**." (Dkt. No. 192-9, at 20).

Plaintiff counters by arguing that caselaw concerning whether §1983 actions allow reimbursement for expert witness fees "is not unanimous." (Dkt. No. 194-12, at 14). Plaintiff cites *Weather v. City of Mount Vernon*, where the district court allowed the plaintiff in a § 1983 action to recover an expert fee as part of the attorney's fees under 42 U.S.C. § 1988(c), No. 08-cv-192, 2011 WL 2119689, 2011 U.S. Dist. LEXIS 57144 (S.D.N.Y. May 27, 2011). (Dkt. No. 194-12, at 14–15). But at least one other court has concluded that *Weather* was "wrongly decided," *Walker v. City of New York*, No. 11-cv-314, 2015 WL 4568305, at *13, 2015 U.S. Dist. LEXIS 101253, at *33 (E.D.N.Y. July 28, 2015) ("*Weather* misread both the plain text of the statute and failed to distinguish the relevant precedent."), and the majority of courts to have considered the issue have concluded that exert fees are not recoverable as costs. *See Ortiz v. City of New York*, No. 15-cv-2206, 2020 WL 755878, at *8, 2020 U.S. Dist. LEXIS 26241, at *21–22 (S.D.N.Y. Feb. 14, 2020) ("Expert fees are not recoverable by a § 1983 plaintiff."); *Grant*, 357 F. Supp. 3d at 208 (concluding the plaintiff "cannot recover any amounts paid in expert witness fees" as part of request for costs in § 1983 action); *Amara v. Cigna Corp.*, No. 01-cv-2361, 2018 WL 6242496, at *5, 2018 U.S. Dist. LEXIS 202717, at *14–15 (D. Conn. Nov. 29, 2018) (explaining "§ 1988's own provision for attorney's fees has not been interpreted to include expert witness costs").

The Court agrees with this caselaw and finds expert fees are not recoverable as costs. While § 1988(b) authorizes the court to award "a reasonable attorney's fee as part of the costs," "'costs' is a term of art that generally does not include expert fees." *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006).  Plaintiff cannot recover expert fees as part of her costs "because § 1988 does not allow the shifting of expert witness fees in § 1983 actions." *Walker v. City of New York*, No. 11-cv-314, 2015 WL 4568305 at *12, 2015 U.S. Dist. LEXIS 101253 at *31 (E.D.N.Y. July 28, 2015); *see also W. Virginia Univ. Hosps., Inc. v. Casey,* 499 U.S. 83, 102 (1991). Plaintiff argues that Congress abrogated *Casey* by amending § 1988, which is now codified as § 1988(c). However, "because that subsection speaks only to suits under § 1981 or § 1981a, it authorizes expert-fee shifting only in those instances and leaves intact the *Casey* rule with respect to all other claims, including those under § 1983." *Walker*, 2015 WL 4568305, at *13, 2015 U.S. Dist. LEXIS 101253, at *32; *see also Wilder v. Bernstein*, 975 F. Supp. 276, 287 n.12 (S.D.N.Y. 1997). Therefore, Plaintiff may not recover costs for expert fees.

Plaintiff argues in the alternative that costs charged by her expert, Robert E. Brown, Esq. ("Brown"), "are recoverable as an attorney's fee charged by 'outside counsel.'" (Dkt. No. 194-12, at 15). Plaintiff seeks to recover the $22,387.50 Brown charged as Plaintiff's "police expert," (Dkt. No. 181-19), and contends that "Brown acted 'of counsel' to S&M during the course of this litigation, a role that is compensable in the context of a fee application." (Dk. No. 194-12, at 15–16). Brown charged $425 per hour. (Dkt. No. 194-12, at 16 n.17). Plaintiff claims that Brown "not only is an expert on police procedure" but that he also provided "insight into the relevance of those procedures to the legal issues in this case." (Dkt. No. 194-12, at 15). The Court rejects Plaintiff's recasting of Brown as of counsel in this action; while he may be a practicing attorney, he was retained as an expert witness and included on Plaintiff's Witness List as her "expert

witness on police procedures." (Dkt. No. 138, at 3). Moreover, the Court has reviewed Brown's billing records, (Dkt. No. 181-19, at 9–10), and finds that Brown's description of his work as an expert witness does not support a fee award. Accordingly, Plaintiff's request for expert fees is denied.

### 2.  Travel Expenses

Plaintiff requests $1,588.37 in hotel costs and $2,197.44 in compensation for travel expenses for "nine round trips" by Plaintiff's counsel "between Manhattan and Syracuse." (Dkt. No. 181-19, at 1; Dkt. No. 181-2, ¶ 45 ("The mileage for those trips totaled 4,035, and S&M seeks reimbursement at a rate of $0.545 per mile.")). Defendants argue that "travel costs should be denied where local counsel is competent and available." (Dkt. No. 192-9, at 20).

"Identifiable, out-of-pocket disbursements for items such as photocopying, travel, and telephone costs are generally taxable under § 1988[.]" *Kuzma v. IRS*, 821 F.2d 930, 933–34 (2d Cir. 1987). However, expenses for travel to the Northern District of New York are not compensable for out-of-district counsel for the reasons outlined above. *See Congregation Rabbinical Col. of Tartikov, Inc. v. Vill. of Pomona*, 188 F. Supp. 3d 333, 345 (S.D.N.Y. 2016) (denying travel related expenses for out-of-district counsel because 'the Second Circuit has instructed that defendants should not be penalized for a plaintiff's choice of out-of-district counsel, unless 'the case required special expertise beyond the competence of forum district law firms.'" (quoting *Dzugas-Smith v. Southold Union Free Sch. Dist.*, No. 09-cv-7360, 2010 WL 3852003, at *3, 2010 U.S. Dist. LEXIS 101750, at *8 (E.D.N.Y. Sept. 27, 2010))). Even in-district counsel within our large district, however, may incur hotel costs during trial, and district courts within this Circuit regularly award hotel costs for out-of-district counsel. *See Grant*, 357 F. Supp. 3d at 208 (N.D.N.Y. 2019) (awarding $25,475.98 in lodging costs to out-of-district

counsel); *Cornell Univ.*, 2019 WL 1567535, at *10–11, 2019 U.S. Dist. LEXIS 62986, at *29–30 (awarding hotel costs). Thus, hotel costs are granted.

### 3. Witness Fees

Defendants object to reimbursing Plaintiff $591 in "Subpoena fees" paid to trial witnesses on the ground that this matter settled prior to trial. (Dkt. No. 192-, at 21). In anticipation of the September 23, 2019 trial, Plaintiff sent checks with witness and mileage fees dated August 27 and 28, 2019, to thirteen witnesses. (Dkt. No. 181-19, at 39–43). Under 28 U.S.C. § 1821, "[a] witness shall be paid an attendance fee of $40 per day" and provided a "mileage allowance" for travel. 28 U.S.C. § 1821(b), (c)(2). Although Plaintiff's counsel notified "all subpoenaed individuals" of the settlement on September 18, 2019, there is no indication the checks were recouped. (Dkt. No. 192-9, at 21; Dkt. No. 181-19, at 39–43; Dkt. No. 181-13, at 5). "There is a general presumption that only the costs of those witnesses who actually testify at trial may be shifted" to the losing party. *U.S. for Use & Benefit of Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). However, "the presumption 'can be overcome if it appears that a court order or some other extrinsic circumstance rendered his testimony unnecessary.'" *Id.* (quoting *McGuigan v. CAE Link Corp.*, 155 F.R.D. 31, 35–36 (N.D.N.Y. 1994)). Because this matter settled just days before trial, the Court finds the witness fees reasonable and therefore recoverable. Here, Plaintiff has provided copies of the checks, which reflect payments from $25 to $100 for 13 witnesses. (Dkt. No. 181-19, at 39–43). Accordingly, the Court concludes these disbursements are recoverable.

Plaintiff also seeks reimbursement in the amount of $1,000 for "Elizabeth Taetsch (plaintiff's therapist; testimony fee)," in addition to a $40 witness fee and mileage addressed above. (Dkt. No. 181-19, at 1). As Defendants note, Plaintiff provides no explanation for this fee. Accordingly, this request is denied.

### 4.    Other Expenses

Defendants object to reimbursement of $68.45 for "a letter sent to a prospective witness." (Dkt. No. 192-9, at 22 (quoting Dkt. No. 181-2, ¶ 42 and citing Dkt. No. 181-19, at 21)). As Plaintiff does not respond to this objection or provide further information regarding this cost, her request is denied.

Defendants also object to the costs of a subpoena duces tecum, obtaining Plaintiff's medical records, and her criminal history on November 2, 2016 and July 12, 2019. (Dkt. No. 192-9, at 22–23). The Court has reviewed the receipts Plaintiff provided, (Dkt. No. 181-19, at 3–4, 15, 18–20), and all remaining litigation expenses, and finds these costs reasonable.

### C.    Final Calculation

In sum, after carefully considering all the relevant factors, adjusting the requested rates and the requested hours as discussed above, the Court finds Plaintiff is entitled to attorney's fees in the total amount of $386,231.36.

| Attorney/Paraprofessional | Adjusted Rate | Hours (excluding travel to and from New York City) | Total Fees |
|---|---|---|---|
| Edward Sivin (Partner) | $350<br><br>Travel Rate: $175 | 835.9<br><br>Travel Time: 11 | $292,565.00<br><br>Travel: $1,925.00 |
| Glenn Miller (Partner) | $350 | 429.4 | $150,290.00 |
| Moses Ahn (Associate) | $190 | 16.5 | $3,135.00 |
| Andrew Weiss (Associate) | $170 | 18.7 | $3,179.00 |
| Jake Ethé (Paralegal) | $90 | 304.23 | $27,380.70 |
| Nikhil Dominic (Paralegal) | $90 | 40.25 | $3,622.50 |
| Other Legal Assistants | $80 | 8.65 | $692.00 |
| **TOTAL** | | 1,664.63 | $482,789.20 |

| Reduction | | 20% reduction | |
| Final Fee | | | $386,231.36 |

   In addition, Plaintiff is awarded $14,812.43 in costs and expenses for a total of $401,043.79.

## III.   CONCLUSION

   For these reasons, it is hereby

   **ORDERED** that the portion of the Court's Order of Dismissal directing that dismissal be "without costs" (Dkt. No. 175, at 1) is vacated; and it is further

   **ORDERED** that Plaintiff's Motion for Attorney's Fees and Costs (Dkt. No. 181) is **GRANTED in part and DENIED in part**; and it is further

   **ORDERED** that Plaintiff is awarded a total of $386,231.36 in attorney's fees and $14,812.43 in costs and expenses for a total of $401,043.79.

   **IT IS SO ORDERED.**

Dated: August 31, 2020
        Syracuse, New York

Brenda K. Sannes
U.S. District Judge